**EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP**
Jonathan S. Abady, Esq. (*pro hac vice*)
Matthew D. Brinckerhoff, Esq. (*pro hac vice*)
Ananda V. Burra, Esq. (*pro hac vice*)
Max Selver, Esq. (*pro hac vice*)
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**KROVATIN NAU LLC**
Gerald Krovatin, Esq. (Attorney No. 024351977)
Helen A. Nau, Esq.  (Attorney No. 030181993)
60 Park Place, Suite 1100
Newark, NJ 07102
(973) 424-9777
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF HOBOKEN,<br><br>        Plaintiff,<br><br>-against-<br><br>EXXON MOBIL CORP.,<br>EXXONMOBIL OIL CORP.,<br>ROYAL DUTCH SHELL PLC,<br>SHELL OIL COMPANY, BP P.L.C.,<br>BP AMERICA INC., CHEVRON<br>CORP., CHEVRON U.S.A. INC.,<br>CONOCOPHILLIPS,<br>CONOCOPHILLIPS COMPANY,<br>PHILLIPS 66, PHILLIPS 66<br>COMPANY, AMERICAN<br>PETROLEUM INSTITUTE,<br><br>        Defendants. | Civil Action No. 2:20-cv-14243<br><br>**Plaintiff's Memorandum of Law<br>in Support of Its<br><u>Motion to Remand</u>** |

# **TABLE OF CONTENTS**

**PAGE NO**

TABLE OF AUTHORITIES ...................................................................iii-xi

PRELIMINARY STATEMENT .................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...............................2

ARGUMENT .............................................................................................7

I.    THERE IS NO FEDERAL QUESTION ON THE FACE OF THE COMPLAINT.........................................................................................8

    A.    Hoboken Pleaded No Federal Cause of Action ..........................9

    B.    Federal Preemption Is Not a Basis for Removal ......................10

        1.    There Are No Federal Statutes That Expressly and Completely Preempt Hoboken's State Law Claims .......10

        2.    "Ordinary" Preemption Is Not A Basis For Removal ................................................................18

        3.    *Grable* Removal is Inapplicable .....................................24

II.    DEFENDANTS' FEDERAL OFFICER REMOVAL ARGUMENT FAILS .........................................................................................35

    A.    Plaintiff's Claims Are Not "For or Relating To" Acts Under Color of a Federal Office ..........................................................37

    B.    Plaintiff's Claims Are Not Based on Defendants' Conduct Acting Under Federal Officers...................................................44

II.    DEFENDANTS' FEDERAL ENCLAVE REMOVAL ARGUMENT IS  FRIVOLOUS .........................................................................50

III.    DEFENDANTS' OUTER CONTINENTAL SHELF ACT REMOVAL ARGUMENT IS FRIVOLOUS .....................................53

IV.    DEFENDANTS' CAFA ARGUMENT IS FRIVOLOUS.................56

CONCLUSION .......................................................................................60

## TABLE OF AUTHORITIES

**PAGE NO**

**Cases**

*Abraham v. St. Croix Renaissance Grp., L.L.L.P,*
  58 V.I. 788 (3d Cir. 2013) ...............................................................59

*Allstate Ins. Co. v. 65 Sec. Plan,*
  879 F.2d 90 (3d Cir. 1989) ........................................... 11, 12, 16

*Am. Elec. Power Co. v. Connecticut,*
  564 U.S. 410 (2011)........................................................ 17, 19, 21

*American Insurance Association v. Garamendi,*
  539 U.S. 396 (2003)........................................................................33

*Atherton v. FDIC,*
  519 U.S. 213 (1997)........................................................................13

*Bader Farms, Inc. v. Monsanto Co.,*
  No. 16 Civ. 299, 2017 WL 633815 (E.D. Mo. Feb 16, 2017) .....................32

*Bailey v. Monsanto Co.,*
  176 F. Supp. 3d 853 (E.D. Mo. 2016) ...........................................41

*Ballenger v. Agco Corp.,*
  No. 06 Civ. 2271, 2007 WL 1813821 (N.D. Cal. June 22, 2007)................43

*Baran v. A SRC Fed. Mission Sols.,*
  No. 17 Civ. 7425, 2018 WL 3054677 (D.N.J. June 20, 2018).....................44

*Bd. of Cnty. Comm'rs of Boulder Cnty. Suncor Energy (U.S.A.) Inc.,*
  965 F.3d 792 (10th Cir. 2020) ............................................ 6, 45, 46

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,*
  405 F. Supp. 3d 947 (D. Colo. 2019) ...................................... *passim*

*Bd. Of Comm'rs of Se. LA Floor Prot. Auth. v. Tennessee Gas Pipeline Co, L.L.C.,*
  850 F.3d. 714 (5th Cir. 2017) .......................................................35

*Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation,*
     770 F.3d 944 (10th Cir. 2014) ..................................................................25

*Bell v. Cheswick Generating Station,*
     734 F.3d 188 (3d Cir. 2013) ............................................................. 14, 15

*Ben. Nat'l Bank v. Anderson,*
     539 U.S. 1 (2003).......................................................................................11

*Beneficial Nat. Bank v. Anderson,*
     539 U.S. 1 (2003)................................................................................ 12, 15

*Bennett v. Sw. Airlines Co.,*
     484 F.3d 907 (7th Cir. 2007) ......................................................... 29, 30, 31

*Bordetsky v. Akima Logistics Servs., LLC,*
     No. 14 Civ. 1786, 2016 WL 614408 (D.N.J. Feb. 16, 2016) ........................50

*BP p.l.c. v. Mayor &,*
     No. 19-1189, 2020 WL 5847132 (U.S. Oct. 2, 2020) ....................................6

*Brown v. Francis,*
     75 F.3d 860 (3d Cir. 1996) ..........................................................................7

*Buckman Co. v. Plaintiffs' Legal Comm.,*
     531 U.S. 341 (2001)....................................................................................31

*California v. BP p.l.c.,*
     No. 17 Civ. 06011, 2018 WL 1064293 (N.D. Cal. Feb. 27, 2018) .................7

*Caterpillar, Inc. v. Williams,*
     482 U.S. 386 (1987)........................................................................... *passim*

*Cessna v. Rea Energy Coop.,*
     No. 16 Civ. 42, 2016 WL 3963217 (W.D. Pa. 2016)....................................45

*Christianson v. Colt Indus. Operating Corp.,*
     486 U.S. 800 (1988)....................................................................................25

*City of Charleston v. W. Virginia-Am. Water Co.,*
     No. 16 Civ. 01531, 2016 WL 3460439 (S.D.W. Va. June 21, 2016) ...........57

*City of Milwaukee v. Illinois & Michigan,*
    451 U.S. 304 (1981)................................................................................ 19, 21

*City of New York v. BP P.L.C.,*
    325 F. Supp. 3d 466 (S.D.N.Y. 2018) ............................................... 19, 21, 22

*City of Oakland v. BP PLC,*
    969 F.3d 895 (9th Cir. 2020) ................................................................. *passim*

*Club Comanche, Inc. v. Gov't of Virgin Islands,*
    278 F.3d 250 (3d Cir. 2002) .........................................................................19

*Cnty. of San Mateo v. Chevron Corp.,*
    294 F. Supp. 3d 934 (N.D. Cal. 2018)...................................................*passim*

*Cnty. of San Mateo v. Chevron Corp.,*
    960 F.3d 586 (9th Cir. 2020) ........................................................ 6, 45, 46, 47

*Collier v. District of Columbia,*
    46 F. Supp. 3d 6 (D.D.C. 2014).....................................................................52

*County of Montgomery v. Atlantic Richfield Co.,*
    No. 18 Civ. 5128, 2019 WL 2371808 (E.D. Pa. June 5, 2019).....................42

*Crosby v. Nat'l Foreign Trade Council,*
    530 U.S. 363 (2000)......................................................................................34

*DeAngelo-Shuayto v. Organon USA Inc.,*
    No. 07 Civ. 2923, 2007 WL 4365311 (D.N.J. Dec. 12, 2007)......................29

*Dougherty v. A O Smith Corp.,*
    No. 13 Civ. 1972, 2014 WL 3542243 (D. Del. July 16, 2014) .....................43

*Durham v. Lockheed Martin Corp.,*
    445 F.3d 1247 (9th Cir. 2006) .......................................................................50

*E. States Health & Welfare Fund v. Philip Morris, Inc.,*
    11 F. Supp. 2d 384 (S.D.N.Y. 1998) .............................................................20

*Empire HealthChoice Assurance, Inc. v. McVeigh,*
    547 U.S. 677 (2006)................................................................................*passim*

iv

*EPA v. EME Homer City Generation, L.P.*,
    572 U.S. 489 (2014)........................................................................................17

*Erie Ins. Exch. v. Erie Indem. Co.*,
    722 F.3d 154 (3d Cir. 2013) .........................................................................58

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546 (2005).................................................................................. 7, 59

*Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*,
    No. 06 Civ 4197, 2007 WL 1456204 (D.N.J. May 15, 2007)............... 26, 29

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981)........................................................................................20

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S.
    Cal.*,
    463 U.S. 1 (1983)................................................................................ 7, 9, 19

*Freedom From Religion Found. v. Morris Cnty. Bd. of Chosen
    Freeholders*,
    No. 16 Civ. 185, 2016 WL 1070594 (D.N.J. Mar. 18, 2016) .......... 11, 12, 24

*Glazer v. Honeywell Int'l. Inc.*,
    No. 16 Civ. 7714, 2017 WL 1943953 (D.N.J. May 10, 2017).......................8

*Goepel v. Nat'l Postal Mail Handlers Union, a Div. of LIUNA*,
    36 F.3d 306 (3d Cir. 1994) .............................................................................20

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005)................................................................................. 24, 30

*Greer v. Fed. Express*,
    66 F. Supp. 2d 870 (W.D. Ky. 1999) ............................................................23

*Gunn v. Minton*,
    568 U.S. 251 (2013)........................................................................................24

*Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*,
    874 F.2d 332 (6th Cir. 1989) .........................................................................14

*Hernandez v. Grisham*,
    No. 20 Civ. 0942, 2020 WL 6063799 (D.N.M. Oct. 14, 2020) ....................30

*Hobson v. Hansen*,
    265 F. Supp. 902 (D.D.C. 1967)...................................................................52

*Hufnagel v. Omega Serv. Indus., Inc.*,
    182 F.3d 340 (5th Cir. 1999) ...................................................................53

*In re Asbestos Prods. Liab. Litig.*,
    No. 09 Civ. 60001, 2009 WL 8520132 (E.D. Pa. Apr. 24, 2009).......... 50, 52

*In Re Counsel Against or Directed to Defender Ass'n of Phila.*,
    790 F.3d 457 (3d Cir. 2015) ........................................................... 37, 38, 44

*In re Deepwater Horizon*,
    745 F.3d 157 (5th Cir. 2014) ...................................................................53

*In re High–Tech Emp. Antitrust Litig.*,
    856 F. Supp. 2d 1103 (N.D. Cal. 2012).......................................................50

*In re U.S. Healthcare, Inc.*,
    193 F.3d 151 (3d Cir. 1999) ...................................................................11

*International Paper Co. v. Ouellette*,
    479 U.S. 481 (1987)...................................................................21

*Jacks v. Meridian Res. Co.*,
    701 F.3d 1224 (8th Cir. 2012) ...................................................................45

*Joyner v. A.C. & R. Insulation Co.*,
    No. 12 Civ. 2294, 2013 WL 2460537 (D. Md. June 6, 2013)......................43

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020) ...................................................................21

*K2 Am. Corp. v. Roland Oil & Gas, LLC*,
    653 F.3d 1024 (9th Cir. 2011) ...................................................................29

*Keltner v. SunCoke Energy, Inc.*,
    No. 14 Civ. 1374, 2015 WL 3400234 (S.D. Ill. May 26, 2015) ..................14

*Lougy v. Volkswagen Grp. of Am., Inc.*,
    No. 16 Civ. 1670, 2016 WL 3067686 (D.N.J. May 19, 2016)......................28

*Louisville & Nashville R. Co. v. Mottley,*
    211 U.S. 149 (1908)...................................................................................9

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.,*
    772 F.3d 158 (3d Cir. 2014) ................................................... 25, 32

*Martincic v. A.O. Smith Corp.,*
    No. 20 Civ. 958, 2020 WL 5850317 (W.D. Pa. Oct. 1, 2020).....................43

*Massachusetts v. Exxon Mobil Corp.,*
    462 F. Supp. 3d 31 (D. Mass. 2020)....................................... *passim*

*Matter of the Estate of Curcio,*
    No. 16 Civ. 3185, 2016 WL 6540449 (D.N.J. Nov. 3, 2016) .........................8

*Mayor & City Council of Baltimore v. B.P. P.L.C.,*
    952 F.3d 452 (4th Cir. 2020) ................................................. *passim*

*Mayor & City Council of Baltimore v. BP P.L.C.,*
    388 F. Supp. 3d 538 (D. Md. 2019)....................................... *passim*

*McGurl v. Trucking Employees of N. Jersey Welfare Fund, Inc.,*
    124 F.3d 471 (3d Cir. 1997) .......................................................21

*McKay v. City & Cnty. of San Francisco,*
    Nos. 16 Civ. 3561, 3564, 2016 WL 7425927 (N.D. Cal. Dec. 23, 2016).....33

*Merkel v. Fed. Express Corp.,*
    886 F. Supp. 561 (N.D. Miss. 1995) .............................................13

*Metro. Life Ins. Co. v. Taylor,*
    481 U.S. 58 (1987).............................................................. 13, 17

*Metropolitan Life Ins. Co. v. Taylor,*
    481 U.S. 58 (1987)...................................................................11

*MHA LLC v. HealthFirst, Inc.,*
    629 F. App'x 409 (3d Cir. 2015) .................................................24

*Milwaukee v. Illinois & Michigan,*
    451 U.S. 304 (1981).......................................................... 19, 21

*Morgan v. Gay,*
　　471 F.3d 469 (3d Cir. 2006) ........................................................................59

*N.C. ex rel. Cooper v. TVA,*
　　615 F.3d 291 (4th Cir. 2010) .......................................................................17

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians,*
　　471 U.S. 845 (1985)......................................................................................21

*Native Vill. of Kivalina v. ExxonMobil Corp.,*
　　696 F.3d 849 (9th Cir. 2012) ........................................................... 17, 19, 21

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey,*
　　760 F.3d 297 (3d Cir. 2014) .........................................................................14

*New Mexico ex rel. Balderas v. Monsanto Co.,*
　　454 F. Supp. 3d 1132 (D.N.M. 2020)...........................................................13

*Oneida Indian Nation v. County of Oneida,*
　　414 U.S. 661 (1974)......................................................................................12

*Papp v. Fore-Kast Sales Co.,*
　　842 F.3d 805 (3d Cir. 2016) ........................................................... 36, 38, 41

*Pennsylvania Emps. Benefit Tr. Fund v. Eli Lilly & Co.,*
　　No. 07 Civ. 2057, 2007 WL 2916195 (E.D. Pa. Oct. 5, 2007) ....................31

*Peralta v. ABN AMRO Mortg. Grp., Inc.,*
　　No. 13 Civ. 05607, 2014 WL 1673737 (D.N.J. Apr. 24, 2014)....................33

*Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.,*
　　559 F.3d 772 (8th Cir. 2009) .......................................................................32

*Pharm. Inc. v. Thompson,*
　　478 U.S. 804 (1986)......................................................................................31

*Plains Gas Solutions, LLC v. Tenn. Gas Pipeline Co.,*
　　46 F. Supp. 3d 701 (S.D. Tex. 2014)............................................................53

*Provincial Gov't of Marinduque v. Placer Dome, Inc.,*
　　582 F.3d 1083 (9th Cir. 2009) .....................................................................34

*Reilly v. Novartis Pharm. Corp.*,
No. 07 Civ. 4665, 2009 WL 3010540 (D.N.J. Sept. 18, 2009) .....................32

*Rhode Island v. Chevron Corp.*,
393 F. Supp. 3d 142 (D.R.I. 2019) ........................................................ *passim*

*Rhode Island v. Shell Oil Prod. Co.*,
No. 19 Civ. 1818, 2020 WL 6336000 (1st Cir. Oct. 29, 2020).... 6, 39, 46, 47

*Rhodes v. MCIC, Inc.*,
210 F. Supp. 3d 778 (D. Md. 2016)................................................................43

*Rivent v. Regions Bank of Louisiana*,
522 U.S. 470, 478 (1998) ............................................................................20

*Rodriguez v. Hovensa, L.L.C.*,
No. 2012 Civ. 100, 2014 WL 1308836 (D. Virgin Is. Mar. 31, 2014) .........30

*Rosenberg v. DVI Receivables XVII, LLC*,
835 F.3d 414 (3d Cir. 2016) ................................................................. 14, 15

*Ruzich v. Volkswagen Grp. of Am., Inc*,
No. 16 Civ. 4753, 2016 WL 5858652 (D.N.J. Oct. 4, 2016) ........................28

*Ry. Labor Execs. Ass'n v. Pittsburgh & Lake Erie R. Co.*,
858 F.2d 936 (3d Cir. 1988) ................................................................. 11, 15

*Sam L. Majors Jewelers v. ABX, Inc.*,
117 F.3d 922 (5th Cir. 1997) ................................................................ 22, 23

*Samuel-Bassett v. KIA Motors Am., Inc.*,
357 F.3d 392 (3d Cir. 2004) .........................................................................8

*Sealy v. Verizon Commc'ns, Inc.*,
No. 13 Civ. 461, 2014 WL 7182341 (D.N.J. Aug. 1, 2014) .........................11

*See Cnty. of Lehigh v. Atl. Richfield Co.*,
No. 18 Civ. 5140, 2019 WL 2371783 (E.D. Pa. June 5, 2019)............. 27, 28

*Seven Plus One, LLC v. Sellers*,
2016 WL 6994346 (N.J. Super. Ct. App. Div. Nov. 29, 2016).....................26

*Shell Oil Co. v. United States,*
    751 F.3d 1282 (Fed. Cir. 2014) ...................................................................48

*Sherman v. Hopewell Twp. Police Dep't,*
    No. 19 Civ. 14553, 2020 WL 919682 (D.N.J. Feb. 26, 2020) ......................25

*St. Paul Mercury Indem. Co. v. Red Cab Co.,*
    303 U.S. 283 (1938) .......................................................................................8

*Steel Valley Auth. v. Union Switch & Signal Div.,*
    809 F.2d 1006 (3d Cir. 1987) .........................................................................8

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ........................................................................23

*Treiber & Straub, Inc. v. U.P.S.,* Inc.,
    474 F.3d 379 (7th Cir. 2007) ................................................................ 19, 21

*United States v. Shell Oil Co.,*
    294 F.3d 1045 (9th Cir. 2002) ......................................................................48

*United States v. Swiss Am. Bank, Ltd.,*
    191 F.3d 30 (1st Cir. 1999) ...........................................................................21

*Vaden v. Discover Bank,*
    556 U.S. 49 (2009) .........................................................................................9

*Various Plaintiffs v. Various Defendants ("Oil Field Cases"),*
    673 F. Supp. 2d 358 (E.D. Pa. 2009) ............................................................53

*Washington v. Monsanto Co.,*
    274 F. Supp. 3d 1125 (W.D. Wash. 2017) ...................................................51

*Waterfall Victoria Mortg. Tr. 2010-SBCI REO LLC v. Albanes,*
    No. 16 Civ. 4751, 2017 WL 916443 (D.N.J. Mar. 8, 2017) ........................10

*Watson v. Phillip Morris Cos., Inc.,*
    551 U.S. 142 (2007) .......................................................... 36, 44, 45, 47

*Winters v. Diamond Shamrock Chem. Co.,*
    149 F.3d 387 (5th Cir. 1998) ................................................................ 45, 49

*Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*,
   164 F.3d 123 (2d Cir. 1999) ..........................................................21

*Zuniga v. Chugach Maint. Servs.*,
   No. 06 Civ. 48, 2006 WL 769317 (E.D. Cal. March 24, 2006) ...................50

## Statutes

28 U.S.C. § 1331 ......................................................................... 8, 10

28 U.S.C. § 1332 ....................................................................... 56, 57, 59

28 U.S.C. § 1441 ......................................................................... 8, 10

28 U.S.C. § 1442 ............................................................................36

42 U.S.C. § 1983 ............................................................................8

42 U.S.C. § 7401 ...........................................................................13

42 U.S.C. § 7604 ...........................................................................17

43 U.S.C. § 1349 ...........................................................................53

43 U.S.C. §1353 ...........................................................................47

N.J. Stat. § 56:8-1..........................................................................2

## Other Authorities

Webster's New International Dictionary 948 (2d ed. 1953)...................44

Plaintiff the City of Hoboken submits this memorandum of law in support of its motion to remand this case to the New Jersey Superior Court in Hudson County.

## PRELIMINARY STATEMENT

Plaintiff, a New Jersey municipality, sued in New Jersey state court for relief under New Jersey law for damages incurred in New Jersey, including damages caused by at least one major New Jersey corporation.  Under federal law that dates back at least 150 years, this case belongs in a New Jersey state court.

Defendants' notice of removal is as prolix as it is hollow.  Not once in their 167-page notice do Defendants substantively address the basic standard for federal removal—the well-pleaded complaint rule.  Not once do they identify a single federal statute that on its face completely preempts traditional state law remedies for nuisance, trespass, negligence, and consumer fraud, which could theoretically justify an exception to the well-pleaded complaint rule.  They identify no substantial issues of federal law that must necessarily be decided in ruling on Hoboken's claims, so as to invoke the *Grable* doctrine.  And Defendants' federal officer, federal enclave, and Outer Continental Shelf removal arguments—which take up a full 69 pages of their notice of removal—fundamentally misread the Complaint, which has nothing to do with Defendants' conduct acting under federal officers, on federal enclaves, or on the Outer Continental Shelf.  Finally, Defendants' Class Action Fairness Act argument—a  recent invention in their

1

litigation strategy—is just that: an invention from whole cloth, with no basis in statute or caselaw.

The federal courts have rejected Defendants' first *six* attempts, on similarly lengthy and insubstantial removal notices, to remove well-pleaded state-law claims from state court to federal court. Four Courts of Appeals have affirmed these remand orders as to Defendants' federal officer grounds for removal, and the Ninth Circuit has reversed the *sole* district court to have denied a motion to remand, holding that Defendants' arguments for removal (including federal question removal) are baseless. Yet, Defendants persist, buoyed by an unlimited litigation budget, in advancing *exactly* the same frivolous arguments for the umpteenth time.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2020, the City of Hoboken ("City" or "Hoboken" or "Plaintiff") sued Defendants in the Superior Court of New Jersey, Hudson County, asserting claims under New Jersey common law for public nuisance, private nuisance, trespass, and negligence, and a claim under the New Jersey Consumer Fraud Act, N.J. Stat. §§ 56:8-1, *et seq*. ("NJCFA"). ECF No. 1-2 ("Compl."). On October 9, 2020, Defendants Chevron Corp. and Chevron U.S.A. Inc., on behalf of all Defendants, filed a notice of removal asserting seven grounds for federal court jurisdiction: federal common law, the Outer Continental Shelf Lands Act ("OCSLA"), the Federal Officer Removal Statute, *Grable* jurisdiction, federal

preemption, federal enclave jurisdiction, and the Class Action Fairness Act

("CAFA").  *See* Notice of Removal, ECF No. 1 ("NOR") ¶¶ 5-11.  Plaintiff filed a

notice of motion to remand on November 5, ECF No. 71, and now files its brief in

support of that motion pursuant to the Order of October 20, 2020, ECF No. 40.

 "The scientific consensus that human activities are warming the planet is

now beyond debate," Compl. ¶ 27, and the "leading driver of global warming in

the last several decades is the dramatic increase in the atmospheric concentration

of greenhouse gasses," *id.* ¶ 30.  *See also id.* ¶¶ 27-74.  "The fossil fuels produced

and distributed by [Defendants] Exxon, Chevron, Shell, BP, and ConocoPhillips

alone account for more than 12% of all global $CO_2$ emissions between 1965 and

2017."  *Id.* ¶ 42; *see also id.* ¶¶ 194-208.  "Defendants have known about the

enormous harms that fossil fuels have caused and will continue to cause to the

climate and communities around the world for more than fifty years, dating back to

when these harms were only vaguely understood by the general public."  *Id.* ¶ 75.

Instead of sharing that data, the Fossil Fuel Defendants—Exxon Mobil Corp.,

Exxonmobil Oil Corp., Royal Dutch Shell PLC, Shell Oil Company, BP PLC, Bp

America Inc., Chevron Corp., Chevron U.S.A. Inc., Conocophillips,

Conocophillips Company, Phillips 66, and Phillips 66 Company—often funneling

their activities through Defendant American Petroleum Institute ("API"), engaged

in a decades-long sustained campaign of misinformation and deception, refusing to

take the climate effects of their production, marketing, and sale activities into account, all in the interest of "prioritize[ing] profits over averting monumental harm to communities like Hoboken." *Id.*; *see also id.* ¶¶ 75-161. They did so while protecting their own infrastructure from the harms they (internally) predicted would take place. *Id.* ¶¶ 162-71. That campaign of disinformation continues to this day, and has been directed at New Jersey consumers. *Id.* ¶¶ 172-93, 209-15.

Defendants have earned profits that dwarf the GDPs of countless sovereign nations as a result. Defendant Exxon Mobil Corporation, a New Jersey corporation and a primary culprit of much of the conduct complained of, earned over $21 billion in profits in 2018 alone. *Id.* ¶ 18(b). The climate harms caused by Defendants have and will cost the City of Hoboken hundreds of millions of dollars in damages and abatement costs, including costs to prevent the trespass of waters onto City land. *Id.* ¶¶ 269-87. The externalities of Defendants' acts are properly placed on them, not on Hoboken, and this suit seeks to do just that. *Id.* ¶ 287.

Contrary to Defendants' assertions, this case does not seek to limit the extraction of fossil fuels[1] or otherwise regulate greenhouse gas emissions. Nor

---

[1] Defendants argue repeatedly that "Plaintiff asks this Court to halt Defendants' production of oil and gas by assessing massive monetary damages and entering an injunction." NOR at 3; *see also id.* at 19 ("The Complaint seeks . . . a permanent injunction against Defendants' production of oil and gas."); *id.* ¶ 160 ("the remedies Plaintiff seeks—massive damages backed up by an injunction that, functionally, would halt or drastically reduce fossil fuel production"); *id.* ¶¶ 3, 30, 39, 136, 143, 161 (claiming Plaintiff is seeking "injunctive relief" to stop fossil

does it seek an injunction against the federal government or any of its agencies, challenge the regulatory decisions made by any federal or state agencies or the cost-benefit analyses employed by those entities, or seek to intervene in or otherwise interfere in any foreign policy of the United States.  Hoboken does not allege that Defendants have deceived federal regulators.  Rather, the Complaint seeks—based on Defendants' long history of unfettered production, marketing, and sale of fossil fuels, and their misrepresentations and omissions about the effects such fossil fuels have on communities like Hoboken—traditional common law and statutory relief in the form of damages and reimbursement for costs associated with abating the harms Defendants have caused.

All but one of the Defendants in this action have been defendants in one or more federal district court actions rejecting *precisely* the bases for removal cited here.  By Plaintiff's count, five district courts have rejected the Fossil Fuel

---

fuel production).  That is false.  The sole reference to any relief that could even conceivably be considered injunctive is in Plaintiff's trespass claim, Compl. ¶¶ 323-338, where Plaintiff makes clear that the only relief sought against Defendants—framed, as is traditional in New Jersey state courts, as equitable relief—is compensation for the mitigation measures Plaintiff will have to continue to take to prevent the trespass Defendants are causing, *id.* ¶ 330(b).  To the extent there is any ambiguity, Plaintiff disclaims expressly any intent to seek an injunction "against Defendants' production of oil and gas," as Defendants have erroneously framed this relief.  To the extent Defendants complain that Plaintiff's "massive monetary damages" would shut down their ability to produce fossil fuels, that outcome is both speculative and highly unlikely, given the vast profits these entities earn every year, and have earned for over a century.

Defendants' complete preemption, *Grable* removal, Outer Continental Shelf, federal enclave, and federal officer removal arguments. *See Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020) ("*Massachusetts*"); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019) ("*Rhode Island I*"); *See Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019) ("*Boulder Cnty. I*"); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *as amended* (June 20, 2019) ("*Baltimore I*"); *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) ("*San Mateo I*").  Four Circuit Courts of Appeals have reviewed these decisions and affirmed their rejection of federal officer removal, which they held was the only appealable ground for removal.  *Rhode Island v. Shell Oil Prod. Co.*, No. 19 Civ. 1818, 2020 WL 6336000 (1st Cir. Oct. 29, 2020) ("*Rhode Island II*"); *Bd. of Cnty. Comm'rs of Boulder Cnty. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792 (10th Cir. 2020) ("*Boulder Cnty. II*"); *Cnty. of San Mateo v. Chevron Corp.*, 960 F.3d 586 (9th Cir. 2020) ("*San Mateo II*"); *Mayor & City Council of Baltimore v. B.P. P.L.C.*, 952 F.3d 452 (4th Cir. 2020) ("*Baltimore II*").[2]  The Ninth Circuit reversed the only district court to deny a municipal plaintiff's remand motion,

---

[2] The Supreme Court has granted certeriori in *Baltimore II* on the narrow question of the scope of appellate review under 28 U.S.C. § 1447(d) and is not reviewing the Fourth Circuit's or district court's holdings on removal.  *BP p.l.c. v. Mayor & City Council of Baltimore*, No. 19-1189, 2020 WL 5847132 (U.S. Oct. 2, 2020).

holding that federal question removal was improper. *City of Oakland v. BP PLC*, 969 F.3d 895, 902 (9th Cir. 2020) ("*Oakland II*"), reversing *California v. BP p.l.c.*, No. 17 Civ. 06011, 2018 WL 1064293 (N.D. Cal. Feb. 27, 2018) ("*Oakland I*"). And the District of Massachusetts has rejected Defendants' recently concocted CAFA removal argument. *Massachusetts*, 462 F. Supp. 3d at 47-51.

**ARGUMENT**

By design, federal courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation marks and citation omitted). "They possess only that power authorized by Constitution and statute." *Id.* "If there is any doubt as to the propriety of removal [of a case from a state court], that case should not be removed to federal court." *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983) ("considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it."). Hoboken is master of its Complaint and Defendants cannot "create the prerequisites to removal by ignoring the set of facts" pleaded "and argu[e] that there are different facts [Hoboken] might have alleged that would have constituted a federal claim." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 396-97 (1987).

## I.   THERE IS NO FEDERAL QUESTION ON THE FACE OF THE COMPLAINT

"The party removing the action has the burden of establishing federal jurisdiction." *Glazer v. Honeywell Int'l. Inc.*, No. 16 Civ. 7714, 2017 WL 1943953, at *2 (D.N.J. May 10, 2017) (Vazquez, J.) (citing *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)).  The burden is a heavy one as "28 U.S.C. § 1441 is to be strictly construed against removal." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).  "This policy 'has always been rigorously enforced by the courts.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288 (1938)).

Removal of this case on federal question grounds only lies if the Court would have had jurisdiction under 28 U.S.C. § 1331 had the suit been filed here. 28 U.S.C. § 1441(a).  "Pursuant to 28 U.S.C. § 1331, federal question jurisdiction can exist in basically three ways: (1) a pleading that contains an expressly pleaded federal claim, *e.g.*, a claim under a federal statute such as 42 U.S.C. § 1983; (2) the complete preemption doctrine, which turns a state law claim into a federal one based on the subject matter involved, *e.g.,* an attempt to plead as a state claim a purely federal issue (like patents); or (3) a narrow category of cases giving rise to what is colloquially referred to as *Grable* jurisdiction." *Matter of the Estate of Curcio*, No. 16 Civ. 3185, 2016 WL 6540449, at *3 (D.N.J. Nov. 3, 2016) (Falk, M.J.) (internal citations omitted).  This case fits none of these categories.

8

### A.   Hoboken Pleaded No Federal Cause of Action

"[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).  Under the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 391–92.  The rule "makes the plaintiff the master of the claim," because, in drafting the complaint, the plaintiff may choose to "avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 392.  "Federal jurisdiction cannot be predicated on an actual or anticipated defense" based in federal law. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009); *see also Franchise Tax Bd.*, 463 U.S. at 10 ("[U]nder the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff*'s complaint establishes that the case 'arises under' federal law.") (emphasis in original).

Hoboken, as the master of its complaint, is at liberty to raise or not raise federal claims.  None of Hoboken's claims rely on federal law, and none seek to adjudicate compliance with any federal statute.  Compl. ¶¶ 289-366 (five counts, sounding in New Jersey common law and the New Jersey Comsumer Fraud Act, with no reference to federal law).  Despite spanning 167 pages, Defendants' notice

of removal mentions the "well-pleaded complaint" rule only three times, with no discussion of that standard. Defendants have not suggested that Hoboken cited any federal statute, the U.S. Constitution, or any federal common law on the face of its complaint. Since Hoboken "brought a state law action in state court," and no "artful pleading" is at issue, *Waterfall Victoria Mortg. Tr. 2010-SBCI REO LLC v. Albanes*, No. 16 Civ. 4751, 2017 WL 916443, at *3 (D.N.J. Mar. 8, 2017) (Vazquez, J.), this Court does not have jurisdiction under 28 U.S.C. § 1331 and removal was improper under 28 U.S.C. § 1441, *Caterpillar*, 482 U.S. at 391–92.

## B.    Federal Preemption Is Not a Basis for Removal

Defendants claim that removal is proper because Hoboken's claims under state law are preempted by federal law. This argument appears to come in two flavors: (1) that Hoboken's claims are "completely preempted by the Clean Air Act and other federal statutes, treaties and international agreements, and the United States Constitution," NOR ¶ 9; and/or (2) that Hoboken's claims "must be governed exclusively by federal [common] law," *id.* ¶ 5. While the first of these arguments is a recognized doctrine, albeit inapplicable in this case, the latter is an invention of Defendants.

### 1.    There Are No Federal Statutes That Expressly and Completely Preempt Hoboken's State Law Claims

There is only one "narrow exception to the well-pleaded complaint rule for instances where *Congress has expressed its intent* to 'completely pre-empt' a

particular area of law such that any claim that falls within this area is 'necessarily federal in character.'" *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999) (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64 (1987)) (emphasis added).  The complete preemption doctrine is "very limited" in scope. *Ry. Labor Execs. Ass'n v. Pittsburgh & Lake Erie R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988).  It is only appropriate "if Congress intended [the federal statute] to provide the exclusive cause of action," *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003), and, "[i]f Congress intends a preemption instruction completely to displace ordinarily applicable state law, and to confer federal jurisdiction thereby, it may be expected to make that atypical intention clear," *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 698 (2006); *see also Freedom From Religion Found. v. Morris Cnty. Bd. of Chosen Freeholders*, No. 16 Civ. 185, 2016 WL 1070594, at *2 (D.N.J. Mar. 18, 2016) (Vazquez, J.) (exception applies "when either *expressly provided by Congress* or when 'a federal statute *wholly displaces* the state-law cause of action through complete pre-emption.'") (quoting *Allstate Ins. Co. v. 65 Sec. Plan*, 879 F.2d 90, 93 (3d Cir. 1989)) (emphasis in original). Such complete "[p]reemption is not lightly inferred."  *Sealy v. Verizon Commc'ns, Inc.*, No. 13 Civ. 461, 2014 WL 7182341, at *3 (D.N.J. Aug. 1, 2014) (Falk, M.J.), *report and recommendation adopted,* 2014 WL 7331950 (D.N.J. Dec. 15, 2014).

Defendants argue that Hoboken's claims are "completely preempted by the Clean Air Act and other federal statutes, treaties and international agreements, and the United States Constitution."  NOR ¶ 9.  They do not, however, point to a *single* case where *any* court has found complete preemption under "treaties and international agreements" or under "the United States Constitution."  The Supreme Court, the Third Circuit, and this Court have all held unanimously that the basic requirement for complete preemption is an express and unequivocal Congressional intent to displace all state law remedies.[3]  *Empire HealthChoice*, 547 U.S. at 698; *Allstate Ins. Co.*, 879 F.2d at 93; *Freedom From Religion Found.*, 2016 WL 1070594, at *2.  Such *Congressional* intent, axiomatically, cannot be gleaned from the federal Constitution.  It also cannot be gleaned from "treaties and international agreements," especially agreements like the Paris Climate Agreement entered into without Congressional approval, that say nothing about state law causes of action, and that provide no causes of action of their own.  And, since the Supreme Court has held that "[w]hether latent federal power should be exercised to displace state

---

[3] Defendants claim that the Supreme Court recognized in *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1 (2003), that there could be "a non-statutory form of complete preemption" relating to Indian tribes under *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974), NOR ¶ 177, presumably suggesting that such non-statutory authority should be extended.  They fail, however, to quote the very next sentence from *Beneficial National Bank*, which held that "[b]ecause that case [*Oneida*] turned on the special historical relationship between Indian tribes and the Federal Government, it does not assist the present analysis" on the scope of the complete preemption doctrine.  539 U.S. 1, 8 n.4 (2003).

law is primarily a decision for Congress, not the federal courts," *Atherton v. FDIC*, 519 U.S. 213, 218 (1997) (internal quotation marks and citation omitted), "[f]ederal common law cannot support complete preemption," *New Mexico ex rel. Balderas v. Monsanto Co.*, 454 F. Supp. 3d 1132, 1149–50 (D.N.M. 2020).  The Ninth Circuit thus summarily dismissed Defendants' non-statutory complete preemption arguments earlier this year.  *See Oakland II*, 969 F.3d at 905–06; *see also Boulder Cnty. I*, 405 F. Supp. 3d at 973 (with regards to "federal common law . . . there is no congressional intent which the court may examine—and therefore congressional intent to make the action removable to federal court cannot exist") (quoting *Merkel v. Fed. Express Corp.*, 886 F. Supp. 561, 566 (N.D. Miss. 1995)); *see also Massachusetts*, 462 F. Supp. 3d at 41 (recognizing that courts have found that "complete preemption may flow <u>only from a statute</u>") (emphasis in original); *Rhode Island I*, 393 F. Supp. 3d at 149 ("Without a federal statute wielding — or authorizing the federal courts to wield — 'extraordinary preemptive power,' there can be no complete preemption.") (quoting *Metro. Life Ins. Co.*, 481 U.S. at 65).

Nor does complete preemption arise from the Clean Air Act, 42 U.S.C. § 7401 ("CAA").[4]  "The Supreme Court has recognized the 'complete preemption' doctrine in only three instances: § 301 of the LMRA; § 502(a) of ERISA; and

---

[4] Defendants state that Plaintiff's claims are "completely preempted by the Clean Air Act and other federal statutes," NOR ¶ 9, but only cite and discuss the CAA.

13

§§ 85 and 86 of the National Bank Act." *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014) (internal citations omitted); *accord Rosenberg v. DVI Receivables XVII, LLC*, 835 F.3d 414, 421 n.4 (3d Cir. 2016); *Oakland II*, 969 F.3d at 905–06. No court has found that the CAA completely preempts state law remedies. Quite to the contrary: Defendants have lost each time they have made this argument. *See, e.g.*, *Oakland II*, 969 F.3d at 907 ("The Clean Air Act is not one of the three statutes that the Supreme Court has determined has extraordinary preemptive force."); *Baltimore I*, 388 F. Supp. 3d at 562 (same); *Boulder Cnty. I*, 405 F. Supp. 3d at 971 (same); *Rhode Island I*, 393 F. Supp. 3d at 150 (same); *San Mateo I*, 294 F. Supp. 3d at 938 (same). Even in pollution claims, which to be clear is *not* the claim here, courts have uniformly found that the CAA does not completely preempt state law. *See, e.g.*, *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 342 (6th Cir. 1989); *Keltner v. SunCoke Energy, Inc.*, No. 14 Civ. 1374, 2015 WL 3400234, at *5 (S.D. Ill. May 26, 2015).

The Third Circuit, in *Bell v. Cheswick Generating Station*, reviewing a district court's holding that the "Clean Air Act preempted all of the [plaintiff's] state law claims" in the context of ordinary (and not complete) preemption, held that state tort law remedies—including claims for negligence, nuisance, and trespass—persisted even though the defendant power plant was operating under a

permit from the EPA that was governed by the CAA.  734 F.3d 188, 193 (3d Cir.
2013).  It rejected the defendant's argument that "allowing such claims to go
forward 'would undermine the [Clean Air Act]'s comprehensive scheme, and make
it impossible for regulators to strike their desired balance in implementing
emissions standards.'"  *Id.* (modification in original).  As the Third Circuit has held
that the CAA does not even ordinarily preempt state law in many cases, the CAA
cannot exercise the "extraordinary" "preemptive force" required for complete
preemption.  *See Rosenberg*, 835 F.3d at 421 n.4 (complete preemption is only
applicable to a small subset of federal laws that can create ordinary preemption).

The CAA's text and structure make clear that complete preemption would be
inappropriate even if *Bell* did not already answer the question.  A necessary
condition for complete preemption is that the federal statute must provide "the
exclusive cause of action for the claim asserted and also set forth procedures and
remedies governing that cause of action."  *Beneficial Nat'l Bank*, 539 U.S. at at 8.
"[T]he doctrine of complete preemption . . . has never been applied in a situation
where there was no federal cause of action comparable to the state cause of action
asserted by the plaintiff," "vindicating the same interest the plaintiff's state cause
of action seeks to vindicate."  *Ry. Labor Execs. Ass'n*, 858 F.2d at 942.

The CAA provides no federal cause of action for nuisance, trespass,
negligence, or consumer fraud *at all*, let alone as a replacement for traditional

common law remedies against private defendants for tortious conduct. Defendants have not suggested that any such federal cause of action exists. The *only* parts of the CAA they cite are the statute's provision for rulemaking by the EPA on emissions levels, and to the private right of action to challenge violations of emissions standards. *See* NOR ¶¶ 169-72. Yet, Hoboken did not sue to set regulations, it is not suing the EPA, and it is not seeking review of any actions the EPA has or has failed to take. It is suing private parties for relief—in the form of abatement and damages—for tortious conduct. Defendants say that Hoboken's claims "effectively seek to regulate national greenhouse gas emissions," NOR ¶ 170, but that does not make it true. As the court in *Boulder Cnty. I* held:

> Plaintiffs sue for harms caused by Defendants' sale of fossil fuels. The Clean Air Act is silent on that issue; it does not remedy Plaintiffs' harms or address Defendants' conduct. And neither EPA action, nor a cause of action against EPA, could provide the compensation Plaintiffs seek for the injuries suffered as a result of Defendants' actions.

405 F. Supp. 3d at 970. Complete preemption is thus unavailable.

In fact, the CAA includes savings clauses *preserving* state claims, thereby affirmatively disclaiming any possible "congressional intent to permit removal despite the plaintiff's exclusive reliance on state law," *Allstate Ins. Co.*, 879 F.2d at 93. The CAA provides that "[n]othing in this section shall restrict *any* right . . . under *any statute or common law* to seek enforcement of any emission standard or limitation *or to seek any other relief* (including relief against the Administrator or a

State agency)."  42 U.S.C. § 7604(e) (emphasis added).  "When a federal statute has a saving clause of this sort, Congress did not intend complete preemption, because there would be nothing to save if Congress intended to preempt every state cause of action within the scope of the statute."  *Oakland II*, 969 F.3d at 908 (internal quotations and modifications omitted); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 68 (1987) ("In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court.") (Brennan, J., concurring) (emphasis in original); *EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 537 (2014) (Scalia, J., dissenting) ("Down to its very core, the Clean Air Act sets forth a federalism-focused regulatory strategy.").

Defendants rely solely on *ordinary* preemption and statutory displacement cases, which, as discussed *infra*, are inapposite, ignoring *complete* preemption. *See Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 424 (2011) ("*AEP*") (holding that the CAA *displaced* plaintiffs' *federal* common law claim); *Native Vill. of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 857–58 (9th Cir. 2012) (holding that the CAA *displaced* the plaintiffs' federal common law claim); *N.C. ex rel. Cooper v. TVA*, 615 F.3d 291 (4th Cir. 2010) (ordinary preemption).  No authority supports finding the CAA completely preempts state law.

17

## 2.   "Ordinary" Preemption Is Not A Basis For Removal

Defendants' alternative invocation of federal common law as a basis for removal is unsupported in law.  Defendants claim that federal question jurisdiction exists in this case because Hoboken's cause of action sounds properly in federal common law—including the "foreign affairs doctrine"—not state common and statutory law.  "Because Plaintiff's claims necessarily arise exclusively under federal law—no matter how Plaintiff characterizes them—they are properly removed to this Court under its federal question jurisdiction."  NOR ¶ 5.

According to Defendants, the Court should look to "the substance of the complaint's allegations and demands for relief" and find "that those claims are exclusively federal by virtue of the structure of our Constitution and, therefore, necessarily arise under federal law." *Id.* ¶ 20.  "Defendants, in essence, want the Court to peek beneath the purported state-law façade of [Hoboken's state law claim], see the claim for what it would need to be to have a chance at viability, and convert it to that (*i.e.*, into a claim based on federal common law) for purposes of the present jurisdictional analysis.  The problem for Defendants is that there is nothing in the artful-pleading doctrine that sanctions this particular transformation." *Rhode Island I*, 393 F. Supp. 3d at 148.

A defendant who claims a state cause of action is not viable due to the existence of federal statutory or common law is making an argument for

18

"ordinary" preemption, and "it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of preemption." *Caterpillar*, 482 U.S. at 393 (emphasis in original). That is so "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14.

In seeking to avoid this black letter law, Defendants claim their reliance on federal common law as a basis for removal "does not implicate preemption principles or standards because a claim that 'arise[s] under federal common law . . . is a permissible basis for jurisdiction based on a federal question.'" NOR ¶ 15[5] (quoting *Treiber & Straub, Inc. v. U.P.S.*, Inc., 474 F.3d 379, 383 (7th Cir. 2007)). Defendants' argument, however, is foreclosed by binding Third Circuit authority,

---

[5] Defendants' position that their reliance on federal common law for jurisdiction "does not implicate preemption principles or standards" is puzzling since all of the key cases they cite in this section refer to just such "preemption principles or standards." *See, e.g., AEP*, 564 U.S. at 423 (comparing Congressional displacement of federal common law to "preemption of state law"); *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 317 (1981) (same); *Kivalina*, 696 F.3d at 863 (same); *City of New York v. BP P.L.C.*, 325 F. Supp. 3d 466, 472 (S.D.N.Y. 2018) (same); *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 483 (1987) ("This case involves the pre-emptive scope of the Clean Water Act."); *Club Comanche, Inc. v. Gov't of Virgin Islands,* 278 F.3d 250 (3d Cir. 2002) (remanding because of the well-pleaded complaint rule). Defendants themselves appear confused on this point, as they later claim that "Plaintiff's claims are also completely preempted because, as explained in Section IV [dealing, supposedly, with non-preemption issues], they arise under federal law," NOR ¶ 177.

19

because "the only state claims that are 'really' federal claims and thus removable

to federal court are those that are preempted completely by federal law." *Goepel v.*

*Nat'l Postal Mail Handlers Union, a Div. of LIUNA*, 36 F.3d 306, 311–12 (3d Cir.

1994) (internal citations omitted) (decision subsequently approved of by the

Supreme Court in *Empire Healthchoice*, 547 U.S. 677, resolving a circuit split in

the Third Circuit's favor).

Defendants cannot "force upon [Hoboken] a federal common-law cause of

action, despite the absence of such an action on the face of the complaint and

[Hoboken's] express disclaimer of such a right, merely because the facts alleged in

the complaint *could* potentially support a federal claim." *E. States Health &*

*Welfare Fund v. Philip Morris, Inc.*, 11 F. Supp. 2d 384, 396 (S.D.N.Y. 1998)

(emphasis in original); *see also Caterpillar*, 482 U.S. at 396-97 (defendants cannot

"create the prerequisites to removal by ignoring the set of facts" plaintiff pleaded

"and argu[e] that there are different facts [plaintiff] might have alleged that would

have constituted a federal claim").[6] Every court hearing a climate change case has

---

[6] Defendants cite *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394 (1981) for
the proposition that "courts will 'determine whether the real nature of the claim is
federal, regardless of plaintiff's characterization.'" NOR ¶ 20 n.57. The Supreme
Court, citing to that precise footnote in *Moitie*, limited it to its facts in *Rivent v.
Regions Bank of Louisiana*, 522 U.S. 470, 478 (1998) ("[W]e . . . clarify today
that *Moitie* did not create a preclusion exception to the rule, fundamental under
currently governing legislation, that a defendant cannot remove on the basis of a
federal defense.").

come to the same conclusion. *See Baltimore I*, 388 F. Supp. 3d at 555

("Defendants' assertion that the City's public nuisance claim under Maryland law

is in fact 'governed by federal common law' is a cleverly veiled preemption

argument." (internal citation omitted)); *Boulder I*, 405 F. Supp. 3d at 963 (same);

*Rhode Island I*, 393 F. Supp. 3d at 149 (same); *Massachusetts*, 462 F. Supp 3d at

40 n.6 (same); *San Mateo I*, 294 F. Supp. 3d at 937 (same).

Defendants' reliance on *International Paper Co. v. Ouellette*, 479 U.S. 481

(1987), and *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981)

(*"Milwaukee II"*), NOR ¶¶ 18, 22, is unavailing.  Neither case discussed the federal

question removability of well-pled state law claims.  *See Ouellette*, 479 U.S. at

500; *Milwaukee II*, 451 U.S.at 310.  In fact, Defendants rely almost exclusively on

cases in which the plaintiffs expressly invoked federal jurisdiction.[7]

Contrary to Defendants' claim that this Court has jurisdiction because "[t]he

Southern District of New York, addressing nearly identical claims, rejected the

state law labels the plaintiff had attached and held that these claims arise under

federal common law" in *City of New York v. BP P.L.C.*, that case was brought in

---

[7] *See e.g., Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 852-53 (1985); *Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972) ("*Milwaukee I*"); *AEP*, 564 U.S. at 418; *Kivalina*, 696 F.3d at 855; *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020); *Woodward Governor Co. v. Curtiss Wright Flight Sys., Inc.*, 164 F.3d 123 (2d Cir. 1999); *McGurl v. Trucking Employees of N. Jersey Welfare Fund, Inc.*, 124 F.3d 471, 475 (3d Cir. 1997); *Treiber*, 474 F.3d 379; *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30 (1st Cir. 1999).

federal court, not state court, and the court treated the claim as a pollution case, which is not the issue here.  325 F. Supp. 3d 466, 471 (S.D.N.Y. 2018).  *City of New York* is currently on appeal and, tellingly, its authorities for finding federal common law preempts state law are *Kivalina*, where the issue was displacement and not complete preemption, and the district court's holding in *Oakland I*, which has since been reversed.  *Id.*; *Boulder Cnty. I*, 405 F. Supp. 3d at 960 (noting that *City of New York* "followed the rationale of [*Oakland I*]").  The reasoning in *City of New York* is not persuasive to the issue it did address—ordinary preemption of state laws—and is entirely besides the point regarding federal removal since that was not before the court.  *See also Rhode Island I*, 393 F. Supp. 3d at 148 (rejecting *City of New York*'s analysis in the removal context); *Baltimore I*, 388 F. Supp. 3d at 557 (same); *Boulder Cnty. I*, 405 F. Supp. 3d at 966 (same); *Massachusetts*, 462 F. Supp. 3d at 43 (same).

Only one case cited by Defendants even arguably involves the removal of actions from state court on the basis that federal common law supplied the basis for the claim, despite not having been pled by the plaintiff.  *See Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922 (5th Cir. 1997) (cited at NOR ¶¶ 5, 14, 20 n.57, and 23).  In *Sam L. Majors*, the Fifth Circuit reviewed the history of the Federal Aviation Act and held that the Act's predecessor laws had expressly preempted all state laws regarding air transportation, and had a savings clause

preserved pre-existing federal (not state) common law relating to the liability of air carriers for lost or damaged goods, which then "develop[ed] and was saved by subsequent acts of Congress." *Id.* at 927. The court affirmed a grant of summary judgment and did not address either the master of the complaint doctrine or the propriety of removal on the basis of federal common law, neither of which were contested by the parties on appeal, and it expressly stated that its holding was "necessarily limited" because it "rel[ied] upon the historical availability of this common law remedy, and the statutory preservation of the remedy." *Id.* at 929 n.16. Subsequent courts have recognized the limited nature of the *Sam L. Majors* holding. *See, e.g.*, *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 650–51 (7th Cir. 2006). No climate change decision has found *Sam L. Majors* apposite or persuasive to the issue of federal question removal. *See Boulder Cnty. I*, 405 F. Supp. 3d at 963 ("[*Sam L. Majors*] contradict[s] *Caterpillar* and the tenets of the well-pleaded complaint rule. [It] also fail[s] to cite any Supreme Court or other controlling authority authorizing removal based on state law claims implicating federal common law."); *see also Greer v. Fed. Express*, 66 F. Supp. 2d 870, 874 (W.D. Ky. 1999) (rejecting the use of *Sam L. Majors* to justify removal, even in the airline freight context).

### 3.    *Grable* Removal is Inapplicable

Defendants also cannot invoke federal question jurisdiction under *Grable &*
*Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), which
recognized a "'special and small category' of cases in which arising under
jurisdiction still lies," *Gunn v. Minton*, 568 U.S. 251, 258 (2013), if they "really
and substantially involv[e] a dispute or controversy respecting the validity,
construction or effect of [federal] law," *Grable*, 545 U.S. at 313 (internal quotation
marks and citation omitted) (alteration in original).  Under *Grable*, federal
jurisdiction may exist over a wholly state-law complaint only in the limited
circumstance where a federal issue is: "(1) necessarily raised, (2) actually disputed,
(3) substantial, and (4) capable of resolution in federal court without disrupting the
federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.  "[O]nly a
'slim category' of state law claims" come within the *Grable* exception, which
"defined the outer limits of Section 1331." *Freedom From Religion Found.*, 2016
WL 1070594, at *1 (Vazquez, J.) (quoting *Empire Healthchoice*, 547 U.S. at 701).

A necessary but not sufficient condition for *Grable* removal is that "***an***
***element*** of the state law claim ***requires*** construction of federal law." *Freedom*
*From Religion Found.*, 2016 WL 1070594, at *1 (quoting *MHA LLC v.*
*HealthFirst, Inc.*, 629 F. App'x 409, 412–13 (3d Cir. 2015)) (emphasis in original);
*see also Rhode Island I*, 393 F. Supp. 3d at 150 ("If complete preemption is a state-

24

law cloche covering a federal-law dish, *Grable* jurisdiction is a state-law recipe

*requiring a federal-law ingredient*.") (emphasis added).  Further, "a claim

supported by alternative theories in the complaint may not form the basis for

[federal question] jurisdiction unless [federal] law is essential to each of those

theories."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988);

*see also Sherman v. Hopewell Twp. Police Dep't*, No. 19 Civ. 14553, 2020 WL

919682, at *3 (D.N.J. Feb. 26, 2020) ("A federal issue is not 'substantial' if

implicated in one alternative theory of recovery.").  A *defense*, even one that

requires construction of federal law, is not sufficient to justify removal under

*Grable*.  *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163

(3d Cir. 2014), *aff'd,* 136 S. Ct. 1562 (2016).  Thus, the defense of federal law

preemption, whether pleaded on the basis of field preemption or under the foreign

affairs doctrine, is not a "substantial" issue of federal law "necessarily raise[d]" by

Hoboken's claims.  *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*,

770 F.3d 944, 948 (10th Cir. 2014) (no federal jurisdiction where "the underlying

right or obligation arises only under state law and federal law is merely alleged as a

barrier to its effectuation.") (internal quotation marks omitted).

Hoboken has brought claims for private and public nuisance, trespass and

negligence under New Jersey common law, as well as a claim under the New

Jersey Consumer Fraud Act (NJCFA).  The primary reference by Defendants to the

elements of these claims under New Jersey law is a statement that "nuisance claims require a plaintiff to prove that the defendant's conduct is 'unreasonable,' which depends upon whether 'the gravity of the harm outweighs the utility of the actor's conduct' or that 'the harm caused by the conduct is serious.'"  NOR ¶ 140 (quoting *Seven Plus One, LLC v. Sellers*, 2016 WL 6994346, at *6 (N.J. Super. Ct. App. Div. Nov. 29, 2016)).[8]  Defendants equate the weighing of the "gravity of the harm" and "the utility of the actor's conduct" with the cost-benefit analysis federal agencies carry out in various aspects of environmental regulation, and claim that any determination that Defendants' conduct is "unreasonable" under state law would necessarily question the results of federal cost-benefit analyses, thereby creating an actually disputed substantial question of federal law.  *Id.* ¶¶ 140-41.

Defendants' argument is that any state law nuisance or negligence claim against an entity that is regulated in part by the federal government requires resolution of a federal question, thus making all such claims in state court subject to *Grable* removal.  Nonsense.  *See San Mateo I*, 294 F. Supp. 3d at 938 ("On the defendants' theory, many (if not all) state tort claims that involve the balancing of

---

[8] The bulk of Defendants' arguments in the Notice of Removal concern their baseless contentions that Plaintiff's claims should be dismissed on the merits.  But the substantive merits of Plaintiff's claims have nothing to do with the propriety of removal.  *See Fairfax Fin. Holdings Ltd.*, 2007 WL 1456204, at *4 ("evaluation of the merits of Plaintiffs' Complaint . . . would be wholly improper" in evaluating a motion to remand).

interests and are brought against federally regulated entities would be removable. *Grable* does not sweep so broadly.").

*First*, a regulatory agency's prospective, generalized, policy-oriented "balancing" pursuant to regulatory authority differs fundamentally in kind from the backward-looking, case-specific factor weighing a court conducts in a common law tort suit. Defendants have not identified any authority, under New Jersey law or any other law to suggest that they are coextensive, and it is *Defendants*' burden of proof. *See Cnty. of Lehigh v. Atl. Richfield Co.*, No. 18 Civ. 5140, 2019 WL 2371783, at *4 (E.D. Pa. June 5, 2019), *aff'd sub nom. Cnty. of Montgomery v. Atl. Richfield Co.*, 795 F. App'x 111 (3d Cir. 2020) ("Defendants' contention that resolution of Plaintiff's state-law nuisance claims will require the interpretation and application of the cited federal regulations [under the CAA] is also without merit" because, under state law, "a public nuisance is conduct involving an 'unreasonable interference with a right common to the general public.'")

*Second*, the federal government has not assessed the costs and benefits of fossil fuel activities at a global, industry, or company level; more important, it has not assessed the costs and benefits of companies marketing fossil fuels while not compensating for the harms they caused. Defendants have not identified any such assessment. Even if Defendants *had* identified any such assessment, and it was enshrined in law, that could only support (at best) an ordinary preemption defense.

27

Defendants' argument has recently been addressed, and rejected, by a district court in the Third Circuit, which found that it is not sufficient to argue that "Plaintiff's claims implicate substantial federal issues in that liability turns on the construction and application of federal regulations and/or standards," *Cnty. of Lehigh*, 2019 WL 2371783, at *1, especially "where there is no federal remedy for a violation of the federal statute," *id.* at *3. Even "state law claims based on conduct that is also regulated by federal law does not necessarily give rise to federal-question jurisdiction." *Id.* Similarly, federal courts in this Circuit have found in the context of auto emissions cases that the "fact that Plaintiff may be required to show a violation of the Clear Air Act in order to prevail does not [create] subject matter jurisdiction." *Ruzich v. Volkswagen Grp. of Am., Inc*, No. 16 Civ. 4753, 2016 WL 5858652, at *3 (D.N.J. Oct. 4, 2016); *see also Lougy v. Volkswagen Grp. of Am., Inc.*, No. 16 Civ. 1670, 2016 WL 3067686, at *3 (D.N.J. May 19, 2016) (relevance of federal standards or laws does not change the state-law nature of suit). Here, Hoboken does not allege—and does not have to allege—that Defendants' unlawful conduct under state law is *predicated* on a violation of federal law.

Defendants' *Grable* argument also fails because the federal issues they identify are not "substantial" in the context of *Grable*, such that "determining the merits of the [state law] claim" must "depend on construction of federal law."

28

*DeAngelo-Shuayto v. Organon USA Inc.*, No. 07 Civ. 2923, 2007 WL 4365311,

at *9 (D.N.J. Dec. 12, 2007).  Even an important federal interest in the outcome of

a state law suit is insufficient to establish substantiality, as the Supreme Court held

in *Empire Healthchoice*.  There, the federal government's "overwhelming interest

in attracting able workers to the federal workforce" and "in the health and welfare

of the federal workers upon whom it relies to carry out its functions" was found

insufficient to transform a "state-court-initiated tort litigation" into a "federal

case."  547 U.S. at 701; *see also K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653

F.3d 1024, 1032 (9th Cir. 2011) ("The mere fact that the Secretary of the Interior

must approve oil and gas leases does not raise a federal question."); *Bennett v. Sw.

Airlines Co.*, 484 F.3d 907, 912 (7th Cir. 2007) (reversing denial of remand in

personal injury case stemming from airline crash: despite extensive federal

regulation of air travel, the fact "[t]hat some standards of care used in tort litigation

come from federal law does not make the tort claim one 'arising under' federal

law."); *see Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*, No. 06 Civ.

4197, 2007 WL 1456204, at *3 (D.N.J. May 15, 2007) ("[A] plaintiff's inclusion

of federal criminal laws as predicate acts in their state-created RICO claims does

not raise substantial questions of federal law.").

    And, to be substantial, the court must be engaged in a "context-free-inquiry

into the meaning of a federal law" and not a "a fact-specific application of rules

that come from both federal and state law." *Bennett*, 484 F.3d at 910; *see also Grable*, 545 U.S. at 315. ("[T]he meaning of the federal statute . . . appears to be the only legal or factual issue contested in the case."). Here, even if Defendants are correct that the determination of "reasonableness" under nuisance law would turn in part on Defendants' compliance with federal law—and they are not— Defendants make no serious claim that the federal issue would be a "context-free inquiry into the meaning of a federal law," *Bennett*, 484 F.3d at 910, as "reasonableness" under New Jersey law requires a fact based analysis of the totality of circumstances, the precise kind of issue unsuitable to *Grable* jurisdiction. *Cf. Rodriguez v. Hovensa, L.L.C.*, No. 2012 Civ. 100, 2014 WL 1308836 at *4 (D. Virgin Is. Mar. 31, 2014) (remanding because, even though the complaint alleged "Defendants violated several federal environmental laws, the Court finds that Count VII is a cause of action for negligence, with the alleged violations of federal law pleaded as evidence of negligence *per se.*").

Even in the rare case where all other elements of *Grable* are met, "the Court must determine whether recognition of federal-question jurisdiction will federalize a 'garden variety' state-law claim that will result in the judiciary being bombarded with cases traditionally heard in state courts." *Hernandez v. Grisham*, No. 20 Civ. 0942, 2020 WL 6063799, at *41 (D.N.M. Oct. 14, 2020) (internal citations omitted). Defendants' view "would upset the balance between state and federal

courts because it would, in direct contravention of *Merrell Dow* [*Pharm. Inc. v. Thompson*, 478 U.S. 804 (1986)] and *Grable,* open the federal courthouse to any number of state law causes of actions that invoke a federal standard or stand against the backdrop of a federal regulatory scheme." *Pennsylvania Emps. Benefit Tr. Fund v. Eli Lilly & Co.*, No. 07 Civ. 2057, 2007 WL 2916195, at *6 (E.D. Pa. Oct. 5, 2007); *see also Bennett*, 484 F.3d at 911 ("mov[ing] a whole category of suits to federal court" was inconsistent with congressional judgment).

Defendants' proferred authority does not suggest otherwise.[9]  Defendants claim "[i]t is well settled that a collateral attack on a federal regulatory regime—an attempt to substitute state law for existing federal standards—presents a substantial federal question," citing *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347 (2001).  NOR ¶ 138.  In *Buckman*, the Supreme Court found federal jurisdiction because the plaintiff's "fraud on the FDA" claims "exist[ed] solely by virtue of the [federal] disclosure requirements," unlike "certain state-law causes of

---

[9] In some instances, Defendants' cases say the opposite of the proposition they are cited for.  Defendants, for instance, cite *Bennett v. Southwest Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007), for the proposition that "federal removal under Grable [is] appropriate where claims were 'a collateral attack on' agency action under a highly reticulated regulatory scheme."  NOR ¶ 138.  *Bennett* held the opposite, reversing the district court's denial of remand because "Illinois tort law supplies the claim for relief" and thus *Grable* did not apply even though "air transportation spans multiple states . . ., which makes a uniform set of rules desirable," and air travel is heavily and minutely regulated by federal law. *Bennett*, 484 F.3d at 909.

actions that parallel federal safety requirements" but do not depend on a substantial federal question. 531 U.S. at 353. Here, Hoboken is not making any allegation of fraud on any agency. *Buckman* is inapposite. *See also Reilly v. Novartis Pharm. Corp.*, No. 07 Civ. 4665, 2009 WL 3010540, at *6 (D.N.J. Sept. 18, 2009) ("[B]ecause *Buckman* addresses ordinary preemption, as opposed to 'arising under' jurisdiction, it is not controlling on the jurisdictional issue before the court." (citation omitted)).

Defendants' other authorities fare no better. In *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, which was affirmed by the Supreme Court, the Third Circuit found that *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772 (8th Cir. 2009), relied upon by Defendants, NOR ¶¶ 141, 164, was a limited holding. 772 F.3d 158, 165 n.4 (3d Cir. 2014). The Third Circuit held it would be inappropriate to find federal removal when private defendants are sued and "a plaintiff's claim was uncomfortably juxtaposed with federal regulations." *Id.* In *Bader Farms, Inc. v. Monsanto Co.*, the claim rested on the defendant's alleged withholding of material information from the Department of Agriculture, and therefore necessarily raised a federal question because the information defendants were required to disclose was defined by federal regulations that "in large part, . . . identif[y] the duty to provide information and the materiality of that information." No. 16 Civ. 299, 2017 WL 633815, at *3 (E.D. Mo. Feb 16, 2017). No such duty

arises under federal law in relation to Hoboken's suit. And, in *McKay v. City &
Cnty. of San Francisco*, Nos. 16 Civ. 3561, 3564, 2016 WL 7425927 (N.D. Cal.
Dec. 23, 2016), plaintiffs had to show that an FAA-determined flight path was a
nuisance. The court *rejected* the argument that merely implicating federal interests
in the management of national airspace—*i.e.*, the same sort of general federal
concerns Defendants raise here—creates jurisdiction. *Id.* at \*4; *see also Peralta v.
ABN AMRO Mortg. Grp., Inc.*, No. 13 Civ. 05607, 2014 WL 1673737, at \*5
(D.N.J. Apr. 24, 2014) (finding *Grable* applied because plaintiffs' claims *required*
a holding that defendants violated federal law, and where the only duties allegedly
breached were created by federal law).

　　　For good measure, Defendants cite a number of cases regarding the foreign
policy authority of the United States, the separation of powers between state and
federal government, the interpretation of treaties, and the influence of the
navigable waters of the United States. *See* NOR ¶¶ 148-64. None of these cases
are factually similar to the case at bar.

　　　Defendants cite *American Insurance Association v. Garamendi,* 539 U.S.
396 (2003), to erroneously claim that any case that could "intrude on the foreign
affairs power of the federal government . . . is completely preempted" and satisifies
*Grable,* NOR ¶ 167, but *Garamendi* did not address *Grable* or complete
preemption. It addressed the parameters of ordinary foreign affairs preemption

(which Defendants misstate).  Defendants will have their day to argue foreign affairs preemption in state court, but it does not create federal jurisdiction.  *San Mateo I*, 294 F. Supp. 3d at 938 (noting that "state courts are entirely capable of adjudicati[ng]" preemption issues); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1091 (9th Cir. 2009) ("a general invocation of international law or foreign relations" is not sufficient to make "an act of state . . . an essential element of a claim").  Similarly, *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 375–81 (2000), cited by Defendants for the same proposition, NOR ¶ 161, involved preemption under the Supremacy Clause because of a conflict between a state law and Congress's imposition of sanctions. It did not address *Grable* or removal and is thus inapposite, as the *Boulder Cnty.* district court confirmed.  *See Boulder Cnty. I*, 405 F. Supp. 3d at 968.

Finally, Defendants' invocation of navigable waters is also, at most, a preemption defense incapable of generating federal jurisdiction.  The mere possibility that some mitigation infrastructure may require a federal permit— "resulting from plaintiff[] succeeding on [its] claims at an unknown future date," *San Mateo*, 294 F. Supp. 3d at 939—is not an issue "necessarily raised" by the Complaint.  And contrary to Defendants' assertion that the "Complaint challenges—and necessarily requires evaluation of—a federal regulatory scheme [for navigable waters] and the adequacy of past federal decision making under that

34

scheme," NOR ¶ 164, no element of any of Hoboken's claims requires such an analysis or such a showing.  Defendants' reliance on *Bd. Of Comm'rs of Se. LA Floor Prot. Auth. v. Tennessee Gas Pipeline Co, L.L.C.*, 850 F.3d. 714 (5th Cir. 2017), is misplaced.  In that case, removal was proper because the extent of the defendant oil companies' duty to restore land under state law was determined solely by references to federal statutes that "create a duty of care that *does not otherwise exist* under state law."  *Id.* at 723 (emphasis added).  Here, in contrast, state law supplies the duties at issue, and there is no need to resort to federal law.

"Every court to consider the question has rejected the oil-industry defendants' arguments for *Grable* jurisdiction."  *Massachusetts*, 462 F. Supp. 3d at 45; *see Baltimore I*, 388 F. Supp. 3d at 561; *Boulder Cnty. I*, 405 F. Supp. 3d at 968; *Rhode Island I*, 393 F. Supp. 3d at 151; *Oakland II*, 969 F.3d at 905; *San Mateo I*, 294 F. Supp. 3d at 938.  This Court should reject it too.

## II.   DEFENDANTS' FEDERAL OFFICER REMOVAL ARGUMENT FAILS

Four Circuit Courts of Appeals have rejected Defendants' contention that they "acted under" federal officers when they produced and sold massive quantities fossil fuels in concert with a fifty-year-long campaign to deceive the public about their products' central role in causing climate change.  This Court should follow suit.  Notwithstanding their string of defeats on this issue, Defendants devote a sprawling 57 pages of their notice to federal officer removal, regurgitating the

same conduct the Courts of Appeals have unanimously rejected as a basis for removal.  NOR ¶¶ 42-133.  Then, correctly anticipating this will fail again, Defendants assert a smattering of new theories for removal based on phantom claims for relief that Plaintiff has expressly disclaimed and factual allegations that have no connection to Plaintiff's actual claims and were not performed "acting under" a federal officer.

The federal officer statute permits removal only if a defendant, "in carrying out the 'act[s]' that are the subject of the petitioner's complaint, was 'acting under' any 'agency' or 'officer' of 'the United States.'"  *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (quoting 28 U.S.C. § 1442(a)).  The statute's "central aim is protecting officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016).  A defendant must establish four elements to remove a case under the federal officer removal statute:

> (1) the defendant is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct acting under the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant are "for, or relating to" an act under color of federal office; and (4) the defendant raises a colorable federal defense to the plaintiff's claims.

*Id.* at 812 (citation, quotation marks, and alterations omitted).  The failure to establish any one of the four elements precludes federal officer removal.

36

Defendants contend that they acted under federal officers when (1) they developed oil and gas on the Outer Continental Shelf ("OCS") pursuant to Outer Continental Shelf Lands Act ("OCSLA") leases; (2) Chevron's predecessor, Standard Oil of California, produced oil on the Elk Hills Petroleum Reserve pursuant to a contract with the U.S. Navy; (3) Defendants produced oil and operated infrastructure on the Strategic Petroleum Reserve; and (4) Defendants supplied specialized fuel to the military.  NOR ¶¶ 62-129.  Plaintiff's claims have nothing to do with this conduct and, in any event, Defendants were not "acting under" federal officers when conducting these activities.  They cannot, therefore, satisfy the "for or relating to" or "acting under" prongs of federal officer removal.

### A.    Plaintiff's Claims Are Not "For or Relating To" Acts Under Color of a Federal Office

To satisfy the "for or relating to" requirement, Defendants must demonstrate there is a "'connection' or 'association' between the act in question and the federal office."  *In re Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015) ("*Defender Association*").  None of the wrongful acts described in the Complaint were taken in "connection" or "association" with the federal offices identified by Defendants.

Two recent Third Circuit cases, *Defender Association* and *Papp*, explain the scope of this requirement.  In *Defender Association*, the court held that a suit challenging the Federal Community Defender's representation of clients in state

post-conviction proceedings "related to" its conduct "acting under" a federal officer because the defender office was "created through the [federal] Criminal Justice Act" and the lawsuit concerned "whether [it] violated the federal authority granted to it." *Id.* at 469, 472. In *Papp*, decided the following year, the court held that a suit challenging Boeing's failure to warn about asbestos dangers of aircraft landing gear had a "direct connection" to "acts under" a federal officer because the aircraft "was manufactured 'for the [U.S. Army] under the direct supervision of the federal government,'" including with respect to "the written materials and warnings" used. 842 F.3d at 813. In both cases, the conduct "[a]t the heart of [plaintiff's] claim" was performed "acting under" a federal officer. *Id.*

Plaintiff sues Defendants for "fifty years [of] deceiving the public about their central role in causing climate change in order to grease the wheels of their ever-expanding production of fossil fuels." Compl. ¶ 3. The Complaint targets Defendants' responsibility for 12% of total global emissions "since 1965," *id.* ¶¶ 3, 301, 319, 335, the time period that coincides directly with the earliest warnings Defendants received about fossil fuels' climate-altering effects and their earliest efforts to conceal those harms from the public, *id.* ¶¶ 75-107. These claims have no connection to the four limited categories of conduct Defendants identify in the Notice of Removal.

*First*, the discrete leases and contracts Defendants claim as predicates for federal officer jurisdiction, NOR ¶¶ 62-129, are wholly divorced from Defendants' half-century disinformation campaign that fueled their massive fossil fuel production and sale.  The First and Fourth Circuits both found this disconnect to be dispositive.  In *Baltimore II*, the Fourth Circuit held that "any federal authority over a portion of certain Defendants' production and sale of fossil fuel products is too tenuous" to justify federal officer removal because "the Complaint clearly seeks to challenge the promotion and sale of fossil fuel products . . . abetted by a sophisticated disinformation campaign."  952 F.3d at 467.  The First Circuit also recognized, in *Rhode Island II*, that Defendants' asserted bases for federal officer removal—OCS leases and Standard Oil's operations at Elk Hills among them—are a "mirage" that "only lasts until one remembers what Rhode Island is alleging in this lawsuit": that the defendants "produced and sold oil and gas products in Rhode Island that were damaging the environment and engaged in a misinformation campaign about the harmful effects of their products on the earth's climate."  2020 WL 6336000, at *7.  As is the case here, "[t]he contracts the oil companies invoke as the hook for federal-officer jurisdiction mandate none of those activities."  *Id.*

*Second*, the handful of leases and contracts in the removal notice have no connection to Defendants' half-century of massive fossil fuel production.  Rather, they constitute an unknown but at most inconsequential percentage of Defendants'

*total* production and sale of fossil fuels since 1965:

- Defendants' production on the OCS, the largest source of fossil fuel production identified in the Notice of Removal, amounts to only a small fraction their total production since 1965. *See infra* Section IV (Exxon's and ConocoPhillips' OCS operations are less than 1% of their annual production; Chevron's OCS operations are less than 5% of its annual production).

- All of Standard Oil's production at the Elk Hills Reserve, a *single* site of oil production of a *single* Defendant, predates 1975, after which Defendants admit "other prime contractors operated Elk Hills." NOR ¶ 100. Most of the production Defendants allege at Elk Hills predates 1965. *Id.* ¶¶ 83-94.

- Defendants admit the Government has fulfilled its needs for the Strategic Petroleum Reserve ("SPR") primarily through royalty-in-kind transfers from oil extracted *on the OCS*. *Id.* ¶¶ 101-03. The royalty program, therefore, adds nothing to Defendants' total oil production and sale beyond what they have already alleged in connection with OCS operations.

- Defendants' production of avgas (aviation fuel) during World War II and the Korean War predates the conduct alleged in the Complaint by two decades. NOR ¶¶ 106-11, 117.[10] Even when coupled with more recent avgas contracts and occasional directives to supply oil pursuant to the Defense Production Act, *id.* ¶¶ 118-20, Defendants' production for military use constitutes an at most infinitesimal contribution to climate change.[11] *See* Compl. ¶ 38, Fig. 2 (showing steep increase in $CO_2$ emissions beginning after 1950).

---

[10] Emblematic of Defendants' hodgepodge, kitchen-sink approach, *four pages* of the removal notice address military fuel sales by Marathon subsidiary Tesoro, NOR ¶¶ 121-29, even though *neither Marathon nor Tesoro is a Defendant in this case.*

[11] For example, Defendants point out that the Interior Department directed 22 companies, including some of Defendants, to supply 19.7 million barrels of oil over two months in 1973 under the Defense Production Act. *Id.* ¶ 118. In 2019, Defendants Exxon, Shell, and ConocoPhillips produced more than that amount of oil in *less than two days, see* Compl. ¶¶ 198, 202-03, 207, making Defendants' provision of (some fraction) of 19.7 million barrels of oil to the government in 1973 an imperceptibly small amount of their total production since 1965.

40

Collectively, the conduct Defendants claim as a predicate for federal officer removal is a drop in the bucket relative to their total production of fossil fuels that has caused 12% of all global emissions since 1965.  Even if Defendants acted under federal officers when engaged in this production, which they did not, such a scant connection to the total fossil fuel production at issue in the Complaint simply does not strike "[a]t the heart of [plaintiff's] claims."  *Papp*, 842 F.3d at 813; *see also Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 870 (E.D. Mo. 2016) (tort claim for exposure to PCBs that accumulated over decades lacked sufficient "connection [to] conduct that was taken under federal authority" to justify federal officer removal because "the amount of PCBs manufactured . . . pursuant to direct [government] contracts" and for "defense contractors during [World War II]" was "too small" relative to "the total amount allegedly persisting in the environment").

*Third*, the remaining conduct identified in the Notice concerns storage and transport of fossil fuels during wartime and for national security purposes, which bears no relation to Defendants' accelerating production, marketing and sale of fossil fuels pursuant to a decades-long disinformation campaign:

- The government leased a fuel terminal to Shell and an Exxon subsidiary under the SPR program.  NOR ¶ 104.  The purpose of this "storage-site" facility, and the entire SPR program, is to store fossil fuels for national emergencies—not to promote their production, marketing, or sale.  *See* U.S. Dep't of Energy, *Strategic Petroleum Reserve Annual Report Calendar Year 2018* 1 (Jan. 2020) ("2018 SPR Report") ("The [SPR] provides the United States with energy and economic security through its emergency *stockpile* of crude oil.") (emphasis added), https://www.energy.gov/sites/prod/files/

41

2020/01/f70/2018%20SPR%20Report%20to%20Congress.pdf.

- Defendants' predecessors assisted in constructing the "Big Inch" and "Little Inch" Pipelines during World War II.  NOR ¶¶ 112-16.  In addition to predating the conduct identified in the Complaint by two decades, the pipelines "were built for a single purpose, to meet a great war emergency." *Id.* ¶ 116.  They have no connection to Defendants' production, marketing, and sale of fossil fuels since 1965.

*County of Montgomery v. Atlantic Richfield Co.* addressed military- and national security-related allegations *exactly parallel* to those raised by Defendants. No. 18 Civ. 5128, 2019 WL 2371808, at *6-8 (E.D. Pa. June 5, 2019), *aff'd* 795 F. App'x 111 (3d Cir. 2020).  The *Atlantic Richfield* court found "no connection" between the plaintiff's claims, which concerned "Defendants' alleged active role in the manufacture and proliferation of lead-based paint in privately-owned homes," and Defendants' basis for federal officer removal, "that they supplied the federal government with significant quantities of paint products for ships and military purposes" during World Wars I and II, during which "the federal government [specified the use of] lead-based paint."  *Id.* at *7 (quotation marks omitted). Plaintiff's Complaint—even putting aside consideration of Defendants' massive misinformation campaign—likewise seeks redress for Defendants' "active role in the manufacture and proliferation of" fossil fuels.  It does not concern Defendants' production, storage, or transport of fossil fuels for the military.

*Fourth*, the Complaint disclaims injuries arising from "Defendants' provision of fossil fuel products to the federal government for military and national

defense purposes." Compl. ¶ 222 n.202. This disclaimer covers Defendants'

references to the SPR, which was created "to blunt the use of petroleum as a

weapon against the United States," NOR ¶¶ 101-05, and their fuel sales to the

military, *id.* ¶ 106-29. Such disclaimers, when in "good faith," are valid. *See, e.g.,*

*Martincic v. A.O. Smith Corp.*, No. 20 Civ. 958, 2020 WL 5850317, at *3-4 (W.D.

Pa. Oct. 1, 2020). Hoboken is the "master of [its] Complaint," even in the federal

officer removal context, and may "restrict its scope and sculpt its language to avoid

federal jurisdiction." *Joyner v. A.C. & R. Insulation Co.*, No. 12 Civ. 2294, 2013

WL 2460537, at *5 (D. Md. June 6, 2013). Indeed, courts "have consistently

granted motions to remand" where plaintiffs have "express[ly] disclaime[d]" the

"claims that serve as the grounds for [federal officer] removal." *Dougherty v. A O

Smith Corp.*, No. 13 Civ. 1972, 2014 WL 3542243, at *10 (D. Del. July 16, 2014),

*report and recommendation adopted*, 2014 WL 4447293 (D. Del. Sept. 8, 2014).[12]

---

[12] Defendants cite two out-of-Circuit district courts to contend that Plaintiff's disclaimer is invalid. Both cases involved the type of bad faith that is absent here. *See Rhodes v. MCIC, Inc.*, 210 F. Supp. 3d 778, 786 (D. Md. 2016) ("[T]he 'disclaimer' is qualified by the assertion that Plaintiffs are only suing suppliers of asbestos-containing products to the Navy under a failure-to-warn theory. Thus, they are clearly keeping in play a claim against Defendants who could legitimately assert the federal officer defense."); *Ballenger v. Agco Corp.*, No. 06 Civ. 2271, 2007 WL 1813821, at *1 (N.D. Cal. June 22, 2007) (rejecting conclusory disclaimer of "[e]very claim arising under the Constitution, treaties, or laws of the United States," which is nothing more than a legal conclusion).

Federal officer removal is handily foreclosed solely by Defendants' failure to establish the "for or related to" prong, but there is more.

### B.   Plaintiff's Claims Are Not Based on Defendants' Conduct Acting Under Federal Officers

To find a private entity to be "acting under" a federal officer, the court must evaluate "the triggering relationship between a private entity and a federal officer." *Watson*, 551 U.S. at 149.  "The words 'acting under' are broad" but "not limitless." *Id.* at 147.  In order to act "under" a federal officer, Defendants must be under the "subjection, guidance, or control" of that officer.  *Id.* at 151 (quoting Webster's New International Dictionary 948 (2d ed. 1953)).  "In addition, precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to *assist*, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152 (emphasis in original); *see also Defender Ass'n*, 790 F.3d at 469 (adopting the *Watson* framework).

*Watson* and its progeny establish two baselines for the "acting under" prong. *First*, the "help or assistance necessary to bring a private person within the scope of the statute does not include simply *complying* with the law . . .  even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored."  *Id.* at 152–53 (emphasis in original).  Thus, a "regulator/regulated" relationship, no matter how complex, will not establish that a private person is "acting under" a federal officer.  *Baran v. A SRC Fed. Mission*

44

*Sols.*, No. 17 Civ. 7425, 2018 WL 3054677, at *5 (D.N.J. June 20, 2018).

*Second*, "Government contractors fall within the terms of the federal officer removal statute" only "when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." *Defender Ass'n*, 790 F.3d at 468 (quoting *Watson*, 551 U.S. at 153-54). *Watson* cited approvingly to *Winters v. Diamond Shamrock Chem. Co.*, where the Fifth Circuit found that the defendants "acted under" the federal government when the government "maintained strict control over [defendants'] development and subsequent production of Agent Orange" for use in the Vietnam War. 149 F.3d 387, 399-400 (5th Cir. 1998). Courts since *Winters* and *Watson* require an "unusually close and detailed regulatory and contractual relationship[s]," *Cessna v. Rea Energy Coop.*, No. 16 Civ. 42, 2016 WL 3963217, at *5 (W.D. Pa. 2016) (quotation marks omitted), and "close supervision by the federal government," *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1232 (8th Cir. 2012), to determine whether a private contractor is acting under a federal officer. "Arms-length" transactions and business arrangements under a contract will not suffice.

Such an "arms-length" relationship is exactly what existed between the federal government and Defendants. Courts evaluating climate change cases have uniformly rejected federal officer jurisdiction on this basis. *See Boulder Cnty. II*, 965 F.3d at 827; *San Mateo II*, 960 F.3d at 600; *Baltimore II*, 952 F.3d at 465.

<u>Outer Continental Shelf</u>: Four Courts of Appeals have rejected Defendants'
contention that they acted under federal officers when extracting fossil fuels from
the OCS; none have accepted it. *Rhode Island II*, 2020 WL 6336000, at *6;
*Boulder Cnty. II*, 965 F.3d at 820-827; *San Mateo II*, 960 F.3d at 602-03;
*Baltimore II*, at 952 F.3d at 464-66.  Defendants claim they are subject to "exacting
federal oversight" under OCSLA leases.  NOR ¶ 70.  But that oversight "largely
track[s] legal requirements" of the OCSLA and its implementing regulations.  *San
Mateo II*, 960 F.3d at 603; *see* NOR ¶¶ 70, 72-73, 75-76, 78-80.  Applying *Watson*,
the Courts of Appeals have all held that "[c]ompliance with such legal
requirements, no matter their complexity, cannot by itself create the 'acting under'
relationship."  *Boulder Cnty. II*, 965 F.3d at 825; *accord San Mateo II*, 960 F.3d at
603; *Baltimore II*, 952 F.3d at 465.  Nor does "the supervision and control to which
OCSLA lessees are subject connote the sort of 'unusually close' relationship" that
supports federal officer removal because the leases do not, for example, "dictate
that Defendants extract fossil fuels in a particular manner."  *Baltimore II*, 952 F.3d
at 465-66; *accord Boulder Cnty. II*, 965 F.3d at 823.

<u>Elk Hills Reserve</u>: Three Courts of Appeals have rejected Defendants' claim
that Chevron predecessor Standard Oil acted under federal officers when it
extracted oil at the Elk Hills Reserve under the Unit Plan Contract ("UPC") with

46

the Navy; none have accepted it.[13]  *Rhode Island II*, 2020 WL 6336000, at *6; *San Mateo II,* 960 F.3d at 601-02; *Baltimore II*, 952 F.3d at 468-471.  Under the UPC, Standard Oil and the Navy "coordinate[d] operations" to "ensure the availability of oil reserves in . . . a national emergency."  *San Mateo II*, 960 F.3d at 601-02.  The Navy *did not* control Standard's production; it permitted Standard to dispose of oil "as it may desire" and provided that "[n]either Navy nor Standard shall have any preferential right to purchase any portion of the other's share of such production."  Def. Ex. 6 § 7, ECF No. 1-7.  This "arms-length business arrangement with the Navy" does "not give rise to a relationship where Standard was 'acting under' a federal officer."  *Id.*; *accord Rhode Island II*, 2020 WL 6336000, at *6.

Strategic Petroleum Reserve: Defendants were not acting under federal officers when they supplied fuel for the SPR under the OCS royalty program because federal statutes and regulations govern Defendants' OCS royalty payments.  *See* NOR ¶ 102 (describing payment of royalties "[u]nder 43 U.S.C. §1353(a)(1)"); *see also id.* ¶¶ 65, 67, 75, 78, & n.88, n.90, n.104, n.111.  This "simple compliance" with the law cannot establish that Defendants "acted under" a federal officer.  *Watson*, 551 U.S. at 151-52.  Nor were Shell and Exxon acting under federal officers when they leased the St. James Marine terminal from the federal government.  *See* NOR ¶ 104.  Shell and Exxon "provided all normal

---

[13] Elk Hills was not at issue in *Boulder Cty.* because Chevron was not a defendant.

operations and maintenance of the terminal" independently of the federal government.  SPR 2018 at 15; *see also* U.S. Dept. of Energy, *Strategic Petroleum Reserve Annual Report for Calendar Year 2010* (Nov. 2011) ("SPR 2010 Report"), https://www.energy.gov/sites/prod/files/2015/02/f20/2010%20SPR%20Annual% 20Report.pdf (same).  Defendants allege no "strict [federal] control" of their operations.  *Winters*, 149 F.3d at 399.  While Shell and Exxon operated the terminal "as a sales and distribution point in the event of an SPR drawdown," SPR 2018 Report at 15; SPR 2010 Report at 16, purchasing "off-the shelf products from a manufacturer" does "not show that the federal government has supervised the manufacture of such products . . . so as to come within the meaning of acted under."  *Baltimore II*, 952 F.3d at 464 (citation, quotation marks, and alterations omitted).

Specialized Military Fuel Sales: Finally, Defendants were not acting "under" of federal officers when they sold avgas to the federal government.  NOR ¶¶ 106-11, 117.  According to the cases cited by Defendants, "[t]he arrangement between the Oil Companies and the Government was a *cooperative* endeavor."  *Shell Oil Co. v. United States*, 751 F.3d 1282, 1287 (Fed. Cir. 2014) (emphasis added).  "[T]he Oil Companies designed and built their [own] facilities, maintained private ownership of the facilities, and managed their own refinery operations."  *United States v. Shell Oil Co.*, 294 F.3d 1045, 1050 (9th Cir. 2002).  In short, "[t]he

program did not exercise direct control over the production of avgas components."
*Id.* Defendants' avgas production is a far cry from the "ongoing supervision the
government exercised over the formulation, packaging, and delivery of Agent
Orange" in *Winters*, 149 F.3d at 400.

Defendants' claim that the Petroleum Administration for War ("PAW") gave
"coercive directives" to Defendants, NOR ¶ 108, is also misleading. It is based on
an August 1941 statement by then-Interior Secretary Harold Hickes that *predates
the PAW's creation. See* Def. Ex. 59 at 7-8, ECF No. 1-60; NOR ¶ 107 (PAW
established in 1942). Ickes's statement about what PAW *might do* before it existed
has no bearing on what it *actually did*. Defendants' also fail to support their claim
that producing these fuels required "changes" to their "refining equipment and
operations." NOR ¶ 109; *see* Def. Ex. 56, ECF No. 1-57 (report on aircraft engine
redesign based on fuel advances that does not discuss Defendants' operations);
Def. Ex. 57, ECF No. 1-58 (article on environmental impacts of military aviation
fuels and resulting regulation that does not discuss Defendants' operations). As
their failure to assert this ground for removal in their first *six* (unsuccessful)
attempts to invoke federal officer removal indicates, Defendants' claim that they
acted under the "subjection, guidance, and control" of federal officers when
producing military fuels for the government cannot withstand scrutiny.

## II.   DEFENDANTS' FEDERAL ENCLAVE REMOVAL ARGUMENT IS FRIVOLOUS

"Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves,'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006), but nothing like the jurisdiction Defendants claim here.  Federal enclave jurisdiction derives from Article I, Section 8 of the Constitution, which gives Congress power to "exercise exclusive legislation" over places the federal government purchases from the states "for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings."  U.S. Const., art. I, § 8, cl. 17.  A federal enclave is a place of "[e]xclusive federal jurisdiction."  *In re Asbestos Prods. Liab. Litig.*, No. 09 Civ. 60001, 2009 WL 8520132, at *1 n.1 (E.D. Pa. Apr. 24, 2009).  "[F]ederal enclave doctrine only applies when the locus in which the claim arose is the federal enclave itself."  *In re High–Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1125 (N.D. Cal. 2012); *accord Bordetsky v. Akima Logistics Servs., LLC*, No. 14 Civ. 1786, 2016 WL 614408, at *1 (D.N.J. Feb. 16, 2016).

"The location where Plaintiff was injured determines whether the right to removal exists."  *Boulder Cnty. I*, 405 F. Supp. 3d at 974 (citation, quotation marks, and alteration omitted); *see also, e.g.*, *Zuniga v. Chugach Maint. Servs.*, No. 06 Civ. 48, 2006 WL 769317, at *6 (E.D. Cal. March 24, 2006) ("The key factor in determining whether federal enclave jurisdiction exists is the location of the plaintiff's injury.").  The Complaint seeks damages and abatement costs for harm

to Hoboken as a result of sea level rise, increasingly destructive storms, and extreme heat driven by anthropogenic climate change.  Compl. ¶¶ 306, 322, 338, 348, 366.  Thus, Plaintiff's claims arose in Hoboken, and not on federal enclaves.

Indeed, the Complaint *expressly* "disclaims injuries arising on federal property."  *Id.* ¶ 222 n.202.  Such disclaimers are effective and preclusive to finding federal enclave jurisdiction.  *See Washington v. Monsanto Co.*, 274 F. Supp. 3d 1125, 1132 (W.D. Wash. 2017) (disclaimer "assert[ing] that [plaintiff] does not seek damages for contamination to waters and land within federal territory" sufficient to find that "none of its claims arise on federal enclaves"); *see also Boulder Cnty.*, 405 F. Supp. 3d at 974 ("Federal enclave jurisdiction thus does not exist here because Plaintiffs' claims and injuries are alleged to have arisen exclusively on non-federal land."); *Rhode Island I*, 393 F. Supp. 3d at 152 (Rhode Island's claims "did not arise" on federal enclaves, "especially since its complaint avoids seeking relief for damages to any federal lands").

Defendants contend that Plaintiff's "targeting Defendants' oil and gas operations . . . necessarily sweeps in" activities on federal enclaves.  NOR ¶ 180. The *Baltimore I* court rejected these same arguments because "it cannot be said that federal enclaves were the 'locus' where the City's claims arose merely because one of the twenty-six defendants, and the predecessor of another defendant, conducted some operations on federal enclaves for some unspecified

period of time." 388 F. Supp. 3d at 565. This Court should do the same.

Defendants' position that Plaintiffs' claims arise on a federal enclave because a small amount of the conduct in the Complaint may have occurred in the District of Columbia, NOR ¶ 181, is equally meritless. *First*, Washington D.C. is not a federal enclave for removal purposes because it is not a place of "[e]xclusive federal jurisdiction." *In re Asbestos Prods. Liab. Litig.*, 2009 WL 8520132, at *1 n.1; *see Baltimore I*, 388 F. Supp. 3d at 564-565 (rejecting this same argument because D.C.'s local code and court system mean that "a claim is based on conduct that occurred in the District . . . does not *ipso facto* make it a federal claim over which federal jurisdiction lies").[14] *Second*, even if it the District were a federal enclave, Defendants isolated allegations do not establish that "all or most of the pertinent events occurred" there. *Baltimore*, 388 F. Supp. 3d at 565. To hold otherwise would be absurd, as it would bring into federal court *any* suit where *any* conduct, no matter how *de minimis*, took place in the District.

---

[14] The two cases Defendants cite to claim that the District of Columbia is a "federal enclave" have nothing to do with federal enclave jurisdiction or removal. *See Collier v. District of Columbia*, 46 F. Supp. 3d 6, 20 n.8 (D.D.C. 2014) (holding, in excessive force case brought under U.S. Constitution, that "[b]ecause the District of Columbia is a federal enclave, it is subject to the Fifth Amendment, and not the Fourteenth, which applies to the States"); *Hobson v. Hansen*, 265 F. Supp. 902, 906 (D.D.C. 1967) (upholding constitutionality of statute authorizing federal district court judges to appoint members to the D.C. Board of Education).

III.   **DEFENDANTS' OUTER CONTINENTAL SHELF ACT REMOVAL ARGUMENT IS FRIVOLOUS**

The OCSLA "grants federal jurisdiction over 'all cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf.'" *Various Plaintiffs v. Various Defendants ("Oil Field Cases")*, 673 F. Supp. 2d 358, 370 (E.D. Pa. 2009) (quoting 43 U.S.C. § 1349(b)).  Plaintiff's claims do not arise out of Defendants' OCS operations, which have no connection to Defendants' fifty-year campaign of deception about fossil fuels' harms to the planet and make up an unknown but at most small percentage of Defendants' total fossil fuel production.

OCSLA jurisdiction requires a "but for" connection between Plaintiff's claims and Defendants' OCS operations.  *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014); *see also Oil Field Cases*, 673 F. Supp. 2d at 370 (Third Circuit district courts look to Fifth Circuit for OCSLA jurisdiction standard).  The "but for" test does not countenance "federal court jurisdiction over all state law claims even tangentially related to offshore oil production on the OCS." *Plains Gas Solutions, LLC v. Tenn. Gas Pipeline Co.*, 46 F. Supp. 3d 701, 704-05 (S.D. Tex. 2014).  Rather, Defendants must show that Plaintiff's "injury would not have occurred" absent their conduct on the OCS. *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999).

Defendants fail to even mention the but-for test.  *See* NOR ¶¶ 31-34, 37.

This omission is telling.  Three of the four federal district courts to consider

whether they have OCSLA jurisdiction in analogous climate change litigation have

applied the but-for test and concluded that there is no but-for connection between

the plaintiffs' claims and defendants' OCS operations.  *See Rhode Island I*, 393 F.

Supp. 3d at 151-52; *Baltimore I*, 388 F. Supp. 3d at 566-67; *San Mateo I*, 294 F.

Supp. 3d at 938-39.  The fourth, *Boulder Cnty. I*, cited approvingly to *Baltimore*'s

application of the but-for test and found that Defendants failed to establish a

sufficiently "direct connection" between Plaintiff's claims and Defendants' OCS

operations.  405 F. Supp. 3d at 978-79.

Plaintiff's claims do not arise, as Defendants contend, out of Defendants'

OCS leases and operations, *see* NOR ¶¶ 35-37, because Plaintiff does not sue

Defendants "merely for producing fossil fuel products, let alone for merely

producing them on the OCS. " *Baltimore*, 388 F. Supp. 3d at 566.  Rather,

Plaintiff's "claims are based on a broad array of conduct," *id.*, including "decades

of deceptions about fossil fuels' devastating climate impacts" that have no

connection of Defendants' OCS operations, Compl. ¶¶ 14, 75-193, 209-215.

Further, Defendants' own data demonstrate that their OCS operations are a

small fraction of the fossil fuels they produced and sold to cause Plaintiff's

injuries.  Chevron is the only Defendant whose OCS operations the Notice

discusses directly.  Defendants assert that, on the OCS in the Gulf of Mexico,

Chevron produced 49 million barrels of oil in 2016.  NOR ¶ 36.  That year, it

produced 949 million barrels of oil in total.[15]  Chevron, *2016 Annual Report*, 7,

https://www.chevron.com/-/media/chevron/annual-report/2016/2016-Annual-

Report.pdf.  This makes Chevron's 2016 OCS production *just 5%* of its total oil

production that year.  The Notice does not specify what portion (if any) of the

other Defendants' fossil fuel production occurred on the OCS, citing only general

statistics about the total OCS production by all companies and (unspecified)

Defendants' places among the OCS's top producers.[16]  *See* NOR ¶¶ 36-37.

    Thus, Defendants allege that a small, "unknown fraction of their fossil fuels

was produced on the OCS."  *Boulder Cnty. I*, 405 F. Supp. 3d at 979.  These facts

"offer no basis to enable this Court to conclude that the City's claims for injuries

---

[15] 949 million barrels calculated by multiplying Chevron's production of 2.594 million net-oil equivalent barrels per day by 366 days in 2016.

[16] Public records show that other Defendants' OCS operations make up an even smaller slice of their total production.  In 2016, Exxon extracted 7 million barrels and ConocoPhillips extracted 1 million barrels of crude oil from the OCS in the Gulf of Mexico.  U.S. Dept. of Interior, *Production by Operator Ranked by Volume (2016)*, https://www.data.boem.gov/Production/Files/Rank%20File%20Oil%202016.pdf.  That year, Exxon produced more than 4 million barrels *per day* and ConocoPhillips produced 600,000 barrels *per day*, meaning their OCS operations constituted *less than 1% of both of their total annual production*.  ExxonMobil, *2016 Summary Annual Report*, 5, https://corporate.exxonmobil.com/-/media/Global/Files/investor-relations/annual-meeting-materials/annual-report-summaries/2016-Summary-Annual-Report.pdf; ConocoPhillips, *2016 Annual Report*, 159, http://static.conocophillips.com/files/resources/conocophillips_2016_annualreport.pdf.

stemming from climate change would not have occurred but for defendants'

extraction activities on the OCS." *Baltimore I*, 388 F. Supp. 3d 566-57.

## IV.    DEFENDANTS' CAFA ARGUMENT IS FRIVOLOUS

Defendants argue that this Court has jurisdiction under the Class Action

Fairness Act, 28 U.S.C. § 1332(d), "because the City of Hoboken is bringing suit

on behalf of a class of Hoboken consumers." NOR ¶ 183.  CAFA permits removal

of (i) any "class action," where (ii) minimal diversity exists; (iii) at least 100 class

members are represented; and (iv) "the matter in controversy exceeds the sum or

value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(1), (2),

(5).  The statute defines "class action" as "any civil action filed under rule 23 of the

Federal Rules of Civil Procedure or similar State statute or rule of judicial

procedure authorizing an action to be brought by 1 or more representative persons

as a class action." *Id*. § 1332(d)(1)(B).  CAFA does not apply here for at least two

independent reasons.

*First*, Defendants identify no relief Plaintiff is seeking for anyone other than

itself.  The quotations they cite from the Complaint, NOR ¶ 189, refer to *facts*

Hoboken has alleged regarding the unlawful actions of Defendants, not to any

claims for relief.  Each claim in the Complaint seeks compensation for damages

suffered by *Plaintiff*, specifically.  *See* Compl. ¶ 305 (seeking *inter alia* "costs

sufficient to allow Plaintiff to take actions to abate the harm and inconvenience

caused by the actions of Defendants"); ¶ 311 (damage "includes, but is not limited to, the destruction of hundreds of millions of dollars of City-owned property"); ¶ 327 (trespass "includes but is not limited to the encroachment of water onto City-owned property"); *see also id.* ¶¶ 294; 306; 348; 366.[17]  As the court in *City of Charleston v. W. Virginia-Am. Water Co.* held, the mere fact that municipality plaintiffs "repeatedly reference injuries incurred by residents and businesses . . . do[es] not transform the claims brought by the plaintiffs into claims for compensation of those residents and businesses."  No. 16 Civ. 01531, 2016 WL 3460439, at *4 (S.D.W. Va. June 21, 2016).  Since there is only *one* plaintiff here, not hundreds, the basic statutory requirements of CAFA are not met.

*Second*, even if the City of Hoboken *was* acting in a *parens patriae* capacity, CAFA would still not apply.  In order to qualify as a "class action" under CAFA, the suit must be brought "under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Not only have Defendants not identified any "*similar* State

---

[17] Defendants deceptively state that "this suit was filed on behalf of a class of 'consumers in New Jersey,'" citing paragraphs 357 and 188 of the Complaint. NOR ¶ 188.  Neither paragraph says that this suit is being filed on behalf of any class, let alone a class of "consumers in New Jersey."  Rather, the Complaint notes that some of the Defendants have *targeted* New Jersey consumers, which is not the same as saying that Hoboken is bringing a claim on behalf of "consumers in New Jersey."  *Id.*

statute or rule of judicial procedure," they have not identified *any* statute or rule of

judicial procedure at all.[18]   "Plaintiffs are the masters of their complaints and are

'free to choose the statutory provisions under which they will bring their claims.'"

*Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 159 (3d Cir. 2013).  "No amount

of piercing the pleadings will change the statute or rule under which the case is

filed.  If this is a formalistic outcome, it is a formalism dictated by Congress." *Id.*

at 160 (internal quotation marks and modifications omitted).

Unable to satisfy the most basic requirements for showing CAFA

jurisdiction, Defendants enter into a digession into "CAFA's legislative purposes."

NOR ¶ 186.  The Third Circuit has already rejected this kind of unmoored

invocation of CAFA's legislative history, which it has found "particularly suspect

given that it represents the views of only a handful of the legislators voting for the

law." *Erie Ins. Exch.*, 722 F.3d at 160 n.6.   CAFA's legislative history "neither

modifies the statutory command of which suits *are* to be considered class actions,

nor provides a test by which to answer the question of whether a suit constitutes a

---

[18] Defendants' tortured logic trips them up.  Unable to identify any "State statute or rule of judicial procedure" Hoboken *actually* brought this claim under, they argue that, had the "attorney general" brought "suits for damages under the New Jersey Consumer Fraud Act" under a *parens patriae* authority, the rules govering *those* suits "are 'in the nature of a class action.'"  NOR ¶ 190.  But Defendants then claim in the very next sentence that Hoboken *cannot* be acting in the *parens patriae* capacity, making it doubly unclear what authority they are citing for the proposition that Hoboken is bringing a suit pursuant to a "State statute or rule of judicial procedure" similar to Rule 23.  *Id.*

'class action.'" *Id.* at 160; *see also Morgan v. Gay*, 471 F.3d 469, 472 (3d Cir.

2006).   Under Defendants' theory *every* claim brought by a municipality in state

court would automatically confer federal jurisdiction, so long as more than a

hundred people lived there.   It is not surprising that Defendants have also lost this

argument before.   *See Massachusetts*, 462 F. Supp. 3d at 50.[19]

---

[19] Although not required since CAFA does not apply, Plaintiff notes that, even if
the Court were to accept all of Defendants' arguments, CAFA jurisdiction would
still not be appropriate as the mandatory provisions of 28 U.S.C.A.
§ 1332(d)(4)(A) divest the Court of jurisdiction.   If Plaintiff truly is suing "on
behalf of a class of 'consumers in New Jersey,'" as Defendants falsely claim, then
100% of the "members of all proposed plaintiff classes in the aggregate are citizens
of the State in which the action was originally filed." *Id.* § (A)(i)(I).   The harm
alleged is to Hoboken, and thus the "principal injuries resulting from the alleged
conduct or any related conduct of each defendant were incurred in the State in
which the action was originally filed." *Id.* § (A)(i)(III).   Further, as Plaintiff has
alleged fulsomely, Exxon Mobil Corporation "is a citizen of the State in which the
action was originally filed," *id.* § (A)(i)(II)(cc), and it played the leading role in
producing, manufacturing, and selling fossil fuels, and in spearheading the
disinformation campaign that accompanied that activity, thereby making it a
defendant "from whom significant relief is sought," *id.* § (A)(i)(II)(aa), and "whose
alleged conduct forms a significant basis for the claims asserted," *id.*
§ (A)(i)(II)(bb).   For the same reasons—that the class identified by Defendants
consists solely of New Jersey citizens and that the "primary defendant[]" is also a
New Jersey citizen—the "home state" exception to CAFA also applies.   28
U.S.C.A. § 1332(d)(4) (B).   Thus, the Court "shall decline to exercise jurisdiction"
even if CAFA is otherwise applicable.   28 U.S.C.A. § 1332(d)(4); *see also
Abraham v. St. Croix Renaissance Grp., L.L.L.P*, 58 V.I. 788, 800 (3d Cir. 2013)
(noting the "broad language in the local-controversy exception for class actions").

## CONCLUSION

Defendants have not identified any basis for removing Plaintiff's case to federal court.  Since federal courts are "courts of limited jurisdiction," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation marks omitted), Plaintiff respectfully requests this case be remanded to the New Jersey Superior Court, Hudson County, from where it was improperly removed.

Dated: December 11, 2020

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

By:   /s/ Jonathan S. Abady
       Jonathan S. Abady, Esq. (*pro hac vice*)
       Matthew D. Brinckerhoff, Esq. (*pro hac vice*)
       Ananda V. Burra, Esq. (*pro hac vice*)
       Max Selver, Esq. (*pro hac vice*)

KROVATIN NAU LLC
60 Park Place, Suite 1100
Newark, NJ 07102
(973) 424-9777

By:   /s/ Gerald Krovatin
       Gerald Krovatin

*Attorneys for Plaintiff*

60