**EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP**
Jonathan S. Abady, Esq. (*pro hac vice*)
Matthew D. Brinckerhoff, Esq. (*pro hac vice*)
Ananda V. Burra, Esq. (*pro hac vice*)
Max Selver, Esq. (*pro hac vice*)
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

**KROVATIN NAU LLC**
Gerald Krovatin, Esq. (Attorney No. 024351977)
Helen A. Nau, Esq.  (Attorney No. 030181993)
60 Park Place, Suite 1100
Newark, NJ 07102
(973) 424-9777
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF HOBOKEN,<br><br>    Plaintiff,<br><br> -against-<br><br>EXXON MOBIL CORP.,<br>EXXONMOBIL OIL CORP.,<br>ROYAL DUTCH SHELL PLC,<br>SHELL OIL COMPANY, BP P.L.C.,<br>BP AMERICA INC., CHEVRON<br>CORP., CHEVRON U.S.A. INC.,<br>CONOCOPHILLIPS,<br>CONOCOPHILLIPS COMPANY,<br>PHILLIPS 66, PHILLIPS 66<br>COMPANY, AMERICAN<br>PETROLEUM INSTITUTE,<br><br>    Defendants. | Civil Action No. 2:20-cv-14243<br><br>**Plaintiff's Reply Memorandum<br>in Support of Its<br><u>Motion to Remand</u>** |

# **TABLE OF CONTENTS**

**PAGE NO**

TABLE OF AUTHORITIES ...............................................................................ii-vii

I.   FEDERAL OFFICER REMOVAL FAILS.....................................................1

    A.   The Claims Are Not "For, or Relating To" Acts Taken Under Federal Officers ...................................................................................................2

    B.   Defendants Were Not "Acting Under" Federal Officers ......................8

    C.   Defendants Have Not Established a Colorable Federal Defense........18

II.  DEFENDANTS' OUTER CONTINENTAL SHELF ACT REMOVAL ARGUMENT IS FRIVOLOUS.....................................................................18

III. FEDERAL QUESTION REMOVAL IS NOT AVAILABLE ....................20

    A.   *Grable* Is the Only Possible Basis For Removal.................................21

    B.   *Grable* Removal Is Not Available........................................................24

IV.  THERE ARE NO OTHER BASES FOR REMOVAL .................................29

V.   THE OPPOSITION IS PROCEDURALLY DEFECTIVE AND THE REMOVAL HAD NO "OBJECTIVELY REASONABLE BASIS"...........30

VI.  CONCLUSION.............................................................................................35

# TABLE OF AUTHORITIES

**PAGE NO**

**Cases**

*Abrahamsen v. ConocoPhillips, Co.,*
  503 F. App'x 157 (3d Cir. 2012) ..................................................................28

*Agyin v. Razmzan,*
  986 F.3d 168 (2d Cir. 2021) ........................................................................17

*Bailey v. Monsanto Co.,*
  176 F. Supp. 3d 853 (E.D. Mo. 2016) ...........................................................8

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,*
  405 F. Supp. 3d 947 (D. Colo. 2019) ...........................................................19

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.,*
  965 F.3d 792 (10th Cir. 2020) .......................................................................9

*Bell v. Cheswick Generating Station,*
  734 F.3d 188 (3d Cir. 2013) ........................................................................21

*Beneficial Nat'l Bank v. Anderson,*
  539 U.S. 1 (2003).................................................................................. 21, 24

*Billups v. Penn State Milton S. Hershey Med. Ctr.,*
  910 F. Supp. 2d 745 (M.D. Pa. 2012)...........................................................16

*BMW of N. Am., Inc. v. Gore,*
  517 U.S. 559 (1996)......................................................................................26

*Castle v. Laurel Creek Co., Inc.,*
  848 F. Supp. 62 (S.D.W. Va. 1994) .............................................................32

*Caudill v. Blue Cross and Blue Shield of North Carolina,*
  999 F.2d 74 (4th Cir. 1993) .........................................................................23

*Cent. Bank, N.A. v. First Interstate Bank, N.A.,*
  511 U.S. 164 (1994).....................................................................................12

*City and Cnty. Of Honolulu v. Sunoco LP, et al.,*
  No. 20 Civ. 00163, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ........... *passim*

*City of Milwaukee v. Illinois and Michigan*,
    451 U.S. 304 (1981).................................................................22

*Cnty. of Montgomery v. Atl. Richfield Co.*,
    No. 18 Civ. 5128, 2019 WL 2371808 (E.D. Pa. June 5, 2019)......................8

*Cnty. of San Mateo v. Chevron Corp.*,
    294 F. Supp. 3d 934 (N.D. Cal. 2018)..........................................19

*Cnty. of San Mateo v. Chevron Corp.*,
    960 F.3d 586 (9th Cir. 2020) ...................................... 9, 10, 11, 13

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) .......................................................7

*Doe v. Hesketh*,
    828 F.3d 159 (3d Cir. 2016) .....................................................32

*Dougherty v. A O Smith Corp.*,
    No. 13 Civ. 1972, 2014 WL 3542243 (D. Del. July 16, 2014) ......................6

*Dragani v. Genesse Valley Invs., LLC*,
    No. 11 Civ. 1193, 2011 WL 2491066 (D.N.J. June 6, 2011)......................31

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006).............................................................25

*EP Operating Ltd. P'ship v. Placid Oil Co.*,
    26 F.3d 563 (5th Cir. 1994) .....................................................19

*Erie Ins. Exch. v. Erie Indem. Co.*,
    722 F.3d 154 (3d Cir. 2013) .....................................................30

*Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*,
    No. 06 Civ. 4197, 2007 WL 1456204 (D.N.J. May 15, 2007)......................3

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981).............................................................22

*First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.*,
    731 F.2d 1113 (3d Cir. 1984) ...................................................22

iii

*Gilbert v. Synagro Cent., LLC*,
   No. 08 Civ. 1460, 2008 WL 4542248 (M.D. Pa. Oct. 9, 2008) ....................34

*Goepel v. National Postal Mail Handlers Union*,
   36 F.3d 306 (3d Cir. 1994) ...........................................................................23

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)......................................................................................20

*Hemphill v. Transfresh Corp.*,
   No. 98 Civ. 0899, 1998 WL 320840 (N.D. Cal. June 11, 1998)...................32

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to
   Defender Ass'n of Phila.*,
   790 F.3d 457, 472 (3d Cir. 2015) ................................................. 2, 4, 12, 17

*In re D'Angelo*,
   479 B.R. 649 (E.D. Pa. 2012) .......................................................................35

*In re Methyl Teriary Butyl Ether Prods. Liab. Litig.*,
   488 F.3d 112 (2d Cir. 2007) ...........................................................................7

*In re Tobacco/Governmental Health Care Costs Litig.*,
   100 F. Supp. 2d 31 (D.D.C. 2000)................................................................29

*In re U.S. Healthcare, Inc.*,
   193 F.3d 151 (3d Cir. 1999) .........................................................................24

*Jefferson Cnty., Ala. v. Acker*,
   527 U.S. 423 (1999)........................................................................................4

*Johnson v. Nat'l Consolidation Servs., LLC*,
   No. 12 Civ. 5083, 2013 WL 638600 (E.D. Pa. Feb. 21, 2013) ....................32

*Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*,
   512 F. App'x 485 (6th Cir. 2013)..................................................................35

*Kugler v. Romain*,
   58 N.J. 522 (1971) ........................................................................................29

*Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*,
   754 F.2d 1223 (5th Cir. 1985) ......................................................................20

*Leite v. Crane Co.,*
   749 F.3d 1117 (9th Cir. 2014) ........................................................7

*Martin v. Franklin Cap. Corp.,*
   546 U.S. 132 (2005)......................................................................34

*Martincic v. A.O. Smith Corp.,*
   No. 20 Civ. 958, 2020 WL 5850317 (W.D. Pa. Oct. 1, 2020) ......................6

*Matter of the Estate of Curcio,*
   No. 16 Civ. 3185, 2016 WL 6540449 (D.N.J. Nov. 3, 2016) ......................21

*Mayor & City Council of Baltimore v. B.P. P.L.C.,*
   952 F.3d 452 (4th Cir. 2020) ........................................... 5, 9, 11, 13

*Mayor & City Council of Baltimore v. BP P.L.C.,*
   388 F. Supp. 3d 538 (D. Md. 2019).....................................................19

*MHA, LLC v. Amerigroup Corp,*
   No. 18 Civ. 16042, 2021 WL 226110 (D.N.J. Jan. 21, 2021)......................12

*N.C. ex rel. Cooper v. TVA,*
   615 F.3d 291 (4th Cir. 2010) .......................................................26

*Nat'l Review, Inc. v. Mann,*
   140 S. Ct. 344 (2019)....................................................................27

*Nken v. Holder,*
   556 U.S. 418 (2009)......................................................................34

*Ortiz v. Univ. of Med. & Dentistry of New Jersey,*
   No. 08 Civ. 2669, 2009 WL 737046 (D.N.J. Mar. 18, 2009) ............... 27, 28

*Papp v. Fore-Kast Sales Co., Inc.,*
   842 F.3d 805 (3d Cir. 2016) ............................................... *passim*

*Par. Of Cameron v. Auster Oil & Gas Inc.,*
   420 F. Supp. 3d 532 (W.D. La. 2019) .................................... 14, 15

*Parlin v. DynCorp Int'l, Inc.,*
   579 F. Supp. 2d 629 (D. Del. 2008) ............................................25

*Pennsylvania Higher Educ. Assistance Agency v. NC Owners, LLC*,
  256 F. Supp. 3d 550 (M.D. Pa. 2017)............................................................33

*Pipeline v. Houston Cas. Ins. Co*,
  87 F.3d 150 (5th Cir. 1996) ......................................................................19

*Republic of Philippines v. Marcos*,
  806 F.2d 344 (2d Cir. 1986) ................................................................. 28, 29

*Rhode Island v. Chevron Corp.*,
  393 F. Supp. 3d 142 (D.R.I. 2019) ...............................................................19

*Rhode Island v. Shell Oil Prod. Co. LLC*,
  979 F.3d 50, 59-60 (1st Cir. 2020) ....................................................... 3, 9, 13

*Richmond, F. & P. R. Co. v. Intermodal Servs., Inc.*,
  508 F. Supp. 804 (E.D. Va. 1981) ................................................................32

*Rivet v. Regions Bank of La.*,
  522 U.S. 470 (1998).....................................................................................22

*Robinson v. Pfizer Inc.*,
  No. 16 Civ. 439, 2016 WL 1721143 (E.D. Mo. Apr. 29, 2016) ..................35

*Romero v. Int'l Terminal Operating Co.*,
  358 U.S. 354 (1959).....................................................................................29

*Samuel-Bassett v. KIA Motors Am., Inc.*,
  357 F.3d 392 (3d Cir. 2004) ........................................................................29

*San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*,
  359 U.S. 236 (1959).....................................................................................26

*Shell Oil Co. v. United States*,
  751 F.3d 1282 (Fed. Cir. 2014) ...................................................................16

*Sherman v. Hopewell Twp. Police Dep't*,
  No. 19 Civ. 14553, 2020 WL 919682 (D.N.J. Feb. 26, 2020) .....................25

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
  87 F.3d 150 (5th Cir. 1996) ........................................................................19

*United States v. Shell Oil Co.*,
    294 F.3d 1045 (9th Cir. 2002) ........................................................16

*USX Corp. v. Adriatic Ins. Co.*,
    345 F.3d 190 (3d Cir. 2003) ..........................................................31

*Various Plaintiffs v. Various Defendants ("Oil Field Cases")*,
    673 F. Supp. 2d 358 (E.D. Pa. 2009)..............................................19

*Watson v. Phillip Morris Cos., Inc.*,
    551 U.S. 142 (2007)........................................................ 2, 9, 10, 17

**Statutes**

28 U.S.C. § 1441 ...............................................................................29

28 U.S.C. § 1442 .................................................................................2

28 U.S.C. § 1446 ........................................................................... 31, 32

28 U.S.C. § 1447 ........................................................................... 31, 34

28 U.S.C. § 1653 ...............................................................................31

43 U.S.C. § 1332 ...........................................................................9, 29

43 U.S.C. § 1349 ......................................................................... 18, 19

Defendants oppose remand by: disclaiming grounds for removal raised in the Notice of Removal, adding *new* bases for removal, misquoting binding authority, ignoring contrary authority, citing a Supreme Court holding since overruled, and adding nearly 1,200 pages of new exhibits to join the nearly 1,000 pages attached to their Notice (including two new expert reports).  In Defendants' telling, Hoboken's state tort and consumer fraud claims mask an alternate reality in which the City seeks to halt the global oil industry and commandeer the federal government's foreign policy, and Defendants pretend their campaign of deception to sell massive amounts of fossil fuels to consumers was carried out on the express orders of the federal government.  Their arguments have been rejected by *eleven* different courts.  Defendants' arguments have no objectively reasonable basis.

## I.   FEDERAL OFFICER REMOVAL FAILS

Defendants filed hundreds of pages of additional exhibits with their opposition to Plaintiff's motion to remand, improperly seeking to amend their Notice without seeking leave of the Court, all to distract from the fact that they have lost their federal officer arguments ten times already.  Defendants assert that their two expert reports have "materially expanded [the] evidentiary record" beyond what previous courts considered and their Notice in this case alleged. Defendants' Opposition to Remand, ECF No. 100 ("Defs' Br.") at 4; *see also id.* at 55 n.11.  These reports should not be considered, *see infra* § V, but even on their

1

merits they do not cure the fatal defect in Defendants' federal officer argument: *Defendants did not act under federal officers when they produced and sold massive quantities of fossil fuels pursuant to a half-century disinformation campaign targeting consumers.*

*Four* federal Circuit Courts and *six* federal District Courts have now held that the smattering of discrete leases and contracts Defendants cite as hooks for federal officer jurisdiction have no connection to Plaintiff's claims, and Defendants were not acting under federal officers. Indeed, the District of Hawaii just confirmed that the reports change *nothing* in the analysis these prior courts have engaged in. *City and Cnty. Of Honolulu v. Sunoco LP, et al.*, No. 20 Civ. 00163, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ("*Honolulu*").

## A.   The Claims Are Not "For, or Relating To" Acts Taken Under Federal Officers

Federal officer jurisdiction arises only where Defendants can show they were "acting under" federal officers in "carrying out the 'act[s]' *that are the subject of the petitioner's complaint*." *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) (quoting 28 U.S.C. § 1442) (emphasis added).[1] The subject

---

[1] *See also Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 813 (3d Cir. 2016) ("[T]he 'nexus' or 'causation' requirement[] demands that the *alleged conduct* have been undertaken 'for or relating to' a federal office.") (emphasis added); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 472 (3d Cir. 2015) ("*Defender Ass'n*") ("acts complained of . . . 'relate to' acts taken under color of federal office").

of Plaintiff's Complaint is Defendants' "fifty years [of] deceiving the public about their central role in causing climate change in order to grease the wheels of their ever-expanding production of fossil fuels." Compl., ECF No. 1-2, ¶ 3. Defendants do not—and cannot—assert any relationship between their half-century of climate change deceptions and any conduct acting under federal officers, making their asserted bases for federal officer removal a "mirage [that] only lasts until one remembers what [Plaintiff] is alleging in this lawsuit." *Rhode Island v. Shell Oil Prod. Co. LLC*, 979 F.3d 50, 59-60 (1st Cir. 2020) ("*Rhode Island II*").

Defendants' contention that their disinformation campaign is "beside the point" because the Complaint targets Defendants' production and sale of fossil fuels, Defs' Br. at 8-12, grossly mischaracterizes Plaintiff's claims. *First*, Defendants' deceptions are at the heart of the Complaint's allegations concerning their allegedly unlawful conduct, *see* Compl. ¶¶ 75-193, 209-221, and form the basis of *all five* of Plaintiff's state law claims, *see id.* ¶¶ 291, 296, 299-300, 302, 308, 316-18, 321, 326, 333-36, 341-49,358-66. *Second*, Defendants' arguments regarding the cause of Plaintiff's injuries, Defs' Br. at 10-11, "engage in an evaluation of the merits" that is "wholly improper" on a motion to remand, which "must be decided on the face of the complaint," *Fairfax Fin. Holdings Ltd. v. S.A.C. Capital Mgmt., LLC*, No. 06 Civ. 4197, 2007 WL 1456204, at *4 (D.N.J. May 15, 2007); *see also Honolulu*, 2021 WL 531237, at *8 n.14 ("Defendants

3

essentially ask this Court to find the entire case 'irrelevant[,]' which would seem an odd request to make at this procedural juncture.") (modification in original).

The theory of Plaintiff's case is consistent throughout the Complaint—Defendants' deceptions drove their increased production and sale of fossil fuels that caused Plaintiff's injuries[2]:

- "The climate harms masked by Defendants' half-century of deception have now slammed into the shores of Hoboken." Compl. ¶ 8.

- "[Defendants] were told time and again by their scientists . . . that their continued large-scale production of fossil fuels would lead to the exact harms Hoboken is now facing . . . . *Despite decades of warnings*, Defendants did nothing to slow their aggressive production, marketing, and sale of fossil fuels, choosing to prioritize profits over averting monumental harm." *Id.* ¶ 75 (emphasis added).

- "More than half of global $CO_2$ emissions since 1751 have been released since 1988; in other words, after Defendants knew about

_____

[2] Defendants urge the Court to disregard the deceptions at the heart of the Complaint because it must "credit [Defendants'] theory of the case in assessing the applicability of [] federal officer removal." Defs' Br. at 56 (citation and quotation marks omitted). The argument fails for two reasons. *First*, the "for or relating to" requirement does not give Defendants license to contort Plaintiff's claims into something they are not. Rather, Defendants must show that their conduct acting under federal officers is related to the "acts complained of." *Defender Ass'n*, 790 F.3d at 472. Defendants' deceptions are central to the "acts complained of" here. *Second*, the cases Defendants cite credited the defendants' "theory" of the case only with respect to a disputed issue of statutory interpretation because to "choose between readings of the Ordinance" would "decide the merits of this case." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999); *accord Defender Ass'n*, 790 F.3d at 474 (same). The Court cannot ignore the *allegedly unlawful conduct* in the Complaint to determine whether *those allegations* relate to acts taken under federal officers. *Honolulu*, 2021 WL 531237, at *7 ("[I]f Defendants had it their way, they could assert *any* theory of the case, however untethered to the claims of Plaintiffs, because this Court must 'credit' that theory.").

fossil fuels' catastrophic climate effects, they actively decided to suppress evidence of those effects." *Id.* ¶ 107.

- Defendants' "greenwashing" "serve[s] to mask Defendants' current extraction, production, marketing and sale of fossil fuels at record levels and continued funding of climate disinformation behind closed doors, all of which have harmed Plaintiff substantially." *Id.* ¶ 172.

Defendants have already tried several times to downplay the central role of their disinformation campaign in climate change tort claims similar to Plaintiff's; every court to consider Defendants' distortions of these claims has rejected them. *See Mayor & City Council of Baltimore v. B.P. P.L.C.*, 952 F.3d 452, 468 (4th Cir. 2020) ("*Baltimore II*") ("[A]ny federal authority over a portion of certain Defendants' production and sale of fossil fuel products is too tenuous" to justify federal officer removal because "the Complaint . . . challenge[s] the promotion and sale of fossil fuels . . . *abetted by a sophisticated disinformation campaign*.") (emphasis added); *see also Honolulu*, 2021 WL 531237, at *6-7.

The Third Circuit's decision in *Papp v. Fore-Kast Sales Co., Inc.* illustrates how the federal government's lack of control over Defendants' disinformation campaign defeats their federal officer jurisdiction gambit. 842 F.3d 805 (3d Cir. 2016). In that case, "the heart of Papp's claim against Boeing [was] the failure to provide sufficient warning about the dangers of asbestos" in an aircraft Boeing produced for the federal government. *Id.* at 813. The Third Circuit found the "for, or relating to" prong satisfied because the government's "control" of Boeing's

5

production "extended to the content of written materials and warnings associated with such aircraft." *Id.* (citation and quotation marks omitted). The opposite is true here. The federal government had no relationship to, much less any control over, the deceptions about climate change that are at the heart of the Complaint.

Further, and ignored by Defendants, the Complaint expressly does *not* encompass the activities Defendants claim as hooks for federal officer jurisdiction.

*First*, Plaintiff's disclaimer of injuries arising from "Defendants' provision of fossil fuel products to the federal government for military and national defense purposes," Compl. ¶ 222 n.202, excises their sales to the military and storage for the government on the Strategic Petroleum Reserve, *see* Plaintiff's Memorandum of Law, ECF No. 94 ("Plt's Br.") at 42-43 (citing Notice of Removal, ECF No. 1 ("NOR") ¶¶ 101-29). This disclaimer is effective. *Martincic v. A.O. Smith Corp.*, No. 20 Civ. 958, 2020 WL 5850317, at *3-4 (W.D. Pa. Oct. 1, 2020) (denying jurisdiction based on disclaimer that "'Plaintiff is not bringing any claims in the instant complaint for exposure to asbestos-containing products during his service in the United States Navy'"); *Dougherty v. A O Smith Corp.*, No. 13 Civ. 1972, 2014 WL 3542243, at *10 (D. Del. July 16, 2014), *report and recommendation adopted*, 2014 WL 4447293 (D. Del. Sept. 8, 2014); *see also* Plt's Br. at 43 n.12.

*Second*, much of the conduct Defendants rely on as a basis for federal officer jurisdiction predates the allegations in the Complaint by more than a decade.

"Critical under the [federal officer] statute is to what extent defendants acted under federal direction *at the time they were engaged in the conduct now being sued upon*." *In re Methyl Teriary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124-125 (2d Cir. 2007) (citation and quotation marks omitted) (emphasis added). Plaintiff sues Defendants for emissions "since 1965," Compl. ¶¶ 3, 301, 319, 335, because this time period coincides with the earliest warnings Defendants received (and concealed) about fossil fuels' devastating impacts, *id.* ¶¶ 75-107.  Defendants' World War II and Korean War sales to the military and Standard Oil's conduct on Elk Hills beginning in 1944 occurred more than ten years before the critical period.

 *Third*, Defendants' Outer Continental Shelf ("OCS") leases and military sales constitute "an unknown but at most inconsequential percentage of Defendants' total production and sale of fossil fuels," Plt's Br. at 39-40, and Defendants' attempt to rebut this showing actually proves Plaintiff's point.[3] Defendants note the total amount of oil supplied to the federal government during World War II and extracted on the OCS, but conspicuously refuse to tie these statistics to any particular Defendant.  *See* Defs' Br. at 57.  The reason is obvious:

---

[3] Defendants' contention that their "factual allegations will ordinarily be accepted as true unless challenged by the [plaintiff]" Defs' Br. at 7-8 (modification in original) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014)), does not apply here because Plaintiff makes a "factual attack" that "disputes 'the factual allegations underlying the [] assertion of jurisdiction,'" *Papp*, 842 F.3d at 811 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).

(1) several Defendants' OCS production constitutes less than 5%—and some less than 1%—of their total output; and (2) their World War II production is both two decades too early and insignificant.  Plt's Br. at 40, 55.  Defendants' sole attempt at quantification—that BP has sold 1.5 billion gallons of aviation fuel to the government in the last four years, Defs' Br. at 57—is illuminating: BP produced that same volume of oil in *less than two weeks* in 2019.[4]

Such opaque and insignificant ties to Defendants' total production and sale of fossil fuels since 1965, even in the absence of the disinformation campaign at the heart of Plaintiff's claims, are insufficient to meet the "for, or relating to" prong.  *See Cnty. of Montgomery v. Atl. Richfield Co.*, No. 18 Civ. 5128, 2019 WL 2371808, at *6-8 (E.D. Pa. June 5, 2019) (World War II production of lead-based paint for military lacks required connection to lawsuit over "manufacture and proliferation of lead-based paint in privately-owned homes"); *Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 870 (E.D. Mo. 2016); Plt's Br. at 40-42.

**B.      Defendants Were Not "Acting Under" Federal Officers**

In addition to having no relationship to Plaintiff's Complaint, the oil and gas leases and World War II policies Defendants cite lack the hallmark "subjection,

---

[4] BP sold 36 million barrels of aviation fuel (1.5 billion gallons) over four years; it produced 2.6 million barrels of oil per day in 2019.  BP America, "Energy with Purpose, BP Annual report and form 20-F 2019" (2019), https://www.bp.com/en/global/corporate/investors/results-and-reporting/annual-report.html.

guidance, and control" of or "unusually close" relationship with the government required to establish federal officer jurisdiction. *See Watson,* 551 U.S. at 151, 153.

<u>Outer Continental Shelf</u>:  The First, Fourth, Ninth, and Tenth Circuits all rejected Defendants' claim that they were "acting under" federal officers when they extracted oil pursuant to leases on the OCS because "the willingness to lease federal property or mineral rights to a private entity for the entity's own commercial purposes, without more," cannot be "characterized as the type of assistance that is required" to show that the private entity is "acting under" a federal officer. *Baltimore II*, 952 F.3d at 465; *accord Rhode Island II*, 979 F.3d at 59; *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 965 F.3d 792, 820-827 (10th Cir. 2020) ("*Boulder Cnty. II*"); *Cnty. of San Mateo v. Chevron Corp.*, 960 F.3d 586, 602-03 (9th Cir. 2020) ("*San Mateo II*").

Defendants' claim that the leases were "not merely commercial transactions" because they advanced federal policy interests, Defs' Br. at 36-37 (quoting Declaration of Tyler Priest, ECF No. 100-39 ("Priest Decl.") ¶ 7), "merely rearrange[s] the deckchairs" of their already-rejected arguments, *Honolulu*, 2021 WL 531239, at *5; *see Boulder Cnty. II*, 965 F.3d at 826 ("Our determination that ExxonMobil was not 'acting under' federal officers in drilling pursuant to OCS leases is not altered by the OCS's status as a 'vital national resources reserve held by the Federal Government.'") (quoting 43 U.S.C. § 1332(3)).  Whether or not the

leases advanced federal policy interests, "a person is not 'acting under' a federal officer when the person enters into an arm's length business arrangement with the federal government or supplies it with widely available commercial products or services." *San Mateo II*, 960 F.3d at 600.  Defendants acknowledge that their main activity on the OCS was "supply[ing] the domestic market" with oil and gas.  Defs' Br. at 37.  They leased land on the OCS "in exchange" for the right to "explore and produce" widely available oil and gas products they then sold on the open market for their own profit. *San Mateo II*, 960 F.3d at 602.  They did not "help [to] carry out[] the duties or tasks of [a] federal superior." *Watson*, 551 U.S. at 152.

Defendants' assertion that the regulations governing Defendants' OCS operations "'went well beyond those that governed the average federally regulated entity,'" Defs' Br. at 37 (quoting Priest Decl. ¶ 19), is wrong.  Even if agency supervisors had "discretion" to enforce these regulations and occasionally issued "OCS Orders" under them, Priest Decl. ¶¶ 23-25, that is, in fact, how federal agencies implement regulations. *See Watson*, 551 U.S. at 152-53 ("[T]he help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law . . . even if the regulation is highly detailed and even if the private firm's activities highly supervised and monitored").  The smattering of new regulations Defendants now cite make no difference. *See* Defs' Br. at 37-39; Priest Decl. ¶¶ 19-20, 22-26.  That "OCS lessees are required to

10

conduct drilling in accordance with federally approved exploration, development, and production plans and conditions," *Boulder Cnty. II*, 965 F.3d at 821, does not create federal officer jurisdiction, as these "terms are mere iterations of the OCSLA's regulatory requirements," *Baltimore II*, 952 F.3d at 465; *accord Boulder Cnty. II*, 965 F.3d at 824; *San Mateo II*, 960 F.3d at 603.

Priest's discussion of 1978 amendments to the OCSLA that "stiffen[ed] [] safety and environmental requirements," Priest Decl. ¶ 55, illustrates just this point. If compliance with safety and environmental regulations made a defendant "acting under" a federal superior, *all* extractors of commercial products from federal lands—miners, ranchers, loggers, fisheries, etc.—would be federal officers if they followed regulations on what, when, and how much can be harvested on public property, and any case brought against such parties, irrespective of how divorced from this production, would land in federal court.[5]

Finally, an unenacted 1974 law that would have formally established a Federal Oil and Gas Corporation, Defs' Br. at 39-40, has no bearing on whether Defendants "acted under" federal officers when they extracted oil on the OCS for their own commercial purposes. An unenacted law establishes no federal control

---

[5] Defendants' argument that they were acting under federal officers pursuant to onshore leases with the Department of Interior, Defs' Br. at 40-41, fails for the same reason. The purported government "control" of Defendants' activities under these leases likewise recites federal regulations imposed on the lessees, *see* NOR ¶¶ 74-82, which do not establish the "acting under" relationship.

and evinces Congressional intent of nothing at all.[6] *Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 187 (1994) ("Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction.") (citation and quotation marks omitted).

Elk Hills Reserve:  Defendants do nothing to overcome the decisions of three Courts of Appeals that have rejected their federal officer jurisdiction claim based on Standard Oil's conduct on the Elk Hills Reserve.  *See* Plt's Br. at 46-47. Defendants claim a different result is appropriate based on "new" evidence they previously failed to submit—a 1971 Operating Agreement between Standard and the Navy.  Defs' Br. at 42-43; Ex. 27 to Declaration of Joshua Dick in support of Notice of Removal ("Dick NOR Decl."), ECF No. 1-28.  The *Honolulu* court just rejected this argument: "nothing else in the agreement" other than an unexplained

---

[6] By way of contrast, in *Defender Association*, the Third Circuit found that a public defender office was "acting under" federal officers because the office was "*created* through the Criminal Justice Act," an *enacted* federal statute, and the lawsuit "target[ed] the manner in which the [office] use[d] its federal money."  790 F.3d at 469 (emphasis added).  Defendants' citation to *MHA, LLC v. Amerigroup Corp.* in support of its "acting under" analysis is similarly inapposite.  No. 18 Civ. 16042, 2021 WL 226110 (D.N.J. Jan. 21, 2021).  In that case, the court found that a provider of Medicare Advantage Plans was "acting under" federal officers because it "provide[d] access to publicly funded healthcare for New Jersey Medicare enrollees," thus fulfilling an "essential [government] function" of "provi[ding] [] Medicare coverage."  *Id.* at *1, *7.  Here, Defendants did not engage in a fifty-year disinformation campaign to promote their enormous production and sale of fossil fuels in order to fulfill any "essential" government function like representing the indigent or providing healthcare to the elderly.

statement that Standard is "in the employ" of the Navy "sets forth the kind of 'unusually close' relationship that is necessary. Instead, the agreement provides only general direction regarding the operation of Elk Hills." *Honolulu*, 2021 WL 531239, at *6; *see also* Dick NOR Decl., Ex. 27, ECF No. 1-28, § IV(f) (Standard "furnish[ed] . . . a set of field operating procedures" under the Agreement).

Standard "extracted oil . . . independently" and "was not acting on behalf of the federal government" at Elk Hills. *San Mateo II*, 960 F.3d at 602; *accord Rhode Island II*, 979 F.3d at 59; *Baltimore II*, 952 F.3d at 468-71. The newly introduced Government Accountability Office ("GAO") Report stating that, under the UPC, "[t]he Navy chose to operate the reserve through a contractor rather than with its own personnel," Ex. 9 to Declaration of Joshua Dick in support of Defendants' Opposition ("Dick Opp. Decl."), ECF No. 100-10, at 15, changes nothing about the *actual terms* of the UPC, under which the Appeals Courts uniformly rejected federal officer jurisdiction. Indeed, the GAO Report confirms that Standard and the Navy "coordinate[d] operations," *San Mateo II*, at 960 F.3d at 601, as equals— Standard had "a 50% vote on [the] two-member Operating Committee and six member Engineering Committee," Dick NOR Dec., Ex. 9, ECF No. 1-10, at 15.[7]

---

[7] Standard's provision of oil from Elk Hills to the federal government during World War II and a November 1974 energy shortage, Defs' Br. at 42-43, also fails to establish the "acting under" relationship because it was merely "suppl[ying] it with widely available commercial products," *San Mateo II*, 960 F.3d at 600.

Strategic Petroleum Reserve: Defendants do not dispute Plaintiff's showing
that (1) their supply of fuel for the Reserve under the OCS royalty program
consists of nothing more than simple regulatory compliance; and (2) their fuel
terminal leases involve no federal control or supervision.  *See* Plt's Br. at 47-48.
"At best, the relationship Defendants describe is a regular business one" that does
not give rise to the "acting under" relationship.  *Honolulu*, 2021 WL 531239, at *6.

Specialized Military Fuel Sales: Defendants did not assert fuel sales to the
military as a basis for federal officer jurisdiction in *Baltimore*, *Oakland*, *San
Mateo*, *Boulder*, *Rhode Island*, or *Massachusetts*.  In addition to bearing no
relation to Plaintiff's claims—the Complaint expressly disclaims injuries arising
from these sales, these transactions predominantly predate the Complaint, and they
are an insignficant contribution to global climate change, *see supra* at 7-8—
Defendants were not acting under federal officers when supplying these fuels.

Directives from the Petroleum Administration for War ("PAW") during
World War II, newly introduced by Defendants, do not meet the "acting under"
prong even if they were temporally relevant, as a federal court has already held.
*See Par. Of Cameron v. Auster Oil & Gas Inc.*, 420 F. Supp. 3d 532, 543, 544
(W.D. La. 2019) (rejecting argument that "the industry's activities were tightly
controlled to support the war effort" because "there is no evidence that PAW and
other federal agencies directed Defendants' activities or that they mandated how

14

Defendants were to comply with federal regulations and directives"). Stray statements that generically refer to the content of the directives, *see* Declaration of Mark Wilson, ECF No. 100-40 ("Wilson Decl.") ¶ 11, a statement by former Secretary of Interior Harold Ickes that predated the creation of the agency, *see* Plt's Br. at 49; Dick NOR Decl. Ex. 59, ECF No. 1-60, at 8, and a memorandum that made a single, vague reference to "possible [] disciplinary measures" that had not yet been taken and would be taken "only to [a] minimum extent" in "extreme" circumstances," Dick NOR Decl. Ex. 55, ECF No. 1-56, at 1; *see* Defs' Br. at 48-49, do not change this holding. As in *Parish of Cameron*, none of these statements "show[] that [Defendants'] World War II era activities were mandated by PAW or any other federal agenc[ies]." 430 F. Supp. 3d at 543.

In fact, the PAW report Defendants submitted shows the opposite. Its leading chapter is entitled "The Story of *Partnership*" and describes PAW as "a new Federal agency . . . dedicated to the proposition that *cooperation, rather than coercion*, was the formula by which the forces of Government and industry could best be joined in service of the Nation." Dick Opp. Decl. Ex. 17, ECF No. 100-18, at 1 (emphasis added). Under this arrangement, "the functions and responsibilities of the two partners were quite separate and distinct" and government orders had to be "concurred in by [] industry committees." *Id.* at 2, 184.

The CERCLA cases change nothing. Even if the Court were to consider

them,[8] they confirm that oil companies and the government in fact engaged in a "cooperative endeavor," *Shell Oil Co. v. United States*, 751 F.3d 1282, 1287 (Fed. Cir. 2014), and the government "did not exercise direct control over the production of avgas," *United States v. Shell Oil Co.*, 294 F.3d 1045, 1050 (9th Cir. 2002).

Nor does Wilson's new report—supposedly relating the history of the U.S. Government's role in the oil industry, but only produced by Defendants after they lost six cases—change anything. Wilson claims "[t]he U.S. government enlisted oil companies to operate government-owned industrial equipment," Defs' Br. at 49 (quoting Wilson Decl. ¶ 15), but in the context of "ships, aircraft engines, tanks, and explosives," Wilson Decl. ¶ 16. These are separate from Defendants' production and sale of fossil fuels, much less Defendants' fifty-year campaign of deception at the heart of the Complaint. The tenuousness of this "new" factual padding is also illustrated by Wilson's refusal to be specific: the overwhelming majority of the report talks of unnamed "oil companies" and not Defendants.

Nor do Defendants' allegations concerning the government's invocation of the Defense Production Act during the Korean War refer to the conduct of any

---

[8] These cases do not relate to federal officer removal and this Court cannot take "judicial notice" of their "factual findings" as Defendants urge, Defs' Br. at 56-57, because a court "may not take judicial notice of proceedings or records in another case so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause before them," *Billups v. Penn State Milton S. Hershey Med. Ctr.*, 910 F. Supp. 2d 745, 756 n.4 (M.D. Pa. 2012) (citations and quotation marks omitted).

particular Defendant. *See* Defs' Br. at 51; NOR ¶ 117; Wilson Decl. ¶ 28.

Wilson's claim that the government "call[ed] upon" the industry to drill oil wells,

Wilson Decl. ¶ 28, "provide[s] no information as to why this constitute[s] the sort

of unusually close relationship required" to establish the "acting under"

relationship. *Honolulu*, 2021 WL 531239, at *5 (citation and quotation marks

omitted). The sparse references to specific Defendants—a Chevron predecessor's

construction of an avgas plant; Shell's production of toluene; and Vietnam War jet

fuel contracts, Wilson Decl. ¶¶ 19, 23, 34; Dick Opp. Decl. Ex. 18, ECF No. 100-

19—merely show that government contracts *existed*,[9] which is uncontested, but say

nothing about the "unusually close [relationship] involving detailed regulation,

monitoring or supervision" required to bring "Government contractors [] within the

terms of the federal officer removal statute," *Watson*, 551 U.S. at 153.[10]

---

[9] Defendants' citation to *Agyin v. Razmzan* for the proposition that "a private
company acting pursuant to a contract with the federal government has th[e]
[federal officer] relationship," 986 F.3d 168, 175 (2d Cir. 2021), Defs' Br. at 34, is
misleading. *Watson* makes clear that contractors "act under" federal officers only
where they have an otherwise "unusually close" relationship. *See Defender Ass'n*,
at 790 F.3d at 468. *Agyin* supports *Plaintiff*: "The argument for [defendant's]
ability to remove his case is stronger than that of, for example, *a private company
acting under a contract with the government. Unlike a contractor*, the government
actually treated [defendant] as the equivalent of a government employee . . . ."
*Agyin*, 2021 WL 243514, at *8 (emphasis added).
[10] Defendants' allegations concerning BP's and Shell's more recent jet fuel sales to
the military, Defs' Br. at 51-54, likewise consist of arms-length contractual
arrangements that do not involve the "unusually close" relationship "involving
detailed regulation, monitoring, or supervision" that gives rise to federal officer
jurisdiction. *Defender Ass'n*, 790 F.3d at 468 (quoting *Watson*, 551 U.S. at 153).

Defendants' belated attempt at resuscitating this repeatedly dismissed argument is sheer desperation.

### C.   Defendants Have Not Established a Colorable Federal Defense

To establish a colorable federal defense, Defendants must show that the defense is "legitimate and could reasonably be asserted, given the facts presented and the current law." *Papp*, 842 F.3d at 815 (modification, citation, and quotation marks omitted).  Defendants merely list the names of various federal defenses without providing any facts or legal analysis to support them.  Defs. Br. at 58-59; NOR ¶ 132.  This does not meet their burden.  *Honolulu*, 2021 WL 531237, at *7 ("[S]omething more than simply asserting a defense and the word 'colorable' in the same sentence must be required.").

## II.   DEFENDANTS' OUTER CONTINENTAL SHELF ACT REMOVAL ARGUMENT IS FRIVOLOUS

The plain language of the Outer Continental Shelf Lands Act ("OCSLA") and settled Third Circuit law slam the door on Outer Continental Shelf removal. For OCSLA jurisdiction, Plaintiff's claims must "aris[e] out of, or in connection with . . . any operation conducted on the outer Continental Shelf which involves exploration, development or production of the minerals."  43 U.S.C. § 1349(b).

---

Plaintiff has also expressly disclaimed injuries arising from these sales, which amount to an immeasurably small contribution to global climate and have no connection to Defendants' disinformation campaign.  *See supra* Section I.A.

The Third Circuit, following the Fifth, "applie[s] a 'but for' test under § 1349 to resolve whether a dispute 'arises out of, or in connection with' an operation" on the OCS. *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 155 (5th Cir. 1996); *see also Various Plaintiffs v. Various Defendants ("Oil Field Cases")*, 673 F. Supp. 2d 358, 370 (E.D. Pa. 2009) (Fifth Circuit law applies in Third Circuit). Defendants do not claim—because it would be ridiculous to do so—that Plaintiff's harms would not have occurred "but for" Defendants' production on the OCS.

Instead, Defendants assert "but-for" connection is not required.  Defs' Br. at 29-30.  Every court to hear this argument has rejected it. *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142, 151-52 (D.R.I. 2019); *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 566-67 (D. Md. 2019), *as amended* (June 20, 2019); *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 938-39 (N.D. Cal. 2018).  Exercising jurisdiction based on the "downstream impacts" of the "unknown fraction of their fossil fuels [] produced on the OCS"  would "dramatically expand the statute's scope" and create "an absurd result." *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 979 (D. Colo. 2019) (emphasis in original).[11]

---

[11] All of the cases cited by Defendants relate to the use or ownership of infrastructure on the OCS.  *See Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014) (explosion of mobile drilling rig); *Tenn. Gas Pipeline v. Houston Cas. Ins. Co*, 87 F.3d 150 (5th Cir. 1996) (boat collision with fixed platform); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 570 (5th Cir. 1994) (partition action to

Defendants cite *nothing* to support their assertion that OCSLA jurisdiction is appropriate because the damages Plaintiff seeks would "threaten the viability of future OCSLA production by making it prohibitively costly." Defs' Br. at 30-31. These Defendants are giant oil companies that have made multi-billion-dollar annual profits for decades; they point to no possible way in which Plaintiff's claims would change that meaningfully. The rule Defendants suggest would establish federal jurisdiction over any damages suit against any company that operates on the OCS. In their universe, every slip-and-fall claim against Chevron, even if it happened thousands of miles from the ocean, would have to be heard in federal court.

## III.    FEDERAL QUESTION REMOVAL IS NOT AVAILABLE

This Court is faced with a single question regarding federal question removal: whether or not Plaintiff's claims "really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005) (citation and quotation marks omitted) (alterations in original). Plaintiff pled no claims that necessarily or substantially require the construction or validity or effect of federal law—hence removal under 28 U.S.C. § 1441 is unavailable.

---

determine property ownership rights that will "facilitate the reuse, sale or salvage of [] offshore facilities"); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223 (5th Cir. 1985) (breach of contract during installation of platform).

**A. *Grable* Is the Only Possible Basis For Removal**

There is no federal claim on the face of the Complaint, pleaded artfully or otherwise. Defendants have now dropped their argument that Plaintiff's state law claims are "completely preempted," either by the "Clean Air Act and other federal statutes," NOR ¶ 9 (an argument rejected by the Third Circuit in *Bell v. Cheswick Generating Station*, 734 F.3d 188, 193 (3d Cir. 2013), Plt's Br. at 14-15), or by some other "non-statutory form of complete preemption," NOR ¶ 177 (an argument rejected by the Supreme Court in *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 8 n.4 (2003), Plt's Br. at 12 n.3). There is only one equally unavailable option left: removal in the "narrow category of cases giving rise to what is colloquially referred to as *Grable* jurisdiction." *Matter of the Estate of Curcio*, No. 16 Civ. 3185, 2016 WL 6540449, at *3 (D.N.J. Nov. 3, 2016) (Falk, M.J.).

Defendants' admission that "plaintiffs can *usually* avoid removal by pleading only state-law claims, even if federal claims are available," Defs' Br. at 17-18 (emphasis added), gives away the game. Defendants fail to cite a *single* case where a federal court held removal from state court was appropriate outside of these three enumerated grounds: (a) a federal claim pleaded on the face of the complaint under the well-pleaded complaint rule; (b) a state law claim that was completely preempted by a federal statute; or (c) a state law claim removable under *Grable*. The "artful pleading" they complain of, *id.* at 6, *is* the doctrine of

21

complete preemption, which they no longer advance. *See Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim."). The rest of their arguments are for *ordinary* preemption, *see* Defs' Br. at 12-15, which is a defense and not a basis for removal, *see* Plt's Br. at 18-23.

After litigating and losing their "federal common law removal" argument in eight federal courts (and counting), Defendants must know this.[12]  Instead, Defendants continue to rely on *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) to argue that federal courts can transform a state law claim into a federal law claim without complete preemption.  Defs' Br. at 17; *see also* NoR ¶ 20 n.57.[13]  As Plaintiff explained, Plt's Br. at 20 n.6, this footnote in *Moitie* was limited to its facts by the Supreme Court in *Rivet*, 522 U.S. at 478.[14]

The Third Circuit has shut down Defendants' argument.  The court in

---

[12] Defendants have neither cited nor distinguished a single one of these cases, not even the Ninth Circuit's recent decision in *Oakland II* on federal question removal.
[13] Defendants also cite *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1115-16 (3d Cir. 1984), for this proposition.  That case was brought in federal court and had nothing to do with removal or federal jurisdiction.
[14] Defendants also misleadingly quote only the second half of a sentence from *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 313 n.7 (1981), stating: "if federal common law exists, it is because state law cannot be used."  Defs' Br. at 2, 12, 18.  The full quotation states: "*If state law can be applied, there is no need for federal common law*; if federal common law exists, it is because state law cannot be used."  *City of Milwaukee*, 451 U.S. at 313 n.7 (emphasis added).  In other words, Defendants claim *Milwaukee* says the *opposite* of what that case actually holds.  This borders on a lack of candor to the Court.

22

*Goepel v. National Postal Mail Handlers Union*, held that "the only basis for recharacterizing a state law claim as a federal claim removable to a district court" is through complete preemption, and that Defendants' 'federal common law' removal is unavailable.  36 F.3d 306, 312 (3d Cir. 1994).  The defendant in *Goepel* removed on the basis that "the matter [wa]s one 'arising under' the laws of the United States," 36 F.3d at 309, because the Goepels sought to "'enforce rights under a federal [contract]' . . . and 'construction of that federal contract is governed exclusively by federal law.'"  *Id.* at 310 (quoting defendants).  The Third Circuit identified the *only* exceptions to the well-pleaded complaint rule: "(1) when it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims or (2) when it appears that plaintiff's claim is 'really' one of federal law.'"  *Id.*  The latter "is an independent corollary of the well-pleaded complaint rule . . . known as the complete preemption doctrine."  *Id.* (citations and internal quotation marks omitted).  The Third Circuit *rejected* the Fourth Circuit's holding in *Caudill v. Blue Cross and Blue Shield of North Carolina*, 999 F.2d 74 (4th Cir. 1993)—and Defendants' argument here— that removal was proper because, irrespective of the complete preemption doctrine, "federal common law entirely replaces state contract law."  *Goepel*, 36 F.3d at 313.

Defendants have now abandoned their complete preemption argument, but complete preemption puts the scope of the 'federal common law removal' doctrine

they seek to create into perspective. Complete preemption is a "narrow" exception

to the well-pleaded complaint rule "for instances where Congress has expressed its

intent to 'completely pre-empt' a particular area of law,'" *In re U.S. Healthcare,

Inc.*, 193 F.3d 151, 160 (3d Cir. 1999),[15] and has provided a statute that creates an

"exclusive cause of action for the claim asserted [that] also set[s] forth procedures

and remedies governing that cause of action," *Beneficial Nat'l Bank*, 539 U.S. at 8.

If Defendants' theory of removal was correct, courts would never evaluate whether

a federal statute provided an exclusive cause of action in federal court that evinced

Congressional "intent to 'completely pre-empt' a particular area of law." *In re

U.S. Healthcare,* 193 F.3d at 160. A defendant would merely claim that an area of

law raised "important" issues of federal interest and thereby destroy the "narrow"

exception the courts have recognized. No court has entertained that proposition.

## B.   *Grable* Removal Is Not Available

In explaining the scope of the *Grable* doctrine, the Supreme Court has held

that "it takes more than a federal element to open the 'arising under' door [of

---

[15] Defendants do not identify any Congressional intent to completely overtake an
area of state law with federal common law and they do not cite any federal
"exclusive cause of action for the claim asserted." *Beneficial Nat'l Bank*, 539 U.S.
at 8. In fact, they say the *opposite*. *See* NOR at 127-28 ("the very same federal
common law claims" Plaintiffs *should* have brought "are displaced by federal
statute"); *see also* Answering Brief of Defendants-Appellees Shell Oil Company et
al., *Native Village of Kivalina v. Exxon Mobil Corp.*, 2010 WL 3299982, at *57
n.23 (9th Cir. June 30, 2010) (arguing no "uniquely federal interests" justify
recognizing "federal common law" in this area).

Section 1331]." *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677,

701 (2006); *Parlin v. DynCorp Int'l, Inc.*, 579 F. Supp. 2d 629, 633 (D. Del. 2008)

("a federal question [that] is inherent in a potential defense rather than in the

plaintiff's cause of action," is not "necessarily raise[d]" for *Grable*).  When invited

to identify any substantial federal law question that "is a necessary element of the .

. . [state law] claim for relief," *Empire Healthchoice Assurance,* 547 U.S. at 699

(citations and quotation marks omitted)—for instance, a state claim dependent on

showing the IRS acted unlawfully, as in *Grable*—Defendants are silent.  They

double down on their kitchen sink approach to removal, stating that (variously)

federal regulations, foreign affairs, and the First Amendment are implicated in

Plaintiff's claims.  But they neither cite New Jersey law nor identify a federal law

issue that must—necessarily—be decided in order to find Plaintiff prevails.  *See*

*Sherman v. Hopewell Twp. Police Dep't*, No. 19 Civ. 14553, 2020 WL 919682, at

*3 (D.N.J. Feb. 26, 2020) ("A federal issue is not 'substantial' if implicated in one

alternative theory of recovery.").  That is fatal.

Each of their rhetorical claims for *Grable* jurisdiction fails.  Defendants  do

not cite the Complaint or any reference therein to support their irresponsible

assertion that the Complaint "would supplant decades of national energy,

economic, and environmental policies" by "assert[ing] control over an entire

industry and its interstate commercial activities."  Defs' Br. at 20.  Nor do they cite

25

any "long-standing federal law and regulatory schemes," *id.*, that authorized Defendants to cause harm to Hoboken without paying to abate that harm.

Defendants' theory is now—for the first time—that Plaintiff is seeking "*de facto* regulations of interstate conduct*" by seeking compensation for tort harms it suffered. Defs' Br. at 21. The case they cite for that proposition, *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, held that a federal statute ordinarily preempted a state law punitive damages award where the state law undermined "clearly expressed congressional direction." 359 U.S. 236, 247 (1959). The Court held that, nonetheless, it was commonplace to allow "the States to grant compensation for the consequences, as defined by the traditional law of torts," to harm suffered in the state. *Id.* The case was heard in state court, not federal court, and the issue of interference with federal regulation was raised solely in the context of a federal defense. *Id.*; *see also N.C. ex rel. Cooper v. TVA*, 615 F.3d 291 (4th Cir. 2010) (ordinary preemption); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) (federal due process challenge to punitive damages, on appeal from state supreme court). No court has recognized *Grable* removal on the basis of hypothetical fact-specific inquiries into the financial effects of future jury awards on private enterprises acting in an area with no relevant federal regulations.

Defendants' other brand-new theory—that *Grable* jurisdiction is necessary because of the requirement to show "actual malice" in defamation and intentional

infliction of emotional distress claims, Defs' Br. at 24-26—is similarly an invention.  The giveaway is Defendants statement that, "[t]o be sure, _most_ state-law misrepresentation claims are not subject to removal."  Defs' Br. at 26 (emphasis added).  _Not one_ of the First Amendment cases cited by Defendants is a removal case and _every_ case was either litigated in state court or in district court on diversity or bankruptcy grounds, where the defendants raised federal constitutional defenses to the application of state tort law.  _See_ Defs' Br. at 24-27.[16]

Defendants cite this Court's decision in _Ortiz v. Univ. of Med. & Dentistry of New Jersey_ for the proposition that "federal jurisdiction is proper" whenever "'a court will have to construe the United States Constitution.'"  Defs' Br. at 25 (quoting _Ortiz_, No. 08 Civ. 2669, 2009 WL 737046, at *3 (D.N.J. Mar. 18, 2009)). The plaintiff in _Ortiz_ alleged that the harm caused to her was a "_violation of the First and Fourteenth Amendments to the United States Constitution_."  _Id._ at *5 (emphasis in original).  Judge Linares adopted Magistrate Judge Falk's finding that

> [t]here is really nothing embedded about Plaintiff's federal claim.  It is openly and notoriously expressed. . . . Plaintiff's stated cause of action requires proof of violation of federal law as an essential element to recovery.

---

[16] In yet another misrepresentation to the Court, Defendants claim Justice Alito opined that "recourse to a federal forum is especially warranted in suits" involving climate change.  _See_ Defs' Br. at 27.  They cite to Justice Alito's dissent from the denial of certeriori in _Nat'l Review, Inc. v. Mann_, 140 S. Ct. 344 (2019), where Justice Alito said _nothing_ about the forum for the claim, even though the case was in state court and had to do with speech on the subject of climate change.

*Id.* at \*7.  *Ortiz* does not stand for the proposition that any constitutional invocation by a defendant will bring the case into federal court.  No case holds that.

Finally, invoking "international negotiations and decisions from the representative branches of government" regarding foreign affairs does not bring this case into federal court.  Defs' Br. at 23.  Defendants have not identified any treaty that *must* be interpreted to adjudicate Plaintiff's claims; they do not identify any treaties at all.  Nor have Defendants identified anything in Plaintiff's Complaint that concerns "ordering our relationships with other members of the international community" or that seeks to "regulate extraterritorial conduct occurring in foreign nations."  *Id.*  As Plaintiff has said repeatedly, it is not seeking to regulate *anyone*; it is seeking compensation for injuries and abatement of harm.

In *Abrahamsen v. ConocoPhillips, Co.*, the Third Circuit dismissed the argument by one of these same Defendants that removal was proper because the plaintiff's claims "'implicat[e] . . . our relations with foreign nations,' and thus raise questions under federal common law."  503 F. App'x 157, 160 (3d Cir. 2012) (quoting from defendants' brief, citing *Republic of Philippines v. Marcos*, 806 F.2d 344, 352-54 (2d Cir. 1986)).  The court questioned the validity of any foreign affairs removal "doctrine," "especially for private disputes between private citizens and entities," and rejected it unless there was "intervention in the case by a foreign sovereign and proof that the lawsuit will significantly affect the foreign

government's vitality." *Id.* In fact, in analogous lawsuits *brought* by foreign sovereigns for state law negligence and fraud, courts have denied federal jurisdiction, let alone federal removal. *See, e.g.*, *In re Tobacco/Governmental Health Care Costs Litig.*, 100 F. Supp. 2d 31, 37 (D.D.C. 2000) (no federal question jurisdiction in suit by foreign sovereigns against the tobacco industry for "negligence, fraud, misrepresentation, concealment, or deceit"); *see also Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 379 (1959) (Frankfurter, J.) (federal courts have a "deeply felt and traditional reluctance . . . to expand the jurisdiction of the federal courts through a broad reading of jurisdictional statutes"). "28 U.S.C. § 1441 is to be strictly construed against removal," *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004), and Defendants have suggested no basis to depart from this well-settled jurisprudence.

## IV.  THERE ARE NO OTHER BASES FOR REMOVAL

Defendants have effectively abandoned their CAFA argument. They do not identify any relief that Plaintiff is seeking for anyone other than itself. More fundamentally, they have not identified the "State statute or rule of judicial procedure" similar to Rule 23 in Plaintiff's claim. 28 U.S.C. § 1332(d)(1)(B).[17] They cite *Kugler v. Romain*, 58 N.J. 522, 538-39 (1971) for the proposition that the

---

[17] Defendants have also not rebutted Plaintiff's showing that, even if CAFA is properly invoked—which it is not—removal would still be inappropriate under the provisions of 28 U.S.C.A. § 1332(d)(4)(A) and (B). *See* Plt's Br. at 59 n.19.

CFA is "in the nature of a class action," Defs' Br. at 60 n.12, but that case says that

N.J.S.A. § 56:8-8 and N.J.S.A. § 52:17A-4, which apply to the *Attorney General*,

allow the AG to bring claims "on behalf of all similarly situated buyers" in a claim

"in the nature of a class action." Needless to say, Plaintiff did not bring this claim

under Sections 56:8-8 or 52:17A-4, even if it could have, *see Erie Ins. Exch. v.*

*Erie Indem. Co.*, 722 F.3d 154, 159 (3d Cir. 2013).[18]

## V.   THE OPPOSITION IS PROCEDURALLY DEFECTIVE AND THE REMOVAL HAD NO "OBJECTIVELY REASONABLE BASIS"

Defendants' procedural failures and abusive litigation tactics demand an

award of costs. They have loaded their opposition brief with factual and legal

material not previewed in their 163-page Notice of Removal or in the thousands of

pages of exhibits attached thereto, all after the requisite statutory deadlines for

amending the Notice have passed, and all without leave of this Court. None of

their pleas for federal court jurisdiction has any objective basis and each has been

dismissed by eleven federal courts so far. Those previous judgments collaterally

estop Defendants from running their arguments yet again in this Court.

Defendants' counsel have advanced arguments contrary to directly applicable

precedent and have not even attempted to distinguish that precedent, or, more

---

[18] Defendants' argument for federal enclave jurisdiction, relegated to a footnote, Defs' Br. at 53 n.10, also fails. There can be no federal enclave jurisdiction when the locus of Plaintiff's harm is Hoboken, New Jersey, and where Plaintiff has disclaimed injuries arising on federal property. *See* Plt's Br. at 50-52.

egregiously, have blatantly misquoted it.  The specious "materially expanded

evidentiary record," Defs' Br. at 4, they claim to introduce does *nothing* to protect

their losing arguments.  Absent an "objectively reasonable basis for removal,"

Defendants must pay Plaintiff's costs under 28 U.S.C. § 1447(c).

     *First*, Defendants have tried, *sub silentio,* to improperly amend their Notice

of Removal outside the statutory time-period.  Defendants' opposition to Plaintiff's

motion to remand was filed on January 29, 2021 and attached two expert reports

and 1,000 pages of exhibits that should have been included in the Notice.  After the

30 days authorized by 28 U.S.C. § 1446(b), such material could only have been

submitted upon leave of the Court under 28 U.S.C. § 1653.  Defendants never

sought leave and thus this additional material cannot be a basis for removal.

     Even if the Court were to entertain a request to amend under Section 1653,

that would be improper here.  Courts may only grant a Section 1653 amendment to

cure "imperfect or defective" allegations, not to "add entirely new information to

the original notice of removal," *Dragani v. Genesse Valley Invs., LLC*, No. 11 Civ.

1193, 2011 WL 2491066, at *6 (D.N.J. June 6, 2011) (Falk, M.J.), because

amendment under Section 1653 is improper for the purposes of adding "new

factual allegations," *see USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.11 (3d

Cir. 2003).  Defendants *admit* that they are submitting these materials to "add

entirely new information" to their Notice; they seek to distinguish the uniform

contrary authority in similar cases by claiming that they "here [with their opposition brief] present a materially expanded evidentiary record . . . that is more extensive than any presented to a court that has decided these issues to date," Defs' Br. at 4; *see also id.* at 42, 46, 55 n.11.[19]  Their own assertion of the importance of this material shows that its introduction is improper.  *See Castle v. Laurel Creek Co., Inc.*, 848 F. Supp. 62, 66 (S.D.W. Va. 1994) (denying amendment where "proposed amendment is neither minor nor technical in nature; it is both substantial and material" and removal would fail without it); *Johnson v. Nat'l Consolidation Servs., LLC*, No. 12 Civ. 5083, 2013 WL 638600, at *2 (E.D. Pa. Feb. 21, 2013); *Hemphill v. Transfresh Corp.*, No. 98 Civ. 0899, 1998 WL 320840, at *4 (N.D. Cal. June 11, 1998).  Allowing this *sub siletio* amendment would "substantially eviscerate 28 U.S.C. s 1446(b)," which acts as a "statute of repose."  *Richmond, F. & P. R. Co. v. Intermodal Servs., Inc.*, 508 F. Supp. 804, 807 (E.D. Va. 1981).

*Second*, and for the same reasons, Defendants should be collaterally estopped from claiming removal after losing *precisely* the same legal arguments in one court after another.  "Collateral estoppel prevents the re-litigation of a factual or legal issue that was litigated in an earlier proceeding," *Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016), and there is no doubt that these very same allegations

---

[19] This statement is no longer true.  The District of Hawaii, reviewing these same new materials, ruled against Defendants.  *Honolulu*, 2021 WL 531237.

have been litigated in four courts of appeals and seven district courts. Where

courts have repeatedly "rebuffed" a defendant's removal theories, application of

well-worn collateral estoppel principles is required to prevent abuse of the

litigation process. *Pennsylvania Higher Educ. Assistance Agency v. NC Owners,*

*LLC*, 256 F. Supp. 3d 550, 553 (M.D. Pa. 2017). That is true even where

defendants seek to shapeshift their factual allegations for removal; as long as the

issues previously decided against these defendants were "largely the same"—in

other words, so long as "any disparity between applicable legal standards" at issue

is not "substantial," *id.* at 554, and if "facts essential to the earlier litigated issue

have [not] changed," *id.* at 554 n.4 (citations and quotation marks omitted)—

collateral estoppel applies. Collateral estoppel may not be avoided on the basis of

"novel arguments" fueled by an unlimited litigation budget. *Id.* at 557.[20]

---

[20] Defendants' throwaway attempt to seek a stay, *see* Defs' Br. at 7, is procedurally improper as it does not cite the legal test for a stay and is completely without basis or reasoning. The question presented to the Supreme Court in *Baltimore* was limited by Defendants' *own petition* to issues of appealability; as with their petitions in *Rhode Island*, *Boulder*, and *San Mateo*, Defendants in *Baltimore* decided not to appeal the Fourth Circuit's holding on federal officer removal. Here, they provide no authority for the remarkable proposition that mere filing of a petition for certeriori in another case justifies a stay, when every court to have considered the substance of their removal arguments has rejected them. *See, e.g.,* Order, *City & Cnty. of Honolulu v. Sunoco LP*, No. 20 Civ. 00163 (D. Haw. Aug. 21, 2020) (ECF No. 111) ("There is not a strong likelihood of acceptance of certiorari or reversal [of any of the outstanding federal circuit court decisions]; Defendants in this case will not be 'irreparably injured absent a stay'; a further stay will, however, 'substantially injure' Plaintiff by unnecessarily prolonging these proceedings for an indeterminate amount of time; and there is 'always a public

*Third*, Defendants' practice of drawing out resolution of these disputes by advancing baseless arguments—and, in fact, citing bad caselaw, *see supra* at 14 & n.14—calls for sanctions and costs.  Unjustified removal "delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources," and 28 U.S.C. § 1447(c) was promulgated to "deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005).   Where "the removing party lack[s] an objectively reasonable basis for seeking removal," costs and expenses are appropriate under Section 1447(c). *Id.* at 141.  The laundry list of courts that have rejected precisely these arguments by these Defendants is sufficient proof of their lack of an objectively reasonable basis for removal, and are strong evidence of Defendants' bad faith in seeking to impose costs and delay on Plaintiff.[21]  *See Gilbert v. Synagro Cent., LLC*, No. 08 Civ. 1460, 2008 WL 4542248, at *3 (M.D. Pa. Oct. 9, 2008) (costs when defendants "disingenuously" argued that "Plaintiffs' complaint 'directly challenge[s] the adequacy of EPA regulations' and thereby 'necessarily require[s] this court to resolve a substantive [sic] federal issue,'"

---

interest' in the 'prompt' resolution of a dispute.") (quoting *Nken v. Holder,* 556 U.S. 418, 434 (2009)).

[21] Defendants appear to have wisely abandoned arguing for removal on the basis of the acts of a company—Marathon—which has not been sued here. *See* Plt's Br. at 40 n.11.  That section was presumably copied and pasted from Defendants' notice of removal in another case because Defendants are more concerned about imposing costs on Plaintiff than the merits of their arguments.

where defendants had made and lost that argument previously) (modifications in original); *Robinson v. Pfizer Inc.*, No. 16 Civ. 439, 2016 WL 1721143 (E.D. Mo. Apr. 29, 2016) (costs because multiple courts remanded cases on same basis); *In re D'Angelo*, 479 B.R. 649, 658 (E.D. Pa. 2012) (same, noting failure to distinguish contrary factually-similar authority); *Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 493 (6th Cir. 2013) (costs due to lack of reasonable basis for removal, even if "objectively reasonable" arguments on the merits).

Indeed, since Plaintiff filed its motion to remand, Defendants urged the Supreme Court to embrace the use of Section 1447(c) "sanctions to deter improper conduct by litigants" in the context of removal claims. *See* Reply of Petitioners, *BP P.L.C.. v. Mayor & City Council of Baltimore*, No. 19-1189, 2021 WL 130103 (U.S. Jan. 8, 2021 at *16. This Court should make use of the "ample tools" Defendants urge as remedies when defendants bring frivolous removal arguments. *BP P.L.C.,* Brief of Petitioners, 2020 WL 6930643 (U.S. Nov. 1, 2020) at *36.

## VI.   CONCLUSION

Plaintiff respectfully submits that the Court should enter an Order remanding this case to the New Jersey Superior Court, Hudson County, Law Division, and awarding Plaintiff the costs, expenses, and legal fees it incurred due to Defendants' objectively meritless removal.

Dated: February 26, 2021

           EMERY CELLI BRINCKERHOFF
           ABADY WARD & MAAZEL LLP
           600 Fifth Avenue, 10th Floor
           New York, New York 10020
           (212) 763-5000

           By:   /s/ Jonathan S. Abady
                   Jonathan S. Abady, Esq. (*pro hac vice*)
                   Matthew D. Brinckerhoff, Esq. (*pro hac vice*)
                   Ananda V. Burra, Esq. (*pro hac vice*)
                   Max Selver, Esq. (*pro hac vice*)


           KROVATIN NAU LLC
           60 Park Place, Suite 1100
           Newark, NJ 07102
           (973) 424-9777

           By:   /s/ Gerald Krovatin
                   Gerald Krovatin

           *Attorneys for Plaintiff*