## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CITY OF HOBOKEN,

      *Plaintiff*,

  v.

EXXON MOBIL CORP., ET AL.,

      *Defendants*.

Civil Action No. 20-cv-14243

<u>**OPINION**</u>

<u>**John Michael Vazquez, U.S.D.J.**</u>

      This case is one of many similar cases recently filed throughout the United States seeking to hold oil and gas companies accountable for their role in climate change. In this matter, Plaintiff the City of Hoboken ("Plaintiff" or "Hoboken") alleges that Defendants, who are oil and gas companies and related entities, engaged in a decades-long campaign to downplay the effect of fossil fuel usage on climate change. Plaintiff further alleges that it and its residents have been damaged by this conduct through the dire effects of global warming. Presently before the Court is Plaintiff's motion to remand this case to state court, D.E. 94, and Defendants' motion to strike certain portions of Plaintiff's reply brief, D.E. 106. The Court reviewed all the submissions in support and opposition to the motions[1] and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons discussed below, Plaintiff's motion to remand is **GRANTED** and Defendants' motion to strike is **DENIED**.

---

[1] Plaintiff's brief in support of its motion to remand, D.E. 94, is referred to as "Plf. Br."; Defendants' brief in opposition, D.E. 100, is referred to as "Defs. Opp."; and Plaintiff's reply, D.E. 101, is referred to as "Plf. Reply". The parties also filed notices of supplemental authority and responses. D.E. 108, 110, 115, 117, 118. Defendants' brief in support of their motion to strike, D.E. 106, is referred to as "Defs. Strike Br."; Plaintiff's brief in opposition, D.E. 107, is referred to as "Plf. Strike Opp."; and Defendants' reply, D.E. 109, is referred to as "Defs. Strike Reply."

I.      **FACTUAL BACKGROUND**[2] **AND PROCEDURAL HISTORY**

Through this matter, Hoboken seeks compensation to offset the costs it has and will continue to incur to protect itself from the effects of global warming.  Plaintiff contends that Defendants' production, marketing, and sale of fossil fuels has been a "substantial factor" in skyrocketing carbon dioxide ($CO_2$) emissions.  Compl. ¶ 42.  The rising concentration of $CO_2$ emissions is a driving force in climate change.  *Id.* ¶ 41.  And global warming, in turn, is causing climate disruption and damage throughout the world, including in Hoboken.  Hoboken is a densely populated urban area located across the Hudson River from New York City.  *Id.* ¶¶ 8, 10, 46.  As a result, it is particularly vulnerable to damage from rising sea levels and extreme rainfall events caused by global warming.  *Id.* ¶¶ 45, 225-54.  Hoboken has already incurred substantial damage from weather events associated with global warming, including Hurricane Irene and Superstorm Sandy.  *See id.* ¶ 11.  Hoboken submits that it will continue to experience extreme weather events, damage from rising sea levels, and other problems associated with global warming.  *See id.* ¶¶ 225-27.

Plaintiff alleges that Defendants have known about and studied the potential harms from fossil fuel usage since the 1950s.  *Id.* ¶ 75.  Despite this knowledge, Defendants decided to prioritize their profits and actively suppressed evidence of the effects of global warming.  *Id.* ¶¶ 75, 107.  Beginning in the late 1980s, Exxon's strategy to combat global warming "shifted from trying to understand the impact of fossil fuels on climate change to trying to dispute and conceal their impact.  It has continued to employ this strategy through the present day."  *Id.* ¶ 116.  To do so, Exxon and other Defendants created front groups with neutral names to promote climate science denial and misinformation campaigns.  *Id.* ¶¶ 118-61.  To that end, from 1998 to 2007,

---

[2] The factual background is taken from the Complaint.  D.E. 1-2 ("Compl.").

2

"ExxonMobil gave over $20 million to think tanks and organizations that published research and ran campaigns denying climate science." *Id.* ¶ 159.  But while Defendants were engaged in their misinformation campaign, they were actively making business plans that accounted for rising sea levels and warming temperatures due to global warming.  *Id.* ¶¶ 162-71.

As the scientific certainty about global warming solidified over the last decade, Defendants switched their tactics from outright deception to a plan to "greenwash" consumers.  Greenwashing refers to Defendants' strategy to make consumers think that Defendants are committed to combatting climate change when, in fact, Defendants have not made any changes to their fundamental, core business of extracting and producing fossil fuels.  *Id.* ¶¶ 172-92.  "Defendants' greenwashing campaigns," which still continue, "are cover for their accelerating extraction, production, marketing and sale of fossil fuels—the actual cause of climate change."  *Id.* ¶ 194.  In addition to the pivot to "greenwashing," Defendants also continue to fund organizations that deny global warming.  *Id.* ¶ 209.

Plaintiff contends that Defendants' decades long "campaign of deception" about the impact fossil fuels have on climate change is causing lasting harm to Hoboken.  *Id.* ¶ 222.  This damage includes an increased frequency of flooding in the city, which requires large-scale and long-term remediation efforts; decreased property values; and increased insurance and property costs for Plaintiff and its residents.  *Id.* ¶¶ 222-23.  Hoboken has already been forced to expend hundreds of millions of dollars in remediation efforts after damage caused by extreme rainfall events, including Hurricane Irene and Superstorm Sandy.  *Id.* ¶¶ 269-84.  Despite these efforts and further remediation plans, designers acknowledge that a "fully comprehensive solution" is beyond Plaintiff's means.  *Id.* ¶ 285.  Plaintiff alleges that Defendants' actions are the proximate cause of Plaintiff's need to invest in its substantial, yet incomplete, remediation plans.  *Id.* ¶ 287.

Plaintiff filed its Complaint in New Jersey state court, alleging the following claims: public nuisance (Count One); private nuisance (Count Two); trespass (Count Three); negligence (Count Four); and violation of the New Jersey Consumer Fraud Act (Count Five).  D.E. 1-2.  Plaintiff seeks compensation for costs related to damage from Superstorm Sandy and similar events, as well as for Plaintiff's abatement and remediation efforts.  *See, e.g.*, Compl. ¶ 306.  Ultimately, the crux of Hoboken's Complaint is that Defendants knew that their products caused substantial harm to the environment.  Yet, Defendants misled consumers for decades about the real risks of continued dependence on fossil fuels and continued to sell their products.  Now, Hoboken wants help paying for the effects of climate change it has faced and will continue to face.

On October 9, 2020, Defendants Chevron Corp. and Chevron U.S.A., Inc. removed the matter to this Court.[3]  Defendants' 168-page notice of removal ("NOR") states that removal is proper on multiple grounds, including federal question, 28 U.S.C. § 1331; jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b); federal officer removal, 28 U.S.C. § 1442; and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  D.E. 1.  On December 11, 2020, Plaintiff filed the instant motion to remand.  D.E. 94.  After briefing was completed for the motion to remand, Defendants filed their motion to strike as to certain portions of Plaintiff's reply brief.  D.E. 106.

## II.    STANDARD OF REVIEW

Pursuant to the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is

---

[3] All Defendants subsequently consented to the Chevron Defendants' removal.  D.E. 9, 10, 13, 14, 17.

pending." 28 U.S.C. § 1441(a).  "[T]he party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court."  *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).  A district court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties about the current state of controlling substantive law in favor of the plaintiff."  *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).  Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand."  *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) (quoting *Steel Valle Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)); *see also Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

## III.   ANALYSIS

At the outset, Defendants asked this Court to reserve decision on the motion for remand until the Supreme Court resolved the question of whether there is federal question jurisdiction in a number of factual and procedurally similar cases.  Defs. Opp. at 7.  Although the Supreme Court has decided the other matters such that a stay is no longer appropriate, the Court briefly addresses this issue because it provides helpful context.

As noted, this case is one of many similar suits brought by cities and states throughout the country to address Defendants' alleged disinformation campaign regarding the effects of fossil fuels on global warming.  Eleven of these cases were recently pending before the Supreme Court.[4]

---

[4] The cases are *BP P.L.C. v. Mayor & City Council of Balt.*, 141 S. Ct. 1532 (2021); *Chevron v. County of San Mateo*, --- S. Ct. ---, 2021 WL 2044534 (U.S. May 24, 2021) (consolidating six cases); *Shell Oil Prods Co. v. Rhode Island*, --- S. Ct. ---, 2021 WL 2044535 (U.S. May 24, 2021); and *Suncor Energy (U.S.A.) Inc. v. Bd. of Cty. Comm'rs of Boulder Cty.*, --- S. Ct. ---, 2021 WL 2044533 (U.S. May 24, 2021).  In citing to the underlying decisions in each of these cases in this Opinion, this Court does not reference the appellate history for each matter.

In each, the respective plaintiff filed suit in state court and the defendants removed the matter on numerous grounds, including each of the arguments advanced by Defendants here.  In all but two cases, the district court granted the plaintiff's ensuing motion to remand.  On initial appeal, the circuit courts addressed their scope of review, determined that they could only review whether there was federal-officer jurisdiction pursuant to 28 U.S.C. § 1442, and concluded that removal was not proper under Section 1442.  *See, e.g.*, *Rhode Island v. Shell Oil Prods. Co., L.L.C.* (*Rhode Island II*), 979 F.3d 50, 55 (1st Cir. 2020) (concluding that on appeal, the circuit's "review is cabined to the question of whether the district court has jurisdiction over this case pursuant to federal officer removal").  Defendants subsequently petitioned for writs of certiorari in each case, which were granted by the Supreme Court.[5]

On May 17, 2021, the Supreme Court issued its opinion in *BP P.L.C. v. Mayor & City Council of Baltimore* (*Baltimore III*), 141 S. Ct. 1532 (2021).  The Supreme Court, however, did not consider the underlying merits of the removal or remand.  Instead, it focused solely on the narrow issue of a court's scope of review when removal is premised on the federal officer removal statute or the civil rights removal statute, 28 U.S.C. § 1443.  *Id.* at 1536.  The Supreme Court determined that when a matter is removed pursuant to Sections 1442 or 1443, an appellate court may review the entire remand order on appeal even if the remand order addresses grounds for removal outside of Sections 1442 and 1443.  *Id.* at 1537-38.  Accordingly, the Supreme Court remanded each case and directed the circuit courts to consider all of the defendants' grounds for removal, not just federal officer removal.  *See id.* at 1543.

---

[5] The Supreme Court denied the writ of certiorari in *Chevron Corp. v. City of Oakland* (consolidating two cases), No. 1089, on June 14, 2021.  This matter sought review of the Ninth Circuit's decision reversing two district court decisions denying motions to remand in similar cases.

Because the Supreme Court only addressed this limited procedural issue, *Baltimore III* does not guide the Court's analysis here.  But since the Supreme Court's decision in *Baltimore III*, Defendants now insinuate that this Court should wait until the circuit courts decide multiple issues of first impression upon remand, as they might impact Defendants' numerous bases for federal jurisdiction in this matter.  D.E. 115 at 2.  Given the fact that Plaintiff filed its motion for remand more than six months ago and this Court has no indication of when any circuit may address these issues on remand, the Court finds that it would not be prudent to await a decision from the appellate courts.  Critically, no such matter is pending before the Third Circuit.

Turning to the merits of the parties' arguments, "[f]ederal courts are not courts of general jurisdiction." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986).  Rather, to adjudicate a case, a federal district court must have subject matter jurisdiction through "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  Therefore, a district court must presume that it lacks jurisdiction over a matter unless jurisdiction is shown to be proper. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As discussed, Defendants seek to remove this matter on multiple grounds.  The Court addresses each basis for removal below.  Ultimately, none of Defendants' grounds for removal are sufficient for this Court to exercise subject-matter jurisdiction.

### A.  Federal Question

A court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, if the complaint "establishes that federal law create[s] the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *ACR Energy Partners, LLC v. Polo N. Country Club, Inc.*, 143 F. Supp. 3d 198, 202 (D.N.J. 2015).  In determining whether a complaint alleges a federal question, courts are guided by the well-pleaded

complaint rule.  According to the rule, "a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim."  *Concepcion v. CFG Health Sys. LLC*, No. 13-2081, 2013 WL 5952042, at *2 (D.N.J. Nov. 6, 2013).  A defense based on federal law is insufficient to convey jurisdiction under the well-pleaded complaint rule. *N.J. Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). Plaintiff does not assert any federal claims here; Hoboken only asserts state law claims.  Thus, on its face, the well-pleaded complaint rule is not satisfied.

There are, however, a few exceptions to the well-pleaded complaint rule.

### 1.  Complete Preemption

In the NOR, Defendants contend that Plaintiff's claims are completely preempted by the Clean Air Act, 42 U.S.C. § 7401 *et seq*.  NOR ¶ 168-71.[6]  There is a "'narrow exception' to the well pleaded complaint rule . . . where Congress 'has expressed its intent to completely pre-empt a particular area of law such that any claim that falls within this area is necessarily federal in character.'"  *Tishman Constr. Corp. of N.J.*, 760 F.3d at 302 (quoting *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999)).  The complete preemption exception is narrow.  *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399 (3d Cir. 2004).  In fact, the Supreme Court has only recognized the complete preemption doctrine in three instances, none of which are applicable here.  *Tishman Constr. Corp. of N.J.*, 760 F.3d at 302.  Moreover, "[i]f Congress intends a preemption instruction completely to displace ordinarily applicable state

---

[6] Defendants rely on this basis for removal in the NOR but do not address it in their opposition brief.  Thus, it appears that Defendants abandoned this argument.  However, because it informs the Court's decision with respect to Defendants' arguments regarding the federal common law, as addressed next, the Court briefly discusses the issue.

law, and confer federal jurisdiction thereby, it may be expected to make that atypical intention clear." *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 698 (2006).

Defendants do not identify any provision of the Clean Air Act or other related document that evidences a congressional intent to displace state law remedies that fall within the ambit of the Clean Air Act. Defendants also fail to identify any means for a litigant to assert a federal cause of action under the Act. In addition, in the similar cases pending throughout the country, no court has determined that the claims are completely preempted by the Clean Air Act. *See, e.g.*, *City of Oakland v. BP PLC*, 969 F.3d 895, 907 (9th Cir. 2020) (explaining that the Clean Air Act does not meet the requirements for complete preemption); *Rhode Island v. Chevron Corp.* (*Rhode Island I*), 393 F. Supp. 3d 142, 149-50 (D.R.I. 2019) (concluding that the plaintiff's claims were not completely preempted by the Clean Air Act). Accordingly, complete preemption based on the Clean Air Act does not confer subject-matter jurisdiction here.

### 2.   Federal Common Law and Ordinary Preemption

Defendants also contend that Plaintiff's claims necessarily arise under federal law "because they seek to regulate transboundary and international emission and pollution." Defs. Opp. at 12; *see also* NOR at 5-6. Defendants maintain that there are certain specialized areas, including interstate pollution, where there is an overriding interest in having a uniform federal rule. Defs. Opp. at 12-13. In short, Defendants argue that their claims arise under the federal common law. "The problem for Defendants is that there is nothing in the artful-pleading doctrine that sanctions this particular transformation." *Rhode Island I*, 393 F. Supp. 3d at 148.

In *Illinois v. City of Milwaukee* (*Milwaukee I*), 406 U.S. 91 (1972), the Supreme Court explained that "where there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism, we have fashioned federal

common law." *Id.* at 105 n.6.  The Court continued that addressing pollution in Lake Michigan, as it is bounded by four states, is an area that demands an application of federal law.  *Id.*  But even assuming that this matter is ultimately governed by the federal common law, *Milwaukee I* does not provide Defendants with a basis for removal.  *Milwaukee I* was filed in federal court pursuant to 28 U.S.C. § 1251(a)(1), which gives a district court original jurisdiction over controversies between two or more states.  *Milwaukee I*, 406 U.S. at 1388.  Accordingly, *Milwaukee I* did not implicate the well-pleaded complaint rule, nor did the Supreme Court address any principals of preemption or jurisdiction.

In relying on the federal common law as a basis for removal, Defendants are in essence raising the affirmative defense that the federal common law preempts Plaintiff's claims.  This amounts to an argument for ordinary preemption.  And ordinary preemption does not convert Plaintiff's state law claims to a federal case.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987) ("Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint" and "it is now well settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption"); *see also Briones v. Bon Secours Health Sys.*, 69 F. App'x 530, 534 (3d Cir. 2003) ("Because of the general rule that the plaintiff is master of his claim, where a well-pleaded state complaint contains only claims based on state law that are not 'completely preempted,' a federal court to which the case has been removed must remand to the state court for a determination of the issues presented.").

Defendants argue that *National Farmers Union Insurance Companies v. Crow Tribe of Indians*, 471 U.S. 845 (1985), demonstrates that if a plaintiff's claims necessarily arise under the federal common law, there is federal jurisdiction.  Defs. Opp. at 15.  In *National Farmers Union*, however, the petitioners filed their complaint in federal court, arguing that their claims arose under

the federal common law.  *Nat'l Farmers Union Ins. Cos.*, 471 U.S. at 848.  Thus, the case involved affirmative claims that appeared on the face of the complaint.  This is materially different than the defense that Defendants assert here.   *National Farmers Union*, therefore, does not support Defendants' argument based on the federal common law.

In addition, Defendants' argument regarding the federal common law has been rejected by other courts.  For example, in *Baltimore I*, the court recognized that the defendants' argument that Baltimore's claims were governed by the federal common law because they touched on climate change "is a cleverly veiled preemption argument."  *Mayor & City Council of Balt. v. BP P.L.C.* (*Baltimore I*), 388 F. Supp. 3d 538, 555 (D. Md. 2019).  The court continued that "[u]nfortunately for defendants, ordinary preemption does not allow the Court to treat the City's public nuisance claims as if it had been pleaded under federal law."  *Id.*  Similarly, in *Rhode Island I*, the court explained that "complete preemption is different from ordinary preemption, which is a defense and therefore does not provide a basis for removal."  *Rhode Island I*, 393 F. Supp. 3d at 148.  The *Rhode Island I* court then determined that "environmental federal common law does not – absent congressional say-so – completely preempt the State's public-nuisance claim, and therefore provides no basis for removal."  *Id.* at 149.  In this instance, outside of Defendants' suggestion that this Court take a wait-and-see approach with the cases that were recently remanded by the Supreme Court, Defendants do not attempt to explain why these other courts were incorrect or why this case is different.   And this Court finds *Rhode Island I*, *Baltimore I*, and the other similar cases persuasive.

Defendants also argue that Plaintiff's claims arise under federal law because "they seek to regulate the production and sale of oil and gas abroad and therefore, implicate the federal government's foreign affairs power and the Constitution's Foreign Commerce Clause."  Defs.

11

Opp. at 18.  The Court disagrees.  Plaintiff seeks compensation to help it pay for damage that has already occurred and for remediation efforts to prevent further damage.  Defendants have not made any persuasive arguments to the contrary.

Finally, Defendants contend that this case should be removed because Plaintiff is artfully pleading around a federal claim.  The Supreme Court has explained that at times, a federal court must "determine whether the real nature of the claim is federal, regardless of plaintiff's characterization."  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981).  Under the "artful pleading" doctrine, "a plaintiff may not defeat removal by omitting to plead necessary federal questions."  *Goepel v. Nat'l Postal Mail Handlers Union, a Div. of Liuna*, 36 F.3d 306, 310 (3d Cir. 1994).[7]  At the same time, as "master of its complaint," Hoboken is at liberty to raise or not raise federal claims.  *Caterpillar*, 482 U.S. at 398-99.  Here, Hoboken chose to plead only state law claims against non-diverse parties.  None of Hoboken's claims are premised on federal law and Defendants do not contend that Plaintiff omitted any facts to avoid federal jurisdiction.  Although federal law may ultimately block Plaintiff's claims through ordinary preemption, this is an affirmative defense rather than a necessary element of Plaintiff's claims.  Accordingly, as pled, Plaintiff's Complaint is premised solely on state law.

*City of New York v. Chevron Corporation* (*New York*), 993 F.3d 81 (2d Cir. 2021), does not change the Court's analysis.[8]  The plaintiff in *New York* filed its complaint in federal court.

---

[7] The Court notes that in *Goepel*, which is cited by Defendants, the Third Circuit addressed the difference between complete and ordinary preemption, explaining that only complete preemption can convert a state law-based complaint into a federal case.  As discussed, the Circuit recognized that a federal defense amounts to ordinary preemption and does not establish that the case is removable to federal court.  *Goepel*, 36 F.3d at 310.  Thus, the Circuit rejected the very argument Defendants make here.

[8] After the motion to remand briefing was completed, Defendants filed a notice of supplemental authority informing the Court of the Second Circuit's decision in *New York*.  D.E. 108.

As a result, the Second Circuit was "free to consider the [Defendants'] preemption defense on its own terms, not under the heightened standard unique to the removability inquiry." *Id.* at 94. In fact, the Second Circuit expressly noted that because of this procedural difference, its conclusion did not conflict with "the parade of recent opinions holding that 'state-law claims for public nuisance brought against fossil fuel producers do not arise under federal law.'" *Id.* (quoting *City of Oakland*, 960 F.3d at 575) (internal brackets omitted). *New York* merely suggests that Defendants may ultimately prevail with their federal preemption defense argument, but this defense does not provide this Court with subject-matter jurisdiction.

### 3. *Grable* Jurisdiction[9]

A claim is also deemed to arise under federal law for purposes of the well-pleaded complaint rule when, although it finds its origins in state law, "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance Inc.*, 547 U.S. at 690. This exception to the well-pleaded complaint rule only applies to a "slim category" of cases that satisfy four requirements: within a state law claim, a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

A federal issue is necessarily raised if "vindication of a right under state law must necessarily turn on some construction of federal law." *Id.* (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9 (1983)). In *Grable & Sons Metal*

---

[9] *Grable* jurisdiction is sometimes referred to as *Smith* jurisdiction in light of *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921).

*Products, Inc. v. Darue Engineering & Manufacturing*, for example, the IRS seized real property to satisfy a federal tax delinquency and subsequently sold the property. 545 U.S. 308, 310 (2005). Grable brought a quiet title action in state court five years later, claiming that the purchaser's record title was invalid because the IRS failed to notify Grable of the seizure in the specific manner required by 26 U.S.C. § 6335. *Id.* at 311. The Supreme Court determined that federal jurisdiction was appropriate because "[w]hether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute." *Id.* at 315.

Defendants maintain that for its nuisance claims, Hoboken is required to prove that Defendants' conduct is unreasonable. This depends, according to Defendants, on an assessment of whether "the gravity of the harm outweighs the utility of the actor's conduct' or that 'the harm caused by the conduct is serious.'" NOR ¶ 140 (quoting *Seven Plus One, LLC v. Sellers*, No. A-4688-14T2, 2016 WL 6994346, at *6 (N.J. Super. Ct. App. Div. Nov. 29, 2016)). Defendants go on to explain that this analysis is akin to the analysis Congress already performed when enacting a variety of federal environmental statutes. *Id.* Thus, Defendants conclude, Plaintiff's claims are "inherently federal in character." *Id.* ¶ 141.

This general concern that federal law might be implicated or may guide the Court's analysis is materially different than a claim, like that in *Grable*, that is dependent on the interpretation of federal law. Critically, Defendants do not identify any provision of federal law that would provide them a remedy or upon which Plaintiff's nuisance claims are predicated. "The fact that federal law may be informative . . . or 'shape or even limit the remedy that Plaintiff may obtain' does not mean that federal law is a necessary component of the cause of action." *MHA LLC v. HealthFirst,*

*Inc.*, 629 F. App'x 409, 413 (3d Cir. 2015) (internal quotation omitted).  As the district court

explained in *San Mateo*:

> [E]ven if deciding that nuisance claims were to involve a weighing
> of costs and benefits, and even if the weighing were to implicate the
> defendants' dual obligations under federal and state law, that would
> not be enough to invoke *Grable* jurisdiction.  On the defendants'
> theory, many (if not all) state tort claims that involve the balancing
> of interests and are brought against federally regulated entities
> would be removable.  *Grable* does not sweep so broadly.

*County of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 989 (N.D. Cal. 2018).

In their opposition brief, Defendants argue that Hoboken's claims implicate affirmative

federal constitutional elements imposed by the First Amendment, which are not considered

affirmative defenses.  Defendants further contend that federal jurisdiction is proper under *Grable*

because the Court will be required to construe the First Amendment when considering Plaintiff's

claims.  Defs. Opp. at 24-25.  Defendants rely on cases that address the constitutional limits of

common law defamation claims.  *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 774 (1986).

Each of the cases involve a federal constitutional defense to a state tort law.  Critically, the federal

court's jurisdiction in each of these cases did not appear to turn on the existence of the

constitutional defense.  *See, e.g.*, *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 48 (1988)

(explaining that the respondent originally filed a diversity action in district court); *Hepps*, 475 U.S.

at 774 (reviewing state court claims that were considered by the Pennsylvania Supreme Court).

The Court finds Defendants' authority to be inapposite.

Finally, Defendants cite *Ortiz v. University of Medicine & Dentistry of New Jersey*, No.

08-2669, 2009 WL 737046 (D.N.J. Mar. 18, 2009), for the proposition that when a court is required

to construe the United States Constitution, the claim necessarily raises a federal issue under

*Grable*.  Defs. Opp. at 25.  The Court disagrees; the implications of *Ortiz* are not nearly as broad

as Defendants represent.  In *Ortiz*, Judge Linares adopted Magistrate Judge Falk's conclusion that *Grable* jurisdiction existed because the plaintiff's state law wrongful termination and employment discrimination claims were dependent on federal law.  But in *Ortiz*, the plaintiff alleged that she was terminated in retaliation for exercising her right to free speech, in violation of the First and Fourteenth Amendments.  2009 WL 737046, at *5.  Thus, the plaintiff's "state cause of action require[d] proof of violation of federal law as an essential element to recovery."  *Id.* at *7.  Nothing in *Ortiz* stands for the broad proposition that any constitutional issue, no matter how it is raised, is sufficient to invoke federal jurisdiction.  And as explained above, Hoboken's claims do not turn on federal law.

Every court that has considered Defendants' *Grable* argument thus far has rejected Defendants' position.  *See Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31, 45 (D. Mass. 2020) (collecting cases).  Defendants do not challenge any of these decisions, and this Court finds these decisions persuasive.  Seeing no clear reason to deviate from the clear weight of authority, this Court also concludes that *Grable* jurisdiction does not exist.  As a result, Defendants fails to establish that there is federal question jurisdiction in this matter as authorized by 28 U.S.C. § 1331.

### B.  Outer Continental Shelf Lands Act Removal

Defendants also contend that this Court has original jurisdiction pursuant to the OCSLA, 43 U.S.C. § 1349(b).  NOR ¶¶ 31-41.  Specifically, Defendants maintain that Plaintiff's claims encompass Defendants' activities on the Outer Continental Shelf ("OCS"), and therefore, fall into the "broad jurisdictional grant of Section 1349."[10]  *Id.* ¶ 31.  The OCSLA "extends federal law to

---

[10] The Continental Shelf "is a vast underwater expanse that begins a few miles from the U.S. coast, where states' jurisdiction ends, and extends roughly two hundred miles into the ocean to the seaward limit of the international-law jurisdiction of the United States."  *Baltimore II*, 952 F.3d at 465 n.8 (internal quotations omitted).

the subsoil and seabed of the Outer Continental Shelf and all attachments thereon." *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1886 (2019).  Thus, pursuant to the OCSLA, the federal government has exclusive jurisdiction over the OCS.  *Id.* at 1887.

When considering jurisdiction under the OCSLA, courts analyze (1) whether the conduct "that caused the injury constituted an operation conducted on the outer Continental Shelf that involved the exploration and production of minerals," and (2) if the case "arises out of, or in connection with the operation."  *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014); *see also Various Pls. v. Various Defs.* (*Oil Field Cases*), 673 F. Supp. 2d 358, 370 (E.D. Pa. 2009) (looking to the Fifth Circuit for guidance on OCSLA jurisdiction because there is no Third Circuit precedent on the issue).  In addition, Section 1349 requires a "but-for" connection between the claims and the OCS operation.  *Id.*

Defendants argue that the "but-for" requirement is too narrow.  Specifically, Defendants maintain that such causation is sufficient but not necessary under the OCSLA.  Instead, Defendants point to the statutory text of Section 1349(b), which only requires a "connection."  Defs. Opp. at 29-30.  In support, Defendants rely on *EP Operating Ltd. Partnership v. Placid Oil Co.*, 26 F.3d 563 (5th Cir. 1994), which concluded that a suit that "would affect the efficient exploitation of resources from the OCS" was within the jurisdictional grant of Section 1349.  *Id.* at 570. Defendants maintain that *EP Operating* establishes that jurisdiction exists "where the plaintiff's claims are connected to OSCLA operations in the sense that they threaten to 'impair' the 'recovery' of minerals from the OCS."  Defs. Opp. at 30.  In *EP Operating*, however, the Fifth Circuit did not consider the parameters of a causal connection under the Act.  Instead, the Circuit was addressing the definition of "operation."  *EP Operating Ltd.*, 26 F.3d at 570.  Accordingly, *EP Operating* does

not support Defendants' argument.  Because Defendants provide no other authority to deviate from the but-for requirement, the Court applies the but-for test.

Turning to the merits of Defendants' OCLSA jurisdictional argument, Defendants contend that OCSLA jurisdiction exists because certain Defendants participated in the OCS leasing program.  NOR ¶¶ 36-37.  Because of Defendants' allegedly deceptive promotion of oil and gas, Defendants were able to increase production and some of this increased production originated from the OCS.  Defendants continue that Hoboken's claims and damages, therefore, arise from these OCS operations.  This chain of causation is too attenuated.  Although it is more than plausible that fossil fuels originating from the OCS led to the effects of global warming that Hoboken is now facing, this does not amount to but-for causation.  As explained by the Court in *San Mateo*, "even if some of the activities that caused the alleged injuries stemmed from operations on the [OCS], the defendants have not shown that the plaintiffs' causes of action would not have accrued *but for* the defendants' activities on the shelf."  *San Mateo*, 294 F. Supp. 3d at 939; *see also Baltimore I*, 388 F. Supp. 3d at 566 (concluding that OCSLA jurisdiction does not exist because the City's claims are based on a broad array of conduct and the defendants failed to establish that the claims "would not have occurred but for defendants' extraction activities on the OCS").  Consequently, the OCSLA does not confer subject-matter jurisdiction.

### C.  Federal Officer Removal

Defendants also removed this matter on the basis of the federal officer removal statute, 28 U.S.C. § 1442(a).  "The 'central aim' of the federal officer removal statute 'is to protect officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties."  *Golden v. N.J. Inst. of Tech.*, 934 F.3d 302, 309 (3d Cir. 2019) (quoting *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 811 (3d Cir. 2016)) (internal punctuation

omitted).  For a court to exercise its jurisdiction under Section 1442(a)(1), it must be satisfied that

each of the following four requirements are met:

> (1) the defendant is a person within the meaning of the statute; (2)
> the plaintiff's claims are based upon the defendant's conduct arising
> under the United States, its agencies, or its officers; (3) the plaintiff's
> claims against the defendant are for, or relating to an act under color
> of federal office; and (4) the defendant raises a colorable federal
> defense to the plaintiff's claim.

*Id.* (quoting *Papp*, 842 F.3d at 812) (internal quotation marks omitted).[11]

Defendants' argument turns on the second and third requirements.  The second requirement

"is liberally construed to cover actions that involve an effort to assist, or to help carry out, the

federal supervisor's duties or tasks."  *Id.*  In this instance, Defendants maintain that at a minimum,

the Chevron parties "performed critical and necessary functions for the U.S. military in furtherance

of national defense policy and have acted pursuant to government mandates, leases, and contracts

under which they assisted the federal government in achieving federal policy goals, all under

federal direction, oversight, and control."  NOR ¶ 42.  Specifically, Defendants maintain that they

acted under a federal officer because the government exerted extensive guidance and control over

their fossil fuel production.  *Id.* ¶ 44.  To meet the third requirement, "it is sufficient for there to

---

[11] Section 1442 provides as follows:

> (a) A civil action or criminal prosecution that is commenced in a State court
> and that is against or directed to any of the following may be removed by
> them to the district court of the United States for the district and division
> embracing the place wherein it is pending:

> > (1) The United States or any agency thereof or any officer (or any
> > person acting under that officer) of the United States or of any
> > agency thereof, in an official or individual capacity, for or relating
> > to any act under color of such office or on account of any right, title
> > or authority claimed under any Act of Congress for the apprehension
> > or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

be a 'connection' or 'association' between the act in question and the federal officer." *Golden*, 934 F.3d at 310 (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 468 (3d Cir. 2015)).  To support their argument, Defendants provide a historical treatise about the United States' need for fossil fuels for national security purposes during the twentieth century and explain that Defendants' oil and gas production was in part connected to these national security concerns. *Id.* ¶¶ 48-133.  While informative, the historical narrative is not relevant.  Hoboken's Complaint is focused on Defendants' decades long misinformation campaign that was utilized to boost Defendants' sales to consumers.  Defendants do not claim that any federal officer directed them to engage in the alleged misinformation campaign.

Turning to the specifics of Defendants' federal officer removal argument.  Defendants rely on their involvement with the OCS leasing program; a petroleum reserve at Elk Hills, California; and specialized government contracts and work related to national defense.  OCS leases are administered by the Department of Interior, and Defendants maintain that in 2009, "oil produced from the OCS accounted for 30% of all domestic production."  NOR ¶¶ 65-67.  With respect to Elk Hills, Defendants' argument stems from Chevron's predecessor's involvement with a petroleum reserve in California that is owned by the federal government, from 1976 to 1998. *Id.* ¶¶ 83-103. Each circuit that has considered whether Defendants' involvement with the OCS leases and the Elk Hills reserve is sufficient to satisfy the federal officer removal statute has found that it is not.  The Fourth Circuit explained that "[a]ny connection between the fossil fuel production of the OCS and the conduct alleged in the Complaint is simply too remote" to satisfy the third prong. *Mayor & City Counsel of Balt. v. BP P.L.C.* (*Baltimore II*), 952 F.3d 452, 466 (4th Cir. 2020). The Fourth Circuit further explained that although Baltimore's complaint references the

defendants' production, these allegations "only serve to tell a broader story" about how Defendants' fossil fuels contributed to greenhouse gas pollution. *Id.* at 467. But "it is the concealment and misrepresentation of the products' known dangers—and simultaneous promotion of their unrestrained use—that allegedly drove consumption, and thus greenhouse gas pollution, and thus climate change." *Id.* The Fourth Circuit reached the same conclusion with respect to Elk Hills. *Id.* at 468-69. The First Circuit similarly explained that:

> [a]t first glance, these agreements may have the flavor of federal officer involvement in the oil companies' business, but that mirage only lasts until one remembers what Rhode Island is alleging in its lawsuit. Rhode Island is alleging the oil companies produced and sold oil and gas products in Rhode Island that were damaging the environment and engaged in a misinformation campaign about the harmful effects of their products on the earth's climate. The contracts the oil companies invoke as the hook for federal-officer jurisdiction mandate none of those activities.

*Rhode Island II*, 979 F.3d at 59-60. The Court sees no reason to depart from the persuasive reasoning of the First and Fourth Circuits. As discussed, Plaintiff is not focused on the specialized and limited production efforts on the OCS and at Elk Hills, or, for that matter, Defendants' overall production efforts. Instead, Plaintiffs point to Defendants' misinformation campaign. Accordingly, the Court concludes that Defendants' conduct relating to OCS and Elk Hills does not serve as a jurisdictional hook.

The same is true for Defendants' contention that their role in providing the United States' military with specialized fuel, and for the storage and transport of fuel for national emergencies, are sufficient bases to convey federal jurisdiction. NOR ¶¶ 104, 107-30. As recognized by Defendants themselves, fuel produced through these military contracts at the present day is "highly specialized" so that it can be used on planes, ships and other vehicles and satisfy other national defense requirements. *Id.* ¶¶ 120. This specialized fuel does not appear to be the same as fuel that

consumers purchased because of Defendants' alleged marketing and disinformation campaigns. Finally, Hoboken's Complaint does not touch on the storage or transport of fossil fuels. Consequently, this conduct does not relate to Plaintiff's claims.

With respect to the federal officer removal statute, Defendants' basis for removal and arguments in their opposition brief are largely the same as those presented to each circuit court that has considered federal officer removal in the related cases. Four circuits have concluded that Defendants could not remove based on the federal officer removal statute. Defendants, however, provide new information in this matter that they contend should change the analysis. For example, with respect to Elk Hills, Defendants provide new factual support demonstrating that the Navy hired Standard Oil, Chevron's predecessor, to operate the field on its behalf for thirty-one years. NOR ¶ 95. Defendants also provide new information about the government's control of the oil and gas industry during World War II. *Id.* ¶¶ 48-60. But again, Plaintiff's claims focus on Defendants' alleged misinformation campaign, not their production of oil and gas. Moreover, Defendants' new information addresses conduct that predates Plaintiff's allegations. Thus, this new information likely would not change any of the prior circuit analyses. In fact, the District of Hawai'i recently determined that Defendants' new information did not alter the analysis and concluded that there was not federal officer removal. *See City & Cnty. of Honolulu v. Sunoco LP*, No. 20-163, 2021 WL 531237, at *4-5 (D. Haw. Feb. 12, 2021) ("The Court is unconvinced that any of the supposedly additional or new arguments presented here alter the Ninth Circuit's holding that the leases do not give rise to an unusually close relationship with the federal government for purposes of Section 1442(a)(1)."). And critically, this information does not alter this Court's conclusion in this matter. Defendants, therefore, cannot remove this matter pursuant to the federal officer removal statute.

### D. Federal Enclave Removal

Next, Defendants seek to remove this matter on the basis of federal enclave jurisdiction. NOR ¶¶ 178-82. "A federal enclave is an area over which the federal government has assumed exclusive legislative jurisdiction through the application of Art. I, Section 8 of the U.S. Constitution." *Jones v. John Crane-Houdaille, Inc.*, No. 11-2374, 2012 WL 1197391, at *1 (D. Md. Apr. 6, 2012). "A suit based on events occurring in a federal enclave, where state law has been federalized, therefore must necessarily arise under federal law and implicates federal question jurisdiction under § 1331." *Id.* The "key factor" in deciding whether federal enclave jurisdiction exists is the location of the injury. *Sparling v. Doyle*, No. 13-323, 2014 WL 2448926, at *3 (W.D. Tex. May 30, 2014); *see also Board of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 974 (D. Colo. 2019) (quoting *Ramos v. C. Ortiz Corp.*, No. 15-980, 2016 WL 10571684, at *3 (D.N.M. May 20, 2016)) ("The location where Plaintiff was injured determines whether the right to removal exists" under federal enclave jurisdiction."); *Baltimore I*, 388 F. Supp. 3d at 565 (explaining that "courts have only found that claims arise on federal enclaves, and thus fall within federal question jurisdiction, when all or most of the pertinent events occurred there"); *Bordetsky v. Akima Logistics Servs., LLC*, No. 14-1786, 2016 WL 614408, at *2 (D.N.J. Feb. 16, 2016) ("When dealing with a federal enclave, the focus is on where the tort occurred.").

Defendants contend that the Complaint relies upon conduct that occurred in the District of Columbia and that some of the fossil fuel produced by Defendants came from federal enclaves. NOR ¶¶ 178-82. In a footnote, Defendants add that because Plaintiff's injuries arise from all global warming, Plaintiff is necessarily complaining about emissions from jet fuel on United States military bases. Defs. Opp. at 53 n.10. Again, the Court disagrees. The focus of Hoboken's claims

is on harm that occurred in Hoboken rather than in a federal enclave.  This argument, therefore, is rejected.

### E.  Class Action Fairness Act Jurisdiction

Finally, Defendants maintain that this matter is removable under the CAFA.  NOR ¶¶ 183-95.  The CAFA provides federal courts with diversity jurisdiction over class actions when (1) the amount in controversy exceeds $5 million; (2) there are minimally diverse parties; and (3) the class consists of 100 or more members.  *Gallagher v. Johnson & Johnson Consumer Cos.*, 169 F. Supp. 3d 598, 601-02 (D.N.J. Mar. 14, 2016) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)).  A class action is defined as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  This argument can be dealt with in short order because Plaintiff is not bringing this matter under Rule 23 or any similar state law.  Defendants provide no information suggesting otherwise.  Consequently, the Court concludes that CAFA jurisdiction does not exist.

In sum, none of Defendants' bases for federal jurisdiction are sound.  Accordingly, this matter will be remanded to state court.

### IV.    MOTION TO STRIKE

Defendants seek to strike portions of Plaintiff's reply brief, specifically, Plaintiff's new argument for costs pursuant to 28 U.S.C. § 1447(c) and collateral estoppel, because they were raised for the first time in Plaintiff's reply brief.  Defs. Strike Br. at 2-4.  Defendants do not set forth the legal basis for their requested relief.  While Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," Fed R. Civ. P. 12(f), Defendants seek to strike arguments in a brief.

"[M]otions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f)."  5C Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1380 (3d ed. 2016).  Defendants' motion, therefore, is denied as procedurally improper.

Defendants, however, correctly argue that this Court typically does not consider new arguments in a reply brief.  *See Cobra Enters., LLC v. All Phase Servs., Inc.*, No. 20-4750, 2020 WL 2849892, at *1 (D.N.J. June 1, 2020) ("As a matter of procedure, this Court will not accept arguments offered for the first time in the reply brief, as they were not properly asserted in the opening brief and Plaintiffs have not had the opportunity to respond to them.").  Here, Plaintiff concedes that it had a basis to seek statutory costs under 28 U.S.C. § 1447(c) when filing its motion to remand but "refrained . . . from seeking that relief in its opening brief."  Plf. Strike Opp. at 1.  The same is true for Hoboken's collateral estoppel argument, which is based on the fact that numerous courts already rejected Defendants' arguments regarding federal jurisdiction before Defendants filed their opposition brief.  Thus, while the Court will not strike these arguments from Hoboken's reply brief, the Court did not consider them in deciding the motion for remand.

## V.   CONCLUSION

For the reasons stated above, Plaintiff's motion to remand, D.E. 94, is **GRANTED.**  This action is remanded to the New Jersey Superior Court, Law Division, Hudson County.  In addition, Defendants' motion to strike, D.E. 106, is **DENIED**.  An appropriate Order accompanies this Opinion.

Dated: September 8, 2021

John Michael Vazquez, U.S.D.J.